Melissa L. White
31633 202nd Ave SE
Kent, WA 98042
Phone: (206) 304-2261
Email: mlwhite2@pm.me

**FILED**

2022 NOV 08
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 22-2-18496-5 KNT

# THE SUPERIOR COURT OF WASHINGTON

## FOR KING COUNTY

**MELISSA WHITE,**

Plaintiff,

v.

**UNIVERSITY OF WASHINGTON,
UW MEDICINE HARBORVIEW
MEDICAL CENTER,
UW MEDICINE CHOICE CARE LLC,
LISA BRANDENBURG** in both her official
and individual capacity,
**TIMOTHY DELLIT** in both his official and
individual capacity,
**MARK RICHARDS** in both his official and
individual capacity,
**KATHY SCHELL** in both her official and
individual capacity,
**WILLIAM GOODMAN** in both his official
and individual capacity,
**LAURA BARRY** in both her official and
individual capacity,

Defendants.

Case No.: **22-2- 18496- 5 KNT**

**COMPLAINT FOR
INJUNCTIVE AND
DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent WA 98042

1

**COMPLAINT AND JURY DEMAND ON ALL COUNTS APPLICABLE**

2  Plaintiff Melissa White, hereinafter "Plaintiff," seeks redress for grievances against

3  Defendants UNIVERSITY OF WASHINGTON, UW MEDICINE HARBORVIEW MEDICAL

4  CENTER, UW MEDICINE CHOICE CRE LLC., LISA BRANDENBURG in both her official

5  and individual capacity, TIMOTHY DELLIT in both his official and individual capacity, MARK

6  RICHARDS in both his official and individual capacity, KATHY SCHELL in both her official

7  and individual capacity, WILLIAM GOODMAN in both his official and individual capacity, and

8  LAURA BARRY in both her official and individual capacity for Constitutional right violations

9  which incorporate both criminal and civil penalties.

10

12

**INTRODUCTION**

13     This action arises out of the Defendants' conspiracy to deprive Plaintiff of inherent,

14  sacred and inviolable rights in the absence of due process under the color of law. These rights

15  include, but are not limited to religious sovereignty, liberty, and property exclusive to the

16  Plaintiff. These inherent and sacred rights incorporate property both corporeal and incorporeal as

17  well as personal autonomy.

18     The causes of action brought are (1) Violation of Title VII, (2) Violation of 42 U.S.C. §

19  1983 (due process and equal protection clauses), (3) Violation of 42 U.S.C. § 1985 (Depriving

20  persons of rights or privileges), (4) Common law conspiracy, (5) Breach of contract ARTICLE

21  36 – CORRECTIVE ACTION/DISMISSAL PROCESS, (6) Breach of contract ARTICLE 21 –

22  FAMILY MEDICAL LEAVE ACT AND PARENTAL LEAVE, (7) Violation of RCW

23  9A.80.010 OFFICIAL MISCONDUCT, and (8) Negligent infliction of emotional stress.

24

25

**JURISDICTION AND VENUE**

26  1.  Pursuant to RCW 4.92.010 Where Brought – Change of venue, venue is proper in the

27     Superior Court of Washington for King County because all claims arise out of King County,

28     Washington.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

2.    Pursuant to 42 U.S.C. § 1981 (Equal rights under the law).

3.    Pursuant to 28 U.S.C. § 1331, § 1343(1), (2) and (3), this Court has subject matter jurisdiction over Plaintiff's claims.

4.    Pursuant to 42 U.S.C. § 1983 (civil action for deprivation of rights), § 1985 (conspiracy to interfere with civil rights), § 1988 (proceedings in vindication of civil rights) this Court has subject matter jurisdiction,.

5.    Pursuant to 18 U.S.C. § 241 and § 242, this Court has subject matter jurisdiction.

6.    Pursuant to 28 U.S.C. § 2201 and § 2202 this Court has subject matter jurisdiction over Plaintiffs request for declaratory relief.

7.    Pursuant to 28 U.S.C. § 1391 (b), venue is proper because all claims arise out of King County, Washington.

**PARTIES**

8.    At all times material to this lawsuit, Melissa White, Plaintiff, resided in Kent, Washington.

9.    Plaintiff was employed by the University of Washington, UW Medicine, UW Medicine Harborview Medical Center as the Diagnostic Medical Sonographer Lead with employment starting on December 17, 2001 to October 18, 2021.

10.  At all times material to this lawsuit, the UNIVERSITY OF WASHINGTON, UW MEDICINE HARBORVIEW MEDICAL CENTER, was a corporation of the STATE of WASHINTON, and has its principal place of business in Seattle, Washington.

11.  At all times material to this lawsuit, UW MEDICINE CHOICE CARE LLC was created by the UNIVERSITY OF WASHINGTON on January 11, 2019 to incorporate all new and existing medical centers and clinics under the name UW MEDICINE.

12.  At all times material to this lawsuit, LISA BRANDENBUG was duly employed, President, UW Medicine Hospitals for Medical Affairs, for the UNIVERSITY OF WASHINGTON and has the role as Governor of UW Medicine Choice Care LLC , Washington and resides in Washington.

Page 3 of 55

Comp. for Inj. and Dec. Relief                          Melissa L. White, (206)304-2261
                                                        31633 202nd AVE SE
                                                        Kent WA 98042

13. At all times material to this lawsuit, TIMOTHY DELLIT was duly employed, Chief Medical Officer, UW Medicine Vice President for Medical Affairs, for the UNIVERSITY OF WASHINGTON and President, UW Physicians, along with his new title of CEO of UW MEDICINE, Washington and resides in Washington

14. At all times material to this lawsuit, MARK RICHARDS was duly employed, Provost and Executive Vice President for Academic Affairs, for the UNIVERSITY OF WASHINGTON, Washington and resides in Washington.

15. At all times material to this lawsuit, KATHY SCHELL was duly employed, UW Medicine Human Resources – Employee Relations, UW Medical Center, for the UNIVERSITY OF WASHINGTON under UW MEDICINE, Washington and resides in Washington.

16. At all times material to this lawsuit, WILLIAM GOODMAN was duly employed, Claim Specialist, Claims Services, for the UNIVERSITY OF WASHINGTON, Washington and resides in Washington.

17. At all times material to this lawsuit, LAURA BARRY was duly employed, Leave and Accommodations Specialist for the UNIVERSITY OF WASHINGTON under UW MEDICINE, Washington and resides in Washington.

18. All acts necessary or precedent to bring of this lawsuit occurred in the UNIVERSITY OF WASINGTON under UWMEDICE, Washington.

## **PRELIMINARY STATEMENT**

1. Plaintiff alleges that the Defendants through negligence, ignorance, wanton disregard, or a combination of all three, worked together to chill and deter the substantive rights of the Plaintiff through arbitrary and capricious means.  Defendants relied upon guidance issued from the Governor of Washington State, Jay Inslee, to justify the chilling and deterring of the Plaintiffs' constitutional rights.  At no time, did the advice or suggestions of the state executive branch have the authority of law to supersede the Constitution of the United States as well as the Washington State Constitution or Federal Law and State Statutes.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

2. ***When an agency claims to have found a previously "unheralded power," its assertion generally warrants "a measure of skepticism." Utility Air, 573 U. S., at 324.***

3. The University of Washington, UW Medicine Harborview Medical Center, UW Medicine Choice Care LLC, Lisa Brandenburg, Timothy Dellit, Kathy Schell, Mark Richards, William Goodman, and Laura Barry in wanton disregard for the rule of law, acted on these capricious and arbitrary recommendations, guidelines, and suggestions with the enactment of a new employment condition demanding a new license/medical document.

4. ***Courts must look to the legislative provisions on which the agency seeks to rely "'with a view to their place in the overall statutory scheme.'" Brown & Williamson, 529 U. S., at 133. West Virginia v. EPA (20-1530)597 U.S.____ 2022.***

## FACTS

5. Plaintiff is a beneficiary of the Constitution of the United States of America.

6. Plaintiff had attended 6 years of college to achieve two associates degrees, one in Radiologic Technology and the other in Diagnostic Medical Sonography.

7. Plaintiff has accomplished and kept current the following licenses: AART (R), (CT), ARDMS AB, OB/GYN, and NTQR.

8. The Radiologic Technology degree was accomplished in December 1994.

9. Plaintiff then starting working for Valley Medical Center in Renton as an X-Ray Technologist/ CT Technologist in January 1995.

10. Plaintiff re-attended Tacoma community College in 2001 to pursue a associates in Diagnostic Medical Sonography.

11. Classes and clinicals were on the weekdays all day.

12. Plaintiff needed to change to a weekend shift.

13. Valley Medical Center did not have any weekend job openings to move into, so Plaintiff had to search for a new job.

Comp. for Inj. and Dec. Relief
Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

14. A CT Technologist position at Harborview Medical Center was the optimal choice for the Plaintiff.

15. Employment at Harborview Medical Center was obtained starting December 17, 2001.

16. Plaintiff was covered by the collective bargaining agreement by and between the University of Washington for Harborview Medical Center and SEIU 1199 Northwest for Harborview Medical Center.

17. The Diagnostic Medical Sonography Program lasted for one year.

18. Plaintiff worked Saturday and Sunday both 12-hour shifts 7AM-7:30 PM while participating in various 8-hour clinical days and classes at the college Monday through Friday.

19. In the beginning, it was two 8-hour clinical days per week and 3 days of classes, and then progressed to four 8-hour clinical days per week at the end of the program with classes.

20. When Plaintiff graduated in December 2002, Harborview Medical Center created a hybrid position for the Plaintiff, so Plaintiff would stay, due to the lack of an ultrasound job opening being available at the time.

21. Harborview Medical Center started giving the Lead in the ultrasound department an administrative day; this accommodated the Plaintiff to work eight hours a week in the ultrasound department.

22. Plaintiff was working three twelve hour shifts at this time on Saturday, Sunday, and Monday.

23. Mondays; were the designated days the Plaintiff worked in the ultrasound department.

24. At first Mondays consisted of eight hours ultrasound and 4 hours in trauma x-ray, and Saturdays and Sundays were in CT.

25. Over time, the hours in ultrasound went from eight, to ten, and then the full Twelve-hour shift with no time in trauma x-ray.

26. While the above changes were happening, the Plaintiff performed an excess of overtime in the ultrasound department to cover shift shortages with overtime pay.

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

27. Eventually the Plaintiff was moved to a three twelve-hour Wednesday, Thursday, and Friday ultrasound only shift.

28. During the course of employment with Harborview Medical Center, the Plaintiff's shift changed a few more times, but was always in the ultrasound department.

29. Plaintiff received the honorably UW Cares Award along with the rest of the ultrasound team in December 2017.

30. The plaintiff was honorably selected for the Diagnostic Medical Sonographer Lead position when it came available.

31. While in the Lead position, the Plaintiff held annual luncheons for the ultrasound team, as well as periodically buy lunches and or treats for the team and students.

32. Plaintiff served on the Fun Club committee in the Radiology Department for many years.

33. Plaintiff also served on the Joint Labor Management committees for Radiology, Cardiology, and Sonography.

34. Plaintiff served on the Sonography Board at Bellevue College for about 10 years.

35. Plaintiff constantly strived to make Harborview Radiology Department a better place.

36. One accomplishment was to work with the administration to get sleep rooms for staff on call in radiology.

37. Another accomplishment for the Plaintiff and the ultrasound departments was to get management to have an ergonomics specialist come in and educate the sonographers on proper ergonomics to prevent occupation related injuries.

38. Plaintiff did annual continuing education, and research, to improve Plaintiff's occupation/private property and the ultrasound department.

39. The Plaintiff also hosted educational lectures with guest speakers for sonographers and physicians.

40. Plaintiff lobbied for better communication between the ultrasound departments at UW Medicine campuses.

Comp. for Inj. and Dec. Relief        Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

41. Plaintiff was able to get with Dr. Gunn, a Radiologists who specializes in IT as well, to get all ultrasound protocols on a website for all UW Medicine campuses to have access with regular updates.

42. The above website is still in use today.

43. The UNIVERSITY of WASHINGTON has two major branches one academics and the other a medical branch of four major medical centers.

44. The Medical branch of the UNIVERSITY OF WASHINGTON is known as UW MEDICINE.

45. Within UW MEDICINE, there are four major hospitals known as Harborview Medical Center in Seattle, two UW Medicine Medical Center's in Seattle, and Valley Medical Center in Renton.

46. Plaintiff was an employee of 19 years and 10 months for the UNIVERSITY OF WASHINGTON, UW MEDICINE HARBORVIEW MEDICAL CENTER.

47. Plaintiff planned to retire from the UNIVERSITY OF WASHINGTON; UW MEDICINE HARBORVIEW MEDICAL CENTER after the Plaintiff reached 30 years of service at age 60.

48. Plaintiff has never received a flu vaccine.

49. Safety was a high priority for the Plaintiff.

50. Plaintiff did have to quarantine for 10 days once due to exposure to COVID-19.

51. Plaintiff never contracted Covid-19 and still has not gotten COVID-19 to this day.

52. Plaintiff volunteered to care for COVID-19 patients because teammates declined to do so due to potential health concerns in the beginning of the pandemic.

53. Plaintiff worked irregular shifts outside of Plaintiffs designated shift to cover the department due to short staffing for months during the pandemic.

54. Plaintiff forfeited potential overtime pay in favor of Stephanie Pardee (Director of Radiology) for the UNIVERSITY OF WASHINGTON, UW MEDICINE HARBORVIEW MEDICAL CENTER to maintain budget costs starting January 2020.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                   31633 202nd AVE SE
                                                   Kent, WA 98042

55. In the beginning of the pandemic, masks, gowns, and gloves, known as "PPE", were only worn in the presence of Covid-19 positive patients.

56. Plaintiff wrote guidelines on how to do ultrasounds safely with Covid-19 patients.

57. The above guidelines were published on the UW Medicine Harborview Medical Center's web site for all ultrasound labs to use.

58. Plaintiff served as a union delegate working with fellow employees and Human Recourses Representatives on corrective action/dismissal cases along with assisting coworkers with FMLA practices starting in January 2017 through October 18, 2021.

59. Plaintiff worked on a case in cooperation with Human Resources representative Aimee Buckius and with a John Doe, who was set to be terminated in December 2019.

60. Fact number 73, Mr. Doe was in need of leave under FLMA prior to termination, which was approved.

61. Plaintiff worked on a case in cooperation with Human Resources representative Aimee Buckius and with a Jane Doe, who was set to be terminated.

62. Fact Number 75, Ms. Doe was given Due Process with physical evidence supporting a just cause dismissal and a hearing.

63. Around July 2020, the UNIVERSITY OF WASHINGTON mandated that everyone in the medical centers had to wear masks at all times with social distancing whenever possible.

64. Plaintiff received an email on August 12, 2021 at 5:30 PM from Defendants LISA BRANDENBURG, TIMOTHY DELLIT, and SOMMER, KLEWENO-WALLEY stating the UNIVERSITY OF WASHINGTONS will be imposing a new employment requirement, which contained a required license/medical document for continued employment.

65.  If an employee could not produce such a license/medical document, an employee could request a religious or medical exemption.

66. On August 30, 2021, Plaintiff submitted a personal statement for a religious exemption.

67. A reply from the Human Resources Department of UW MEDICINE, UNIVERSITY OF WASHINGTON, was received on August 30, 2021 at 10:34 PM with further instructions.

Comp. for Inj. and Dec. Relief
Melissa L. White, (206)304-2261
31633 202ⁿᵈ AVE SE
Kent, WA 98042

68.  Further instructions were, Plaintiff had to fill out and sign the University of Washington's religious exemption form even though the Plaintiff wrote a personal statement addressing the religious exemption.

69. Plaintiff complied with demands August 31, 2021.

70. Plaintiff received an email stating the request for a religious exemption was denied from UW MEDICINE HUMAN RESOURCES on September 10, 2021 at 2:06 PM.

71. In UW MEDICINES HUMAN RESOURCES email dated September 10, 2021 at 2:06 PM also, stated the Plaintiff was required to be fully compliant by October 18, 2021.

72. Also in UW MEDICINES HUMAN RESOURCES September 10, 2021 at 2:06 PM, the email also threatened the Plaintiff with non-disciplinary separation on October 18, 2021 if demands were not followed.

73. On September 16, 2021 the Plaintiff returned to work after taking time off only to have two hours of sleep due being unable to sleep.

74. Plaintiff had irregular shortness of breath, rapid heartrate, and could not concentrate.

75. Plaintiff's rapid heart rate continued to be a persevering problem for the rest of Plaintiff's employment.

76. When Plaintiff performed ultrasounds on patients with symptoms stated in facts 87, 88, and 89, the Plaintiff would sometimes have to go back and rescan areas due to not remembering what Plaintiff just saw.

77. The prior statement is a very dangerous situation for the patients.

78. Sonographers are responsible for reporting findings to the Radiologist.

79. If the sonographer misses pathology, then the Radiologist will not know it is there.

80. Plaintiff likes to put safety first.

81. September 17, 2021 the Plaintiff again returned to work with this time having only 3 hours of sleep.

82. Plaintiff was not able to nap on any of these days.

83. Eddie Oliver, Plaintiffs' supervisor, asked the Plaintiff if Plaintiff was ok.

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

84. Plaintiff replied yes, due to being uncomfortable to say otherwise.

85. The two days at work, on September 16 and 17, 2021, were a complete struggle, unsuccessful, and dangerous.

86. Plaintiff then realized the situation had spun out of control and needed help.

87. Plaintiff had to call out sick starting September 20, 2021 for the above reasons.

88. Plaintiff sought help at the Muckleshoot Wellness Center.

89. Muckleshoot Wellness Center referred the Plaintiff to the Muckleshoot Behavior Health Center.

90. Plaintiff was seen on September 22, 2021 at the Muckleshoot Behavior Center for an intake appointment.

91. Plaintiff returned to the Muckleshoot Behavior Health Center on September 23, 2021 to meet with Plaintiffs newly assigned counselor.

92. In the above appointment, the counselor said the Plaintiff should take FMLA to work on the Plaintiffs issues.

93. Plaintiff was unable to function properly with no to little sleep, troubles breathing with irregular heartbeat, and lack of concentration.

94. Plaintiff was told to see a provider at the Muckleshoot Wellness Center to be officially placed on FMLA.

95. September 27, 2021 Plaintiff attended a grievance meeting via Zoom pertaining to the denial of religious exemptions.

96. Defendant Kathy Schell attended the meeting.

97. The UNIVERSITY of WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER could not explain why an employee with a religious exemption is considered dangerous to patients and other staff starting after October 18, 2021.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

98. The UNIVERSITY of WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER also could not explain why it was safe at other hospitals in the area, but not ours to have employees with religious exemptions.

99. The UNIVERSITY of WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER have completely failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that religious exempted employees were dangerous and a threat to others.

100.   The UNIVERSITY of WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER have completely failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that allowing the Plaintiff any accommodation under 28 CFR § 36.202; 13 CFR § 112.6; RCW 49.60.030; RCW 49.60.215, would pose any valid safety concern that would cause it any "undue hardship." *Draper v. U.S. Pipe & Foundry Co., supra.*

101.   On September 29, 2021 UW Medicine Human Resources Department sent out an email stating the religious exemption was denied due to an undue hardship to employer for accommodations.

102.   It also stated the employees with religious exemptions would compromise patient safety.

103.   Plaintiff finally got in to see a provider in the Muckleshoot Wellness Center about FMLA.

104.   Unfortunately, since the Plaintiff is not a tribal member of the Muckleshoot this provider could not be the Plaintiffs primary care provider.

105.   Plaintiff is a member of the Cheyenne River Sioux Tribe.

106.   The Muckleshoot provider suggested to see the Psychiatrist at the Muckleshoot Behavior Health Center.

107.   October 3, 2021 Plaintiff emailed Eddie Oliver supervisor and Aimee Buckius Human Resources Representative, about Plaintiffs progress on seeing the Psychiatrist due to being out sick so many days.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

108.   October 4, 2021 the union received a letter recapping what was discussed at the religious exemption grievance meeting.

109.   The above letter stated no accommodations could be provided without creating an undue hardship to the UNIVERSITY of WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER.

110.   The letter also stated no explanation or factual evidence of this undue hardship, only that the continued employment of the plaintiff would present one.

111.   On October 6, 2021 the Psychiatrist determined that leave under the Family Medical Leave Act (FMLA) was necessary for the Plaintiff.

112.   Plaintiff was told by the Psychiatrist, on October 6, 2021 that Family Medical Leave Act (FMLA) was necessary.

113.   All paperwork for leave under FMLA was completed and submitted to LAURA BARRY, Leave Specialist for UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER, on October 13, 2021.

114.   On October 14, 2021 Laura Barry stated the Plaintiff needed a leave request form turned in.

115.   The Plaintiff submitted the authorized leave request form with Eddie Oliver's signature on the same day, October 14, 2021.

116.   On October 15, 2021, LAURA BARRY from Human Resources sent back the plaintiffs FMLA paperwork stating the providers' information, address was missing.

117.   Plaintiff added the missing information and resubmitted the form on the same day, October 15, 2021.

118.   October 18 2021 the Plaintiff received an email stating, "Medical Leave Denied- Employment was ending."

119.   Plaintiff was terminated on October 18, 2021 with a non-disciplinary separation.

120.   Plaintiff reached out to Eddie Oliver on October 19, 2021, stating Plaintiff would come by in the morning to clean out Plaintiffs locker and cubby.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

121. Eddie Oliver said Plaintiff would have to get someone else to gather Plaintiffs personal property and bring it out to the Plaintiff.

122. Due to a new visitor policy, Plaintiff was not allowed in the Harborview Medical Center.

123. Plaintiff had co-worker Colleen Elerick gather Plaintiffs personal property and bring it out to Plaintiffs car on October 20, 2022.

124. Plaintiff requested Hannah Fishman, the union organizer for the radiology department, to submit a request for a grievance meeting.

125. The above request was not done.

126. Plaintiff filled out a request for a grievance meeting, then had Todd Christianson, another union delegate, submit the paperwork.

127. The grievance meeting was denied.

128. Plaintiff was unable to reach 30 years of service for Plaintiffs pension plan.

129. Plaintiff was terminated at 19 years and 10 months.

130. The above statement means the Plaintiff cannot start the collection of the plaintiffs' pension until age 65.

131. Again, Plaintiff was planning to retire at age 60 when 30 years of service was achieved.

132. The fact that the Plaintiff has to wait another 5 years for significantly less of a benefit is very detrimental to the Plaintiff.

133. Plaintiff earned 24 eight-hour days of vacation a year.

134. Plaintiff lost 246.15 hours of accrued sick time at a rate of pay at $64.26 per hour due to termination.

135. Plaintiff was accumulating sick time to cover potential healthcare costs after retirement.

136. Plaintiff lost all seniority and vacation accruals status.

137. Plaintiff was on leave under FMLA for 12 weeks, this was supported by the State of Washington's Employment Security Department.

138. Plaintiff has been receiving medical care from Muckleshoot Behavioral Health Center since the first visit in September 2021.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

139. Plaintiff continues to receive care at the Muckleshoot Behavior Health Center.

140. November 8, 2021 Plaintiff emailed Eddie Oliver, Ryan Butler (supervisor), and Fili Flemon (Assistant Director of Radiology) informing them that Plaintiff had been underpaid for services Plaintiff rendered unto UNIVERSITY of WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER on October 18, 2021.

141. Plaintiff worked 10-hour days, and was only paid for 8 hours of sick time on October 18, 2021.

142. Fact number 153, Plaintiff received no response from the recipients Eddie Oliver, Ryan Butler, and Fili Flemon in regards to the email.

143. On November 9, 2021, Plaintiff requested Todd Christianson to look into the above situation of under payment.

144. Todd Christianson informed the Plaintiff that Fili Flemon would remedy the situation.

145. Plaintiff submitted an EEOC Inquiry 551-2021-03922 on November 10, 2021.

146. On November 12, 2021, Plaintiff then scheduled and interview appointment with Rebecca Breslaw (Employed by EEOC) for November 22. 2021 at 10:30 AM.

147. Plaintiff filed an appeal on the dismissal of employment to the Washington Personnel Resources Board.

148. Plaintiff was interviewed by Rebecca Breslaw on November 22, 2021 at 10:30 AM and was given further instructions to review the charge, and make changes where needed.

149. All documents needed for the EEOC charge were emailed on November 28, 2021.

150. On December 1, 2021, Plaintiff emailed the information of the denial of a grievance meeting to Rebecca Breslaw at the EEOC.

151. The above information was added to the charge.

152. December 2nd, 2021 Eddie Oliver sent out an email from Homaira Omari in payroll services saying the Plaintiff only gets 8 hours of pay for Monday October 18, 2021, even though the Plaintiff works 10-hour shifts.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent  WA 98042

153.   Plaintiff physically mailed a TORT claim to the Department of Enterprise Services, Office of Risk Management in November 2021.

154.   Department of Enterprises received the tort claim on November 18, 2021.

155.   Plaintiff received an email from WILLIAM GOODMAN, confirming the receipt of the claim at in the University of Washington's' claims department on December 3, 2021.

156.   WILLIAM GOODMAN stated he was assigned to the Plaintiff's claim.

157.   Plaintiff received an email of potential dismissal of appeal with Washington Personnel Resources Board due to being a former member of a union.

158.   Plaintiff emailed a notarized Affidavit asking the Washington Personnel Resources Board to not dismiss the appeal.

159.   On January 12, 2022, the Plaintiff received a letter dismissing the appeal from the Washington Personnel Resources Board.

160.   WILLIAM GOODMAN also stated by email on January 18, 2022 that he had up to 3 years to conduct an investigation from the day the Plaintiff's accommodation was denied.

161.   On January 31, 2022 Plaintiff was notified that the UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER filed their Position statement with the EEOC.

162.   Plaintiff requested a copy of the Position statement on January 31, 2022.

163.   Plaintiff received the Position statement on February 1, 2022.

164.   On February 10, 2022, the Plaintiff responded with a rebuttal letter to the Position statement made by the UNIVERSITY OF WASHINGTON, UW MEDICINE HARBORVIEW MEDICAL CENTER'S Lawyer Timothy O'Connell from Stoel Rives.

165.   Plaintiff hired Attorney Luis Ewing to put together legal documents stating violations made by the UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER and asking for reinstatement and a compensation settlement.

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202ⁿᵈ AVE SE
Kent, WA 98042

166. Plaintiff had the Defendants LISA BRANDENBURG, MARK RICHARDS, KATHY SCHELL, and Lawyer Timothy O'Connell from Stoel Rives served with these documents on March 30, 2022.

167. The served documents demanded a response within 10 buisness days.

168. A copy of the legal document was also sent to the EEOC on March 30, 2022.

169. The Defendants did not respond to this document.

170. Plaintiff wrote up a follow up document, and had it delivered on April 18, 2022 to LISA BRANDENBURG, MARK RICHARDS, KATHY SCHELL, due to the lack of a response.

171. LISA BRANDENBURG'S letter was hand delivered to her assistant at 12:41 PM April 18, 2022.

172. WILLIAM GOODMAN email the Plaintiff at 1:01 PM April 18, 2022 saying the University received the Plaintiff's letter, and that the investigation is ongoing.

173. KATHY SCHELL'S letter was hand delivered to her drop box at University of Washington Tower at 12:22 PM April 18, 2022.

174. MARK RICHARD'S letter was hand delivered to his assistant at 12:55 PM April 18, 2022.

175. Plaintiff wrote a follow up email concerning the four and a half month investigation that started on December 3, 2021, and the available choices the University of Washington has for a decision.

176. The Defendants' choices were reinstatement of employment with settlement and compensation of monetary damages or settlement of TORT claim.

177. The above email was sent to LISA BRANDENBURG April 19, 2022 at 7:34 AM.

178. A similar letter was emailed to KATHY SCHELL on April 19, 2022 at 9:50 AM.

179. William Goodman emailed the Plaintiff on April 19, 2022 at 10:34 AM stating Kathy Schell had forwarded the Plaintiffs letter to his attention.

180. WILLIAM GOODMAN also stated in the above letter, that he hopes to communicate the UW's position within the next couple of weeks.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

181.   On April 21, 2022 Plaintiff wrote an email to LISA BRANDENBURG, KATHY SCHELL, and WILLIAM GOODMAN reminding them that WILLIAM GOODMAN has had the Plaintiffs Tort claim for four and a half months.

182.   The above email also stated the plaintiff was looking forward to the Defendants decision on May 4, 2022.

183.   On April 27, 2022, the Plaintiff had a packet of the prior emailed communications that occurred between April 19th through April 21st, along with a personal letter to MARK RICHARDS delivered to his assistant at 1:39 PM.

184.   The above packet was created and delivered to keep the Provost Mark Richards informed of what was being communicated.

185.   On April 27, 2022 at 5:04 PM WILLIAM GOODMAN sent a letter via email stating the University of Washington had concluded the investigation with a decision that no laws were violated.

186.   The above letter also stated no reinstatement of employment or settlement will be made.

187.   April 28, 2022 at 12:37 AM Plaintiff emailed WILLIAM GOODMAN a letter Thanking him for the reply.

188.   In the above letter the Plaintiff asked the Defendant to share what laws justified WILLIAM GOODMAN'S decision.

189.   WILLIAM GOODMAN did not reply to the question asked by the Plaintiff.

190.   May 2, 2022 Plaintiff emailed Fili Flemon at 11:07 AM a letter stating that the UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER needs to remove the Plaintiffs phone number from the Ultrasound Group Pager List.

191.   Plaintiff received Ultrasound pages from UW MEDICINE HARBORVIEW MEDICAL CENTER whenever an emergent ultrasound was needed, or when someone needed assistance by the Ultrasound Department.

192.   Plaintiff was taken off the paging list on that same day.

Comp. for Inj. and Dec. Relief                           Melissa L. White, (206)304-2261
                                                         31633 202nd AVE SE
                                                         Kent, WA 98042

193.   On June 30, 2022, Pedro Valencia from the EEOC reached out to the Plaintiff saying he was going to be the investigator for the charge.

194.   Pedro Valencia also stated he needed a name of an employee at UW MEDICINE Valley Medical Center in Renton, WA who was granted a religious exemption, and still works as a sonographer.

195.   Plaintiff complied and gave Pedro Valencia the information on June 16, 2022 via email.

196.   Plaintiff mailed a second TORT claim to the Office of Risk Management in Olympia on August 9th, 2022 and it was received on August 11th, 2022.

197.   Plaintiff emailed Jason Siems the Washington State Risk Manager requesting that the new TORT claim be investigated in the Olympia office on August 17th, 2022.

198.   Siems replied the same day stating his office did not have jurisdiction over the claim and had to send it to the University of Washington.

199.   On August 18th , 2022 Plaintiff received a list of all employees at UW Medicine Valley Medical Center who were granted religious exemptions with accommodations.

200.   The above list contained the job classes and the number of employees with approved religious exemptions currently working with a total of 222 employees and of those 3 are of the Plaintiffs job class.

201.   The above list was also sent to the EEOC on August 18th, 2022 via email.

202.   Plaintiff emailed the University of Washington's Risk Management office with concerns about who would be conducting this new TORT claim.

203.   Plaintiff had a packet delivered to the Provost Mark Richards on August 30th, 2022.

204.   This packet contained a personal letter to Mr. Richards with multiple exhibits.

205.   These exhibits included the Original Tort claim, Request for Reinstatement Document, New TORT claim, New Request for Reinstatement Demand List, Mr. Goodman's conclusion letter of the first TORT claim, Plaintiff's response to the original TORT claim decision, and a copy of the recent email to Mr. Goodman and Mrs. Flores pertaining to Plaintiff's concerns of Mr. Goodman again managing Plaintiff's TORT claim.

Comp. for Inj. and Dec. Relief                        Melissa L. White, (206)304-2261
                                                      31633 202nd AVE SE
                                                      Kent WA 98042

206.  On September 2nd, 2022 Mr. Goodman emailed Plaintiff stating the UW lawyer would be contacting the Plaintiff within two weeks.

207.  September 19th, Plaintiff emailed Mr. Goodman letting him know that the attorney did not contact the Plaintiff.

208.  September 26th Plaintiff emailed Mr. Goodman acknowledging that no one was responding to the Plaintiff.

209.  September 9th, 2022 Plaintiff received a Right to Sue letter with instructions from the EEOC.

210.  On October 12, 2022 WILIAM GOODMAN stated through email that the University could not find anything of wrong doing and will not be offering settlement for the Plaintiff's second TORT claim.

211.  Plaintiff had a packet delivered to Ana Mari Cause the President of the University of Washington informing her Plaintiff was going to file with the court the following week giving her one last chance to make a wrong right on October 26, 2022..

212.  The packet included a personal letter to the President Miss Cause, a copy of the complaint, and copies of the most recent communications with MR. GOODMAN and MR. RICHARDS.

213.  The following day the Plaintiff received an email from Megan Reilly from the Office of the President of the University of Washington acknowledging the receipt of Plaintiff's documents and that they were forwarded to the Office of Risk Management, who will provide a response.

214.  On October 28th at 4:11 PM the Plaintif received an email from Timothy O'Connell stating he will be representing the Defendants and will send a more formal communication letter the latter part of next week due to pressing business, and to funnel all communications through him.

## DECLARATORY JUDGEMENT AND FEDERAL QUESTIONS

215.  Plaintiffs reallege, restate, and incorporate by reference the allegations in the

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent  WA 98042

1   foregoing jurisdictional, and factual allegations.

2   216.   The Orders given by the UNIVERSITY OF WASHINGTON, UW MEDICINE

3          HARBORVIEW MEDICAL CENTER,  UW MEDICINE CHOICE CARE LLC, LISA

4          BRANDENBURG, TIMOTHY DELLIT, KATHY SCHELL, MARK RICHARDS,

5          WILLIAM GOODMAN, and LAURA BARRY to the Plaintiff are unconstitutional on their

6          face and as applied to the inviolable, exclusive, inherent, and inalienable right to possess,

7          enjoy, use, and dispose of property which includes but is not limited to, personal autonomy

8          and freedom of conscience, the orders restricting these fundamental rights must be narrowly

9          tailored to a compelling state interest, as necessitated by the required strict scrutiny rule.

10  217.   Directly or indirectly all Defendants acted in a concerted conspiracy with the

12         unconstitutional orders and ultimately discriminated against the Plaintiff.

13

14  218.   **1ST Federal Question**: When an arm of the State of Washington, the UNIVERSITY OF

15         WASHINGTON, UW MEDICINE HARBORVIEW MEDICAL CENTER, UW

16         MEDICINE chills, deters, and deprives the constitutionally secured substantive rights of we

17         the people via a new condition of employment, does the Plaintiff lose her Constitutionally

18         secured substantive rights? Plaintiff contends, no.

19  219.   Therefore, the Plaintiff is entitled to injunctive relief to enjoin Defendants from enforcing

20         un-constitutional actions against the Plaintiff or anyone else.

21

22  220.   **2nd Federal Question:** Can the advice, guidelines, recommendations, and encouragement

23         from corporate, federal, and state agencies, such as the CDC and the Office of The Governor

24         supersede the United States Constitution which incorporates substantive and procedural due

25         process? Plaintiff contends, no.

26  221.   Therefore, the Plaintiff is entitled to injunctive relief against Defendants to enjoin them

27         from enforcing un-constitutional actions against the Plaintiff or anyone else.

28

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

222.   **3rd Federal Question:** Does the State of Washington under the United States Constitution allow the UNIVERSITY OF WASHINGTON, UW MEDICINE HARBORVIEW MEDICAL CENTER, UW MEDICINE to declare edicts, ordinances, or rules that violate the Plaintiff's substantive and procedural rights as secured by the United States Constitution and Federal law? Plaintiff contends, no.

223.   Therefore, the Plaintiff is entitled to injunctive relief to enjoin Defendants from enforcing un-constitutional actions against the Plaintiff or anyone else.

224.   **4th Federal Question:** Must the Plaintiff comply with edicts, ordinances, or suggestions that violate constitutionally secured rights absent of due process? Plaintiff contends, no.

225.   Therefore, the Plaintiff is entitled to injunctive relief to enjoin Defendants from enforcing un-constitutional actions against the Plaintiff or anyone else.

226.   **5th Federal Question:**  Can a state or state agency deliberately deprive its citizens of their federally protected constitutional rights and hide behind the 11th Amendment? Plaintiff contends, no.

227.   Therefore, the Plaintiff is entitled to injunctive relief to enjoin Defendants from enforcing un-constitutional actions against the Plaintiff or anyone else.

228.   WHEREFORE Melissa White moves this Honorable Court to enter an Order for money damages against the Defendants, together with such other and further relief, as the Court may deem reasonable and just under the circumstances.

## DEMAND FOR EMPANELMENT OF GRAND JURY

## PRIMA FACIE EVIDENCE OF CRIMINAL ACTS BY DEFENDANTS

229.   Plaintiff incorporates by reference the facts set forth above as if set forth herein full.

230.   Plaintiff Melissa L. White is seeking compliance with title 42 U.S.C. § 1987 (Prosecution of violation of certain laws) that authorizes and requires, at the expense of the  United

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent WA 98042

1    States, to institute prosecutions against all persons violating any of the provisions of Title 18

2    U.S.C. § 241 and 242, Title 18 U.S.C. § 1964 (a) (b) (c) and § 1968 (Civil investigative

3    demand) and to cause such persons to be arrested, and imprisoned or bailed, for trial before

4    the court of the United States or the territorial court having cognizance of the offense. See

5    Pub. Law 106-274, Sec. 4 (d), Sept. 22, 2000, 114 Stat. 804.

6

7    **<u>REQUEST FOR INJUNCTIVE RELIEF</u>**

8    231.   "Absolute freedom of conscience in all matters of religious sentiment, belief and worship,

9        shall be guaranteed to every individual, and no one shall be molested or disturbed in person

10       or property on account of religion," WA Const. Art. I, §11.

12    232.   42 U.S. Code § 2000e–2 - Unlawful employment practices, (2) to limit, segregate, or

13       classify his employees or applicants for employment in any way which would deprive or

14       tend to deprive any individual of employment opportunities or otherwise adversely affect his

15       status as an employee, because of such individual's race, color, religion, sex, or national

16       origin.

17    233.   The Defendants conspiracy to deny equal employment in the common occupations of

18       life, which provides a livelihood, and is protected by the United States Constitution and

19       Washington State Constitution.

20    234.   These actions taken by the Defendants who conspired to violate the Constitutional rights

21       of the Plaintiff, committed both criminal and civil penalties.

22    235.   Plaintiff requests injunctive relief for all persons who are or could be harmed by the

23       Defendants actions that arises out of the Defendants' conspiracy to deprive US Citizens

24       and/or Washingtonians of inherent, sacred and inalienable rights in the absence of due

25       process and equal protection of the laws.

26    236.   As such, the new recently imposed employment requirement requiring a

27       prospective/current employee to be in possession of this new medical document/license

28       should be put on pause to prevent further harm to such individuals.

Comp. for Inj. and Dec. Relief                   Melissa L. White, (206)304-2261
                                                 31633 202nd AVE SE
                                                 Kent, WA 98042

237.   WHEREFORE Melissa White moves this Honorable Court to enter an Order for money damages against the Defendants, together with such other and further relief, as the Court may deem reasonable and just under the circumstances.

## **COUNT: 1 VIOLATION OF TITLE VII**
## **CIVIL RIGHTS ACT of 1964**

238.   Plaintiff reallege, restate, and incorporate by reference the allegations in the forgoing jurisdictional and factual allegations.

239.   Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating on the basis of religion.

240.   42 U.S. Code § 2000e–2 - Unlawful employment practices, **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, **religion,** sex, or national origin.

241.   Title VII requires employers and businesses that are open to the public to make reasonable accommodations for employees and customer's religious beliefs. A prima facie case for failure to accommodate under Title VII requires a plaintiff to show that (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer or business owner of the beliefs and the conflict; and (3) the employer or business responded by subjecting the employee or customer to threatened or actual discriminatory treatment. Lawson v. Washington, 296 F.3d 799, 804 (9th Cir., 2002).

242.   As a defense, the employer or business owner may show that it either offered the employee a reasonable accommodation or that an accommodation would be an "undue hardship" or unduly burdensome on the employer.

**243.**   August 12, 2021 Plaintiff received an email from Defendants stating, "UW Medicine will be adhering to this mandate." Regarding to Governor Inslee issuing a proclamation

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                   31633 202nd AVE SE
                                                   Kent WA 98042

1    mandating that all public and private healthcare workers produce a certain medical

2    document/license by October 18 2021. **(See Exhibit A)**

3    244.   The above email also stated that Religious and Medical exemptions could be claimed.

4    245.   As stated in the Facts for this Complaint, the plaintiff filed for a religious exemption.

5    **246.**   Plaintiff's religious exemption was denied due to an "undue hardship". **(See Exhibit B)**

6    247.   "In your case, we determined that while you stated a sincerely held religious belief,

7       practice, or observance, it would pose an undue hardship on UW Medicine to allow you to

8       remain in your position", UW MEDICINE Human Resources.

9    248.   At no time did the Defendants provide a reason for the "undue hardship".

10   249.   "The University then analyzed whether it could provide White with a reasonable

12      accommodation without suffering an undue hardship or burden. **Simply put, putting**

13      **patients and co-workers at heightened risk of serious harm or death from COVID-19 is**

14      **much, much more than a de minimis burden**. After careful consideration, the University

15      determined that, given the permanent nature of White's accommodation request and her

16      patient contact, no accommodation could be provided to White without the University

17      bearing more than a de minimis cost or risk of harm from COVID-19", Stated by Timothy

18      O'Connell, University of Washington's lawyer. **(See Exhibit C)**

19   250.   Nowhere did the Defendants ever provide proof of such a claim.

20   251.   The Defendants failed to submit any evidence of such a claim.  For example under the

21      Federal Rules of Evidence Rule 702 – Testimony by Expert Witnesses, A witness who is

22      qualified as an expert by knowledge, skill, experience, training, or education may testify in

23      the form of an opinion or otherwise if: (b) **the testimony is based on sufficient facts or**

24      **data**.

25   252.   Another example under the Federal Rules of Evidence Rule 103 – Rulings on Evidence,

26      **(2)** if the ruling excludes evidence, a party informs the court of its substance by an **offer of**

27      **proof**, unless the substance was apparent from the context.

28

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202ⁿᵈ AVE SE
                                                  Kent, WA 98042

253.  At no time was there any proof that the Plaintiff posed any threat or danger to coworkers or patients, and failed to make any accommodation in direct violation of 28 CFR § 36.202 – Activities, **(a) *Denial of participation.*** A <u>public accommodation</u> shall not subject an individual or class of individuals on the basis of a <u>disability</u> or disabilities of such individual or class, directly, or through contractual, **licensing**, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a <u>place of public accommodation</u>.

254.  "In religious accommodation, the employer can generally show undue hardship if the cost or impact is more than de minimis," Washington Human Rights Commission.

255.  However, again the Defendants produced no evidence of the Defendants claim of "undue hardship".

256.  The Defendants further failed to make any showing that it offered a reasonable accommodation or that an accommodation would be an "undue hardship" or that providing any kind of accommodation would be "unduly burdensome" on UW MEDICINE.

257.  It is obvious that the Defendants are conspiring in concert under the color of law to deprive the Plaintiff of the Plaintiff's federally protected constitutional right to a religious exemption with an accommodation.

258.  At no time was the Plaintiff a heightened risk to the Plaintiff's coworkers and patients to cause serious harm and/or death.

259.  The Plaintiff at no time has been sick or had symptoms of the alleged virus.

260.  Plaintiff worked from the beginning of the pandemic January 2020 to September 17th 2021 at no time did the Plaintiff cause a threat to the Plaintiff's coworkers or patients.

261.  Nothing changed on October 18th, 2021, except the Plaintiff was terminated without just cause in violation of the SEIU 1199 NW union contract which requires just cause termination. **(See Exhibit D)**

262.  UW Medicine's religious animus and discrimination are further evidenced by the fact that, while UW Medicine requires its employees to show proof of this medical

Page 26 of 55

document/license, UW Medicine does not require patients or visitors to have this same medical document/ license, even though these individuals interact with UW Medicine staff on a daily basis.

263.   If UW Medicine were concerned about potential **harm /or death** caused by people without this medical document/license on its premises, UW Medicine would not exempt large groups of people on its premises, while refusing to exempt only employees who objected to this medical document/license on religious grounds.

264.   As stated in the Facts UW Medicine has four major hospitals; UW Medicine Harborview in Seattle, UW Medical Center in Seattle with two campuses, and UW Medicine Valley Medical Center in Renton.

265.   The three hospitals in Seattle house state employees, while UW Medicine Valley Medical Center employees are not employees of the State of Washington.

266.   All the employees at UW Medicine Valley Medical Center who put in for a religious exemption were approved for an exemption with accommodation.

267.   Through a records request, 225 employees were granted a religious exemption with an accommodation at UW Medicine Valley Medical Center. **(See Exhibit E)**

268.   Out of those 225 employees, three are in the Plaintiff's job class and perform the duties of the position just as the Plaintiff did prior to unlawful termination.

269.   Sixty-two of those accommodated employees are Registered Nurses who work at the bedside taking care of the patients all day long.

270.   According to established practice by UW Medicine, UW Medicine Valley Medical Center is a safe environment for non-licensed employees while at UW Medicine Harborview Medical Center, UW Medicine Montlake, and UW Medicine Northwest are considered a non-safe environment for employees who do not have possession of the medical document/license.

271.   Further on this subject, Virginia Mason Franciscan Health Medical Centers throughout Pierce and King Counties, MultiCare Medical Centers throughout Pierce and King Counties,

Page 27 of 55

and Providence Swedish Medical Centers throughout King County all granted religious exemptions with an accommodation.

272.   What makes UW Medicine Harborview Medical Center, Northwest, and Montlake Hospitals unsafe compared to the other hospitals in the area including UW Medicine Valley Medical Center is that they all have state employees.

273.   UW Medicine is hiding behind the 11th Amendment, and is deliberately depriving their employees of their federally protected constitutional rights under the color of law.

274.   UW MEDICINE and all the DEFENDANTS conspired in concert to deliberately and unlawfully terminate all employees who had sincerely held religious beliefs and were unable to obtain the medical document/license they were demanding under the color of law, while all the other major hospitals in the area were granting religious exemptions with accommodations.

275.   "Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion," WA Const. Art. I, §11.

276.   "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their **Creator** with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, --**That whenever any Form of Government becomes destructive of these ends**, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness," Declaration of Independence.

277.   During the grievance meeting on September 27th, 2021, Plaintiff asked the Defendants many times what the reason was for a classification of Undue Hardship, the response of the Defendants was silence and then followed again with, a statement of undue hardship.

278.   Not once did the Defendants provide any kind of proof to back up the Defendants claim.

Page 28 of 55

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

279.   Defendants directly or indirectly worked in concert to deprive inherent constitutionally protected rights, which has been emotionally traumatizing to mind, body, and soul.

280.   WHEREFORE Melissa White moves this Honorable Court to enter an Order for money damages against the Defendants, together with such other and further relief, as the Court may deem reasonable and just under the circumstances.

## COUNT 2: VIOLATION OF 42 U.S.C. § 1983
## (DUE PROCESS AND EQUAL PROTECTION CLAUSES)

281.   Plaintiff reallege, restate, and incorporate by reference the allegations in the forgoing jurisdictional and factual allegations.

282.   At all times relevant herein, Plaintiff had a right under due process and equal protection clauses of the state and federal constitutions not to be deprived of Plaintiffs constitutionally protected interest in property and exercise of religious liberty. .*U.S.C. Const. Amend. 14; WA State Const. Sec 2, 3.*

283.   "The 14th Amendment to the United States Constitution, broadly guaranteeing equal protection of the laws and due process of law[1] limits state power by its inhibitions[2]. Fundamental liberties protected by the Due Process Clause of the 14th Amendment include most of the rights enumerated in the Bill of Rights, and, in addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs.[3]" *(1) U.S. Const. Amend. XIV*; *(2) Southern Ry. Co. v. Commonwealth of Virginia ex rel. Shirley, 290 U.S. 190, 54 S. Ct. 148, 78 L. Ed. 260 (1933); Borrell v. Bloomsburg University, 870 F.3d 154, 347 Ed. Law Rep. 64 (3d Cir. 2017), cert. denied, 138 S. Ct. 2028, 201 L. Ed. 2d 279 (2018); Davison v. Randall, 912 F.3d 666 (4th Cir. 2019), as amended on other grounds (Jan. 9, 2019).*; *(3) Obergefell v. Hodges, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015).* If this is true of the states, than this is true of the UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER as well.

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

284.   The Defendants demanded the Plaintiff to comply with the UNIVERSITY OF
WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL
CENTER'S new employment policy or be terminated.  **(See Exhibit B and F)**

285.   The Plaintiff complied by submitting a request for religious exemption, even though the
Plaintiff already has this fundamental right of freedom of religion granted by God and our
forefather's, and secured by the Constitution of the United States.

**286.**   The Defendants then denied the Plaintiff of the Plaintiffs' First Amendment right under
the Free Exercise Clause of the First Amendment with a denial letter of the Plaintiffs'
request for religious exemption. **(See Exhibit B)**

287.   "The Free Exercise Clause is interpreted to mean that the government is prohibited from
interfering with or attempting to regulate any person's religious beliefs, from coercing a
person to affirm beliefs repugnant to the person's religion or conscience, and from directly
penalizing or discriminating against a person for holding beliefs contrary to those held by
anyone else.[4] The government cannot impose regulations that are hostile to the religious
beliefs of affected citizens and cannot act in a manner that passes judgment upon or
presupposes the illegitimacy of religious beliefs and practices.[5]" *(4) School Dist. of Abington
Tp., Pa. v. Schempp, 374 U.S. 203, 83 S. Ct. 1560, 10 L. Ed. 2d 844 (1963).; (5) Masterpiece
Cakeshop, Ltd. v. Colorado Civil Rights Com'n, 138 S. Ct. 1719, 201 L. Ed. 2d 35 (2018)*. If
this is true of U. S. Congress, then this is true of the UNIVERSITY OF WASHINGTON,
UW MEDICINE, UW MEDICINE HARBORVEIW MEDICAL CENTER.

288.   ***"The free exercise of religion includes right to engage in conduct that is motivated by
religious beliefs held by the individual asserting the claim.[6] The Free Exercise Clause
guarantees that government will not impinge on the freedom of individuals to celebrate
their faiths, in the day-to-day, or in life's grand moments.[7]" (6) Bible Believers v. Wayne
County, Mich., 805 F.3d 228 (6th Cir. 2015). (7) Doe ex rel. Doe v. Elmbrook School
Dist., 687 F.3d 840, 282 Ed. Law Rep. 829 (7th Cir. 2012).***

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent WA 98042

289.   Plaintiff, a loyal and dedicated employee, was unconstitutionally terminated on October 18, 2021 without any Due Process.

290.   Plaintiff attended a religious exemption denial grievance meeting on September 27, 2021 via zoom meeting.

291.   Defendant KATHY SCHELL was also in attendance.

292.   Multiple employees including the Plaintiff wanted to know why the religious exemption employees were considered dangerous and a threat to other staff and patients.

293.   Kathy Schell and her colleagues could not answer this question.

294.   They continued to say they could not accomidate any of the religious exemption employees due to an "undue hardship", even though they could not produce any factual evidence proving what they were alleging.

295.   The Defendants said if we did not comply with their demands we would be terminated, and Plaintiff was.  **(See Exhibit D and G)**

296.   The Plaintiff requested a grievance meeting and was denied.  **(See Exhibit H)**

297.   Plaintiff was terminated with a non-disciplinary separation.

298.   The union contract and the University of Washington's own Administrative Policy Statement 43.16 on dismissal for non-union staff both state there needs to be a just cause for dismissal and a hearing prior to dismissal.

299.   There was no just cause for dismissal for the Plaintiff.

300.   The University of Washington, UW Medicine, UW Medicine Harborview Medical Center could not provide any factual evidence justifying their claim that the religious exemption employees are dangerous and pose a threat to others.

301.   The University of Washington, UW Medicine, and UW Medicine Harborview Medical Center have all failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that the Plaintiff poses any threat or danger to other employees or patients, and failed to make any accommodation in direct violation of 28 CFR § 36.202; 13 CFR § 112.6; RCW 49.60.030; RCW 49.60.215, and further failed to make any

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

showing that it offered a reasonable accommodation or that an accommodation would be an "undue hardship" or that providing any kind of accommodation would be "unduly burdensome on the employer or place of business.

302.   Plaintiff also requested a grievance meeting about the termination and this was denied. **(See Exhibit H)**

303.   In the union contract, there is no mention of a non-disciplinary separation.

304.   The contract does state, "No employee shall be subject to the Corrective Action/Dismissal Process except for just cause," UW – SEIU1199NW Master Contract 2019-2021 Article 36.1.

305.   The contract goes on to outline the Process.  The Defendants did not follow this process and acted as if the process did not exist.

306.   Plaintiff did not get the Plaintiffs constitutional right to Due Process.

307.   "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Oliver v. Virginia Board of Bar Examiners, 312 F.Supp.3d 515 (2018).*

308.   Most hospitals in the King County area including UW Medicine Valley Medical Center in Renton granted their employees religious exemptions, so therefore those sonographer's in those hospitals are still employed doing the normal duties of a sonographer.

309.   "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States;" *Cohens v. State of Virginia, 19 U.S. 264 (1821).*

310.   So therefore, the UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER violated the Plaintiffs' equal protection under the laws not only outside of the state, but also within the state itself, and most importantly within UW Medicine.

311.   UW Medicine violated the Equal Protection of the Laws by not allowing religious exemptions at the UW Medicine Harborview Medical Center campus, and allowing religious exemptions at the Valley Medical Center campus.  **(See Exhibit E)**

Page 32 of 55

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

312.    Some other examples of a hospital systems in the King county who granted religious exemptions, Virginia Mason Franciscan Health Medical Centers, MultiCare Medical Centers, and Providence Swedish Medical Centers.

313.    All health facilities stated in line 75 including UW Medicine Valley Medical Center's patient care staff who have been granted a religious exemption still work with patients, performing their normal patient care duties.

314.    At all relevant times herein, the defendants were state actors, and their conduct was subject to 42 U.S.C. §§§ 1983, 1985, 1988.

315.    The Supreme Court has established that the state action requirement in a section 1983 claim is satisfied when the party charged with an alleged constitutional deprivation "may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).*

316.    ***"Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions." Dennis v. Sparks. 449 U.S. 24, 27-28 (1980).***

317.    Acting under the color of law and with Jay Inslee's guidance, the defendants worked in concert to deny Plaintiffs' rights, privileges, or immunities secured by federal law and with guarantees by the Washington State Constitution Sections Two and Three along with Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States of America.

318.    As a direct result of the Defendants concerted, unlawful, and malicious conduct Plaintiff was deprived of rights to equal protection under the law, due process of the law, inviolable right to personal autonomy, right to property, and the due course of justice was impeded in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

319.    Defendants LISA BRANDENBURG, TIMOTHY DELLIT, MARK RICHARDS, KATHY SCHELL, WILLIAM GOODMAN, and the UNIVERSITY OF WASHINGTON,

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                   31633 202nd AVE SE
                                                   Kent, WA 98042

1 UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER, and/or any

2 subsidiaries thereof, had an obligation and duty to Plaintiff to be aware of the Federal and

3 State laws, which govern discriminatory practices and protect the Plaintiffs constitutional

4 rights.

5 320. These actions and omissions by the Defendants the UNIVERSITY OF WASHINGTON,

6 UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER through their

7 various agencies and policy making officials, demonstrates a callous indifference to the

8 rights of the Plaintiff and other individuals who have been harmed by these 'policies;' and

9 such consequence is reasonably foreseeable by the Defendants the UNIVERSITY OF

10 WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL

12 CENTER.

13 321. Such failure to investigate and discipline the agents involved reflects a deliberate and

14 conscious indifference by the Defendants.

15 322. Defendants knew or should have known their duty and obligations as reasonable men,

16 women, and to know the consequences of depriving Plaintiff of Constitutionally secured

17 rights when in breach of that duty.

18 323. Defendants directly or indirectly worked in concert to deprive inherent constitutionally

19 protected rights, which has been emotionally traumatizing to mind, body, and soul.

20 324. WHEREFORE Melissa White moves this Honorable Court to enter an Order for money

21 damages against the Defendants, together with such other and further relief, as the Court

22 may deem reasonable and just under the circumstances.

23

24 <u>**COUNT 3: VIOLATION OF 42 U.S.C. §1985**</u>

25 <u>**(DEPRIVING PERSONS OF RIGHTS OR PRIVLEDGES)**</u>

26 *325.* Plaintiff reallege, restate, and incorporate by reference the allegations in the foregoing

27 jurisdictional, and factual allegations.

28

Page 34 of 55

Comp. for Inj. and Dec. Relief   Melissa L. White, (206)304-2261
      31633 202nd AVE SE
      Kent, WA 98042

326.   The conspiratorial purpose of the Defendants was based on the UNIVERSITY OF
WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL
CENTER having the authority of depriving the Plaintiff of Plaintiff's right to earn a lively
hood in the ordinary occupations of life that is protected by the constitution of the United
States.

327.   The right is a fundamental, natural, inherent right, and inalienable and one of the most
sacred and most valuable rights of a citizen.

328.   The plaintiffs' occupation is the plaintiff's personal property, and the Defendants
conspired to violate Plaintiffs' sacred right.

329.   "It was said that the right to work for a living in the common occupations of the
community is a part of the freedom which it was the purpose of the Fourteenth Amendment
to secure" *Terrace v. Thompson, 263 U.S. 197 (1923).*

330.   "The principle is imbedded in our constitutional system that there are certain essentials of
liberty with which the state is not entitled to dispense in the interest of experiments" *New
State Ice Co. v. Liebmann, 285 U.S. 262 (1932).*

331.   "Constitutional guarantees of particular fundamental rights protect those rights from
violation[8] or interference by the government[9] or burdens imposed by the government,[10] at
least to the extent that the government interference is unwarranted or the burden is undue.[11]
Fundamental constitutional rights may not be made to yield to mere legislative discretion,[12]
public interest, or majority vote,[13]" *(8) GJA v. Oklahoma Dept. of Human Services, 2015
OK CIV APP 32, 347 P.3d 310 (Div. 4 2015); (9) Lafler v. Cooper, 566 U.S. 156, 132 S. Ct.
1376, 182 L. Ed. 2d 398 (2012); Matter of Naomi B., 435 P.3d 918 (Alaska 2019);
Bridgeville Rifle & Pistol Club, Ltd. v. Small, 176 A.3d 632 (Del. 2017); (10) National
Association for Advancement of Colored People v. City of Philadelphia, 834 F.3d 435 (3d
Cir. 2016); Beydoun v. Sessions, 871 F.3d 459 (6th Cir. 2017); Bridgeville Rifle & Pistol
Club, Ltd. v. Small, 176 A.3d 632 (Del. 2017); (11) Speiser v. Randall, 357 U.S. 513, 78 S.
Ct. 1332, 2 L. Ed. 2d 1460 (1958); State ex rel. Lindell v. Litscher, 2003 WI App 36, 260*

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

1    *Wis. 2d 454, 659 N.W.2d 413 (Ct. App. 2003); (12) State v. Edwards, 100 Conn. App. 565,*

2    *918 A.2d 1008 (2007); Bridgeville Rifle & Pistol Club, Ltd. v. Small, 176 A.3d 632 (Del.*

3    *2017); House of Prayer Ministries, Inc. v. Rush County Board of Zoning Appeals, 91 N.E.3d*

4    *1053 (Ind. Ct. App. 2018), transfer denied, 102 N.E.3d 287 (Ind. 2018); (13) Lafler v.*

5    *Cooper, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012).*

6    332.    Defendants knew or should have known that the constitution and laws of the United

7    States is the controlling authority.

8    333.    As a result, the Defendants in concert conspired to deprive the Plaintiff of the equal

9    protection, equal privileges, and immunities as protected under the constitution and laws of

10    the United States and the State of Washington.

12    334.    Defendants negligently and egregiously denied the Plaintiff constitutionally protected

13    rights of property and freedom of conscience.

14    335.    *Statements by some courts indicate constitutional protection for rights termed*

15    *"natural," in addition to rights protected under the specific guarantee safeguarding a*

16    *person in life, liberty, or pursuit of happiness,[14] such as a natural right of personal*

17    *autonomy[15]. (14) People v. Shephard, 152 Ill. 2d 489, 178 Ill. Dec. 724, 605 N.E.2d 518*

18    *(1992); Hodes & Nauser, MDs, P.A. v. Schmidt, 309 Kan. 610, 440 P.3d 461 (2019);*

19    *Preterm Cleveland v. Voinovich, 89 Ohio App. 3d 684, 627 N.E.2d 570 (10th Dist.*

20    *Franklin County 1993). (15) Hodes & Nauser, MDs, P.A. v. Schmidt, 309 Kan. 610, 440*

21    *P.3d 461 (2019).*

22    336.    Plaintiff asked Defendants to provide the laws in which granted the UNIVERSITY OF

23    WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL

24    CENTER the authority to enact such unconstitutional employment policies to deny

25    Plaintiff's constitutionally protected rights and violate the laws of the United States.

26    337.    The Defendants had no laws to back up the defendant's new unconstitutional policy.

27    338.    The Defendant WILLIAM GOODMAN sent an official letter by email stating no laws

28    were broken. **(See Exhibit I)**

Comp. for Inj. and Dec. Relief                     Melissa L. White, (206)304-2261
                                                   31633 202nd AVE SE
                                                   Kent, WA 98042

339.   The Defendants choose to hide behind the recommendations of the Office of The Governor of Washington State who has no authority to enact such a policy.

340.   *An emergency, while it cannot create power, increase granted power, or remove or diminish the restrictions imposed upon the power granted or reserved, may allow the exercise of power already in existence but not exercised except during an emergency. Veix v. Sixth Ward Building & Loan Ass'n of Newark, 310 U.S. 32, 60 S. Ct. 792, 84 L. Ed. 1061 (1940); Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A.L.R. 1481 (1934).*

341.   *"Even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S.Ct. 63, 68 (2021)*

342.   The discriminatory animus was that the employees working for the UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER were a Sovereign class and the Plaintiff was not, creating a class-based, invidiously, and discriminatory animus, depriving the Plaintiff of constitutionally protected rights.

343.   *To state a claim under § 1985(3) a Plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).*

344.   Defendants worked in concert to enforce a new unconstitutional condition of employment in such all employees would have to produce a new license/medical document to continue employment.

345.   The Defendants added in the policy that employees could seek a religious or medical exemption.

346.   The Defendants then did not approve exemptions due to "undue hardship".  **(See Exhibit B)**

347.   When defendants were asked why it was an undue hardship, they had no answers.

348.   The University of Washington, UW Medicine, and UW Medicine Harborview Medical Center have completely failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that religious exempted employees were dangerous and a threat to others.

349.   Other hospitals in the area granted exemptions.

350.   However, exempted employees at UW Medicine facilities, except for UW Medicine Valley Medical Center in Renton, were considered dangerous and a threat to patients and staff.

351.   While in the presence of other hospitals, such as UW Medicine Valley Medical Center, the exempted employees are considered safe to work with patients and other staff. **(See Exhibit D and E)**

**352.**   In conjunction with the fact that the Plaintiff was considered safe to be employed until October 18th, 2021, the Plaintiff did not get equal protection under the laws and was deprived of the plaintiffs personal property without due process. **(See Exhibit D and G)**

353.   This separation of policies between the two hospitals under the UW Medicine umbrella is illogical and conspiratorial in nature.

354.   Plaintiff was given a letter stating this was a non-disciplinary dismissal.  **(See exhibit 2)** According to the union contract established between the University of Washington, UW Medicine Harborview Medical Center and SEIU 1199 NW, states that University of Washington, UW Medicine Harborview Medical Center, needs a just cause, and that there is a process to be followed regarding such dismissal.

355.   Plaintiff asked for a grievance meeting and this was denied.  **(See Exhibit H)**

356.   While the whole time the Plaintiff was under medical attention.  **(See Exhibit J)**

357.   Plaintiff could not do the normal duties of sleep; breathe normal, concentrate, etc.

358.   FLMA paperwork was submitted into the Human Recourses Department. **(See Exhibit J)**

359.   The submitted FLMA paperwork was denied, even though the Plaintiff met all the

requirements. **(See Exhibit K)**

360.   Through these acts, the Defendants were on a mission to deprive the Plaintiff of Plaintiffs

constitutional rights.

361.   WHEREFORE Melissa White moves this Honorable Court to enter an Order for money

damages against the Defendants, together with such other and further relief, as the Court

may deem reasonable and just under the circumstances.

## **COUNT 4: COMMON LAW CONSPIRACY**

362.   Plaintiff realloge, restate, and incorporate by reference the allegations in the foregoing

jurisdictional, and factual allegations.

363.   All Defendants had (a) a task to be accomplished; (b) an agreement on the object or

course of action, to wit, to deprive the Plaintiff of the Plaintiffs' right to equal protection of

the laws, specifically the right to earn a lively hood in the ordinary, occupations of life

absent of discrimination; (c) performed one or more unlawful overt acts; and (d) caused the

Plaintiff damages that were a direct result of those acts.

364.   The Defendants had one task and one task only, and that was to get every employee to

comply with their demands or be unlawfully terminated.

365.   The Defendants demanded every employee to show proof of a new license/medical

document to continue employment without any means of a religious exemption.  **(See**

**Exhibit A and B)**

366.   "A state may not impose a charge for the enjoyment of a right granted by the federal

constitution," *Murdock v. Com. of Pennsylvania, 319 U.S. 105 (1943).*

367.   ***A State may not use newly enacted stricter standards for entry into a profession to deny***

***those already legally practicing a profession of their right to continue practicing***

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent  WA 98042

1  *thereafter.  Abramson v. Gonzalez, 949 F.2d 1567, 21 Fed. R. Serv. 3d 1021 (11th Cir.*

2  *1992)*

3  368.  All Defendants directly or indirectly protected, insulated, and authorized agents to act in

4  wanton disregard to the constitutionally protected rights of the Plaintiff, which ultimately

5  resulted in the unconstitutional termination depriving the Plaintiff of the Plaintiffs' rights.

6  369.  "Neither an emergency[15] nor economic necessity[16] justifies a disregard of cardinal

7  constitutional guarantees, nor can the common law[17] or public policy considerations

8  override constitutional mandates.[18]" *(15) City of Mobile v. Rouse, 233 Ala. 622, 173 So. 266,*

9  *111 A.L.R. 349 (1937). (16) Riley v. Carter, 1933 OK 448, 165 Okla. 262, 25 P.2d 666, 88*

10  *A.L.R. 1018 (1933); (17) Department of Revenue v. Kuhnlein, 646 So. 2d 717 (Fla. 1994),*

12  *as clarified, (Nov. 30, 1994). (18) Camp v. Kenney, 673 So. 2d 436 (Ala. Civ. App. 1995).*

13  370.  It is also said, "the particular phraseology of the constitution of the United States

14  confirms and strengthens the principle, supposed to be essential to all written constitutions,

15  that a law repugnant to the constitution is void; and that courts, as well as other departments,

16  are bound by that instrument," *Marbury v. Madison, 1 Cranch 137 (1803).*

17  371.  The Defendants have conspired against the Constitutional rights of the Plaintiff who

18  sought a religious exemption.

19  372.  The Defendants had no intention to grant the Plaintiff a religious exemption.

20  373.  The Defendants denied the religious exemption due to an undue hardship.  **(See Exhibit**

21  **B)**

22  374.  When asked what the basis was for the undue hardship the Defendants did not have any

23  factual evidence to back up the Defendants claim.

24  375.  The University of Washington, UW Medicine, and UW Medicine Harborview Medical

25  Center have completely failed to submit any ER 702 "competent written evidence" and/or

26  failed to make any ER 103(2) Offers of Proof that allowing the Plaintiff any accommodation

27  under 28 CFR § 36.202; 13 CFR § 112.6; RCW 49.60.030; RCW 49.60.215, would pose

28

Comp. for Inj. and Dec. Relief                            Melissa L. White, (206)304-2261
                                                          31633 202nd AVE SE
                                                          Kent, WA 98042

any valid safety concern that would cause it any "undue hardship." *Draper v. U.S. Pipe & Foundry Co., supra.*

376.   The University of Washington, UW Medicine, UW Medicine Harborview Medical Center have clearly violated both State and Federal Public Accommodation laws as codified at 28 CFR § 36.202; 13 CFR § 112.6; RCW 49.60.030; RCW 49.60.215, based upon mere speculation, conjecture and fraud.

377.   The Defendants just stated that the Plaintiff was dangerous and posed a threat on patients and fellow staff starting October 18, 2021. **(See Exhibit C)**

378.   Even though the other hospitals in the area granted exemptions, and continued to let the exempted workers work with patients and staff. **(See Exhibit E)**

379.   Then Defendants continued to deprive the rights of the Plaintiff by no due process and equal protection of the laws.

380.   In doing this, the Defendants deprived the Plaintiff of the Plaintiffs fundamental rights to property rights and the right to earn a living in the common occupations of life.

381.   "Constitutional provisions for the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon," *Byars v. U.S., 273 U.S. 28 (1927).*

382.   Plaintiff had asked the union SEIU1199NW to submit a request for a grievance hearing on the matter of unlawful termination.

383.   Union failed to submit this document.

384.   Plaintiff then typed up the document and asked CT Technologist Todd Christianson to submit the request for a grievance hearing. **(See Exhibit H)**

385.   Christianson submitted the document and the hearing was denied, in violation of the union contract, which states that the University of Washington, UW Medicine, UW Medicine Harborview Medical Center can only terminate an employee for just cause and that the employee has a right to a hearing. **(See Exhibit H)**

Comp. for Inj. and Dec. Relief                         Melissa L. White, (206)304-2261
                                                       31633 202nd AVE SE
                                                       Kent, WA 98042

386.   In consequence, Plaintiff was dismissed from employment with a non-disciplinary dismissal without a just cause, and without a hearing.  **(See Exhibit D)**

387.   Starting in September 2021 the Plaintiff had physical symptoms of no sleep, irregular breathing and unable to concentrate, therefore Plaintiff had lost control of these vital functions.

388.   Plaintiff sought help at the Muckleshoot Wellness Center and Muckleshoot Behavior Center.

389.   A licensed healthcare provider filled out legal paperwork for the Plaintiff to be placed on FLMA, due to Plaintiff not being able to perform Plaintiff's occupational duties safely. **(See Exhibit J)**

390.   The University of Washington, UW Medicine, UW Medicine Harborview Medical Center denied the FMLA paperwork even though the Plaintiff met all requirements. **(See Exhibit K)**

391.   The denial of the Plaintiff's FMLA rights caused further emotional and physical damage to the Plaintiff.

392.   As the Honorable Court can see, the Defendants had one mission and one mission only to terminate the Plaintiff, if the Plaintiff did not produce this license/medical document.

393.   WHEREFORE Melissa White moves this Honorable Court to enter an Order for money damages against the Defendants, together with such other and further relief, as the Court may deem reasonable and just under the circumstances.

## **COUNT 5: BREACH OF CONTRACT**

## **ARTICLE 36 – CORRECTIVE ACTION/DISMISSAL PROCESS**

394.   Plaintiff reallege, restate, and incorporate by reference the allegations in the forgoing jurisdictional and factual allegations.

Comp. for Inj. and Dec. Relief                                    Melissa L. White, (206)304-2261
                                                                  31633 202nd AVE SE
                                                                  Kent, WA 98042

395.   The Plaintiff was covered by the Collective Bargaining Agreement By and Between the University of Washington For UW Medicine Harborview Medical Center and SEIU 1199 Northwest for UW Medicine Harborview Medical Center 2019-2021.

396.   The UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER breached the contract agreement with SEIU1199NW 2019-2021 Biennium under article 36.1 and 36.4.

397.   The UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER and the union did not follow the contractible agreement.

398.   "No employee shall be subject to the Corrective Action/Dismissal Process except for just cause," *UW – SEIU1199NW Master Contract 2019-2021 Article 36.1.*

399.   It also states "The Corrective Action/Dismissal Process will be considered to incorporate the concept of progressive action and provide a positive process for improvement.

400.   The University will determine the specific step at which the process begins based on the nature and severity of the problem."

401.   The provided clauses above in the contract were not completed according to established and agreed upon protocol set forth within the contract.

402.   The UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER also breached the Defendants own Administrative Policy Statement 43.16 on dismissal for non-union staff.

403.   Both policies state there needs to be a just cause for dismissal and a hearing prior to dismissal.

404.   The union contract Article 36.4 covers the right to a hearing.

405.   "**Dismissal.** Prior to dismissal, a pre-determination meeting will be scheduled to give an employee an opportunity to make their case before the final decision is made. The employee has the right to have a Union representative present at the pre-determination meeting. At least five (5) days prior to the meeting, the employee will be informed in writing of the

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

reasons for the contemplated dismissal and given referenced documentation. The employee

will be furnished with written notification of the outcome of the pre-determination hearing"

*UW – SEIU1199NW Master Contract 2019-2021 Biennium.*

406.   The Plaintiff was not given a just cause for the dismissal, nor a hearing for the dismissal

in contradiction to the established and agreed by laws of the union contract and

UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW

MEDICAL CENTER's own administrative policy.

407.   Instead, Plaintiff received an email on October 18, 2021 from LISA BRANDENBURG

stating Plaintiffs was dismissed from Plaintiffs' position due to not turning in the newly

required license/medical document or having an approved religious exemption. **(See Exhibit**

**D)**

408.   Plaintiff requested a grievance hearing, and it was denied, which was in violation of

clause 36.4 of the contract, which states: "**Grievability/Arbitrability**. Informal Coaching of

the Corrective Action/Dismissal Process above is not grievable. Formal counseling may be

grieved through Step Three Mediation of the grievance procedure only. Final counseling and

dismissal may be grieved through every step of the grievance procedure beginning at Step

Two" *UW – SEIU1199NW Master Contract 2019-2021 Biennium, Article 36.4.* **(See**

**Exhibit H)**

409.   Through this action, the Defendants denied the Plaintiff of the agreed upon right to

extensive Due Process.

410.   Nowhere in the union contract does it say anything about being subject to a non-

disciplinary separation.

411.   It only states the UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE

HARBORVIEW MEDICAL CENTER has to have just cause.

412.   In addition as the Plaintiff was a union delegate involved in many corrective action cases

with fellow employees/union members and Human resources representative Aimee Buckius.

Comp. for Inj. and Dec. Relief                     Melissa L. White, (206)304-2261
                                                   31633 202ⁿᵈ AVE SE
                                                   Kent, WA 98042

413. One particular case involve and employee, who shall be referred to as Jane Doe, was set to be terminated due to wrongful acts.

414. The decision of the termination of Doe was due to an investigation proving wrongful acts were committed as alleged.

415. Doe was given a hearing and was terminated, however, Doe's reasoning for termination was given under just cause and backed by physical evidence.

416. This was not only in concordance with UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER's own administrative policy and the contractual agreement with SEIU 1199 NW, but also sets past precedence for the dismissal process regarding termination.

417. In comparison to the Plaintiffs dismissal, which was a non-disciplinary separation, there was no just cause or physical evidence regarding undue hardship employed in the separation process.

418. Because of this, UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER's actions violated their administrative policy and contractual agreement with SEIU 1199 NW.

419. WHEREFORE Melissa White moves this Honorable Court to enter an Order for money damages against the Defendants, together with such other and further relief, as the Court may deem reasonable and just under the circumstances.

## **COUNT 6: BREACH OF CONTRACT**

## **ARTICLE 21 – FAMILY MEDICAL LEAVE ACT AND PARENTAL LEAVE**

420. Plaintiff reallege, restate, and incorporate by reference the allegations in the forgoing jurisdictional and factual allegations.

421. The Plaintiff was covered by the Collective Bargaining Agreement By and Between the University of Washington For UW Medicine Harborview Medical Center and SEIU 1199 Northwest for UW Medicine Harborview Medical Center 2019-2021.

Comp. for Inj. and Dec. Relief                     Melissa L. White, (206)304-2261
                                                   31633 202nd AVE SE
                                                   Kent, WA 98042

422.   The UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER breached the contract agreement with SEIU1199NW 2019-2021 Biennium under article 21 against the Plaintiff.

423.   Article 21.1 Federal Family and Medical Leave Act. Consistent with the federal Family and Medical Leave Act of 1993, an employee who has worked for the state for at least twelve (12) months and for at least one thousand two hundred and fifty (1250) hours during the twelve (12) months prior to the requested leave is entitled to up to twelve (12) work weeks of leave per year for any combination of the following:

Section B. personal medical leave due to the employee's own serious medical condition that requires the employee's absence from work.

424.   Plaintiff met all requirements to be placed on FMLA.

425.   A licensed healthcare provider placed the Plaintiff on leave according to the jurisdiction of the Family Medical Leave Act (FMLA).  **(See Exhibit J)**

426.   All proper paperwork was filled out and was given to the leave specialist, Laura Barry.

427.    Plaintiff met all requirements outlined in Article 21.1 for the Federal FMLA of the union contract.

428.   However, in violation of the agreed bylaws, the University of Washington denied Plaintiffs medically necessary FMLA. **(See Exhibit K)**

429.   According to Title 29 U.S.C. §825.220 of the FMLA regulations, "An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act".

430.   The action taken by the Defendants are in direct violation of the clause outlined by section §825.220 of FMLA regulations.

431.   Under these circumstances, the Plaintiffs right to take leave under the Family Medical Leave act was violated.

432.   The Defendants actions of violating the Plaintiffs constitutional rights are what caused the Plaintiff to need to go on leave under FMLA jurisdiction.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

1   433.   The Plaintiff's weekly schedule consisted of 10 hour shifts on Monday, Tuesday,

2          Thursday, and Friday.

3   434.   On the Plaintiffs last day of service, Monday October 18, 202, the Plaintiff was only paid

4          for 8 hours of sick time instead of the normal 10 hours.

5   435.   Plaintiff reached out to supervisor Eddie Oliver, who reached out to Homaira Omari in

6          payroll services.  **(See Exhibit L)**

7   436.   The Payroll department said the Plaintiff was placed on continuous leave, so therefore the

8          Plaintiff was paid as working 5 days a week 8 hours a day.

9   437.   This decision caused the Plaintiff to only be paid for 8 hours on Plaintiffs' last day.

10  438.   In the union contract under Article 21.6, Schedule During Continuous Leave of Absence

12         defined as FMLA and Parental Leave, It states that "employees who are placed on an

13         approved continuous leave of absence (FMLA or Parental Leave) will be paid in this fashion

14         of 5 days a week with 8 hours a day for employees working 40 hours per week" *UW –*

15         *SEIU1199NW Master Contract 2019-2021 Biennium, Article 21.6.*

16  439.   However, the UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE

17         HARBORVIEW MEDICAL CENTER denied Plaintiffs' request for leave under FMLA,

18         denying the plaintiff Continuous Leave of Absence. According to the union contract,

19         Continuous leave of absence is defined as FMLA and/or Parental Leave.

20  440.   The Defendants refused to pay the Plaintiff the other 2 hours of sick time for the Monday

21         October 18, 2021, under the declaration that the plaintiff was undergoing Continuous leave

22         of absence, otherwise known as leave under FMLA. **(See Exhibit L)**

23  441.   The plaintiff being a former union delegate for SEIU 1199 NW handled various cases

24         involving workers attaining leave under FMLA.

25  442.   One particular case involving an employee, who will be referred as John Doe, was set to

26         be terminated, but needed medical attention a few days prior to the impending termination

27         hearing.

28

Comp. for Inj. and Dec. Relief                          Melissa L. White, (206)304-2261
                                                        31633 202nd AVE SE
                                                        Kent, WA 98042

443. Doe was granted leave under FMLA with help from Plaintiff's delegate duties, staying employed for an additional 9 months past his termination date.

444. The reasoning for the acceptance of the employee's leave under FMLA according to the Human Resources Representative, Aimee Buckius, stated that the leave under FMLA for Doe could not be denied.

445. This Past practice of granting leave under FMLA to John Doe sets precedence for UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER's policy for granting leave under FMLA.

446. In comparison to the Plaintiff's case, UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER, violated this established past practice and contract agreement.

447. WHEREFORE Melissa White moves this Honorable Court to enter an Order for money damages against the Defendants, together with such other and further relief, as the Court may deem reasonable and just under the circumstances.

## **COUNT 7: VIOLATION RCW 9A.80.010 OFFICIAL MISCONDUCT**

448. A violation of RCW 9A.80.010, Official misconduct, is defined as (1) A public servant is guilty of official misconduct if, with intent to obtain a benefit or to deprive another person of a lawful right or privilege: (a) He or she intentionally commits an unauthorized act under color of law; (2) Official misconduct is a gross misdemeanor.

449. The Defendants deprived the Plaintiff of the plaintiffs of inviolable, exclusive, inherent, and inalienable right to possess, enjoy, use, and dispose of property which includes but is not limited to, personal autonomy and freedom of conscience, the orders restricting these fundamental rights must be narrowly tailored to a compelling state interest, as necessitated by the required strict scrutiny rule.

450. The Defendants deprived the Plaintiff of Plaintiff's right of freedom of religion under Title VII of the Civil Rights Act of 1964.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

451. 28 U.S. Code § 4101 – Definitions, **(1)Defamation.**

452. The term "**defamation**" means any action or other proceeding for **defamation, libel, slander**, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.

453. The Defendants committed libel against the Plaintiff through their lawyer Timothy O'Connell in a position statement written in the behalf of the Defendants to the EEOC. **(See Exhibit C)**

454. O'Connell goes on further stating, "The University then analyzed whether it could provide White with a reasonable accommodation without suffering an undue hardship or burden. **Simply put, putting patients and co-workers at heightened risk of serious harm or death from COVID-19 is much, much more than a de minimis burden.** After careful consideration, the University determined that, given the permanent nature of White's accommodation request and her patient contact, no accommodation could be provided to White without the University bearing more than a de minimis cost or risk of harm from COVID-19. Consequently, White's religious accommodation request from Proclamation 21-14 was properly denied under Title VII."

455. Criminal and unprofessional conduct exercised by O'Connell and the Defendants stating that Plaintiff was putting Plaintiff's patients and coworkers at a heightened risk of serious harm or death from COVID-19 without any factual evidence to back up his or the Defendants claim.

456. The UNIVERSITY OF WASHINGTON, UW MEDICINE, UW MEDICINE HARBORVIEW MEDICAL CENTER also has no factual evidence of this claim.

457. Not at any time was plaintiff sick with COVID-19 or had any symptoms of the alleged virus.

458. Plaintiff worked with numerous COVID-19 patients, and never contracted the virus.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

459. If an individual is going to accuse another of such extremely harsh claims, the individual better have factual evidence, O'Connell and Defendants did not provide such evidence besides blanket statements.

460. Without such factual evidence, O'Connell and Defendants are committing Libel against the Plaintiff.

461. Defendants directly or indirectly worked in concert to deprive inherent constitutionally protected rights, which has been emotionally traumatizing to mind, body, and soul.WHEREFORE Melissa White moves this Honorable Court to enter an Order for money damages against the Defendants, together with such other and further relief, as the Court may deem reasonable and just under the circumstances.

## **COUNT 8: NEGLIGENT INFLICTION OF EMOTIONAL STRESS**

462. Plaintiff reallege, restate, and incorporate by reference the allegations in the foregoing jurisdictional, and factual allegations.

463. Defendants knew or should have known as reasonable men and women the duties we each have towards one another as members of society with different beliefs, customs, usages, and practices.

464. ***It is also not entirely unworthy of observation, that in declaring what shall be the supreme law of the land, the constitution itself is first mentioned.  Marbury v. Madison, 1 Cranch 137 (1803)***

465. Defendants breached their duty as reasonable men and women by recklessly and callously identifying themselves as superior people, above the law of the United States, thereby inflicting emotional distress, mental anxiety, and causing physical symptomatology.

466. Plaintiff underwent extensive therapy with the Muckleshoot Behavior Health Services to overcome some of the damages done by the Defendants.

467. Plaintiff was placed on leave under the Family Medical Leave Act (FMLA) for twelve weeks, due to Plaintiff not being able to function properly. **(See Exhibit J)**

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent  WA 98042

468.   The leave under FMLA was supported by the State of Washington.

469.   Plaintiff's employer UNIVERSITY OF WASHINGTON, UW MEDICINE, UW
       MEDICINE HARBORVIEW MEDICAL CENTER denied Plaintiffs' request for FMLA
       against union contractual agreement and federal laws.

470.   The Plaintiff would have not needed FMLA if the Plaintiffs' employer did not present
       such a horror of a situation for the Plaintiff.

471.   Not only did this unlawful act of the Defendants effect the Plaintiff, but also caused an
       extremely stressful burden on the Plaintiffs' family as well, and continues to persist due to
       financial hardship.

472.   ***The innocent individual who is harmed by an abuse of governmental authority is
       assured that he will be compensated for his injury.  Owen v. City of Independence, Mo.,
       445 U.S. 622 (1980)***

473.   Plaintiff did reach out to the Defendants on March 30, 2022 with legal paperwork stating
       the Defendants violated Plaintiffs constitutional rights.

474.   The legal document was also asking for the Plaintiff to have reinstatement of
       employment with compensation for violating constitutional rights. **(See Exhibit M)**

475.   On April 27, 2022 WILLIAM GOODMAN emailed a letter stating the UNIVERSITY
       OF WAHINGTON, UW MEDICINE, and UW MEDICINE HARBORVIEW MEDICAL
       CENTER did not violate any laws.  **(See Exhibit I)**

476.   The Defendants "will not be offering you reinstatement of your employment,
       compensation, or settlement."

477.   Plaintiff responded thanking WILLIAM GOODMAN, and asked what laws justified the
       actions of the University of Washington, UW Medicine, and UW Medicine Harborview
       Medical Center.

478.   Despite this, there was no response to the inquiry, which is concerning and stressful to
       the Plaintiff since it is an indication of good faith not being reciprocated.

479.  Plaintiff has made numerous attempts to try to get the Defendants to correct their actions, but the Defendants continue to be state actors working under the color of law.

480.  Plaintiff has had to digest a lifetime's worth of legal knowledge, which have caused expenses that were not scheduled, sleep loss, weight loss, and other physical symptomatology due to the mental and emotional distress caused by Defendant's negligent actions.

481.  Plaintiff was humiliated, shamed, scoffed, threatened, coerced, and ultimately denied continuous employment by the Defendants in breach of duty to their fellow man.

482.  WHEREFORE Melissa White moves this Honorable Court to enter an Order for money damages against the Defendants, together with such other and further relief, as the Court may deem reasonable and just under the circumstances.

## **REQUEST FOR RELIEF**

483.  The Defendants who conspired to violate the Constitutional rights of the Plaintiff, committed both criminal and civil penalties.

484.  This action arises out of the Defendants' conspiracy to deprive Plaintiff of inherent, sacred and inalienable rights in the absence of due process and equal protection of the laws.

485.  The Defendants conspiracy to deny equal employment in the common occupations of life, which provides a livelihood, and is protected by the United States Constitution and Washington State Constitution.

486.  Plaintiff cannot get a job with the same vacation accrual status of 24 days per year, have the seniority Plaintiff built up over 19 years and 10 months to get the days off that the Plaintiff requests without someone with more seniority getting precedence, and now has a detrimental circumstance pertaining to the Plaintiffs retirement.

487.  The statement above not only effects the Plaintiff, but the Plaintiff's family as well.

488.  WHEREFORE, Melissa White seek redress for grievances in which this Court can grant relief:

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

489.  Assume Jurisdiction over this action.

490.  Enter a judgement and decree declaring that any alleged corporate policies by the UNIVERSITY OF WASHINGTON, UW MEDICINE CHOICE CARE LLC, UW MEDICINE HARBORVIEW MEDICAL CENTER, LISA BRANDENBURG, TIMOTHY DILLET, MARK RICHARDS, KATHY SCHELL, WILLIAM GOODMAN, and LAURA BARRY fails the constitutional scrutiny test.

491.  The new employment policy is unconstitutional on its face and because it deprives the Plaintiff of personal property rights, the right of due process, equal protection under the laws, freedom of conscience and these rights guaranteed to the Plaintiff by the United States Constitution and both state and federal laws.

492.  Award Plaintiff costs for litigation, including assistance of council/attorney's fees and expenses.

493.  Council/attorney fees for Request for Reinstatement paperwork for $400.00.

494.  Litigation to be determined.

495.  Plaintiff demands remuneration for actual damages in the amount of $50,375.00 dollars for time spent learning how to plead a case, travel and spend time at the law library, and paralegal training course Jurisdictionary.

   1.a $125.00 hourly rate each @ 401 hours is $50,125.00

   1.b Jurisdictionary course $250.00

496.  Plaintiff demands Compensatory relating to both special and general, liquidated, and punitive damage relief in accordance with the 14th amendment, from Defendants for the arbitrary, capricious, and unreasonable deprivation of rights guaranteed and secured by the United States Constitution.

497.  THE UNIVERSITY OF WASHINGTON, UW MEDICINE CHOICE CARE LLC, UW MEDICINE HARBORVIEW MEDICAL CENTER, LISA BRANDENBURG, TIMOTHY DELLIT, MARK RICHARDS, KATHY SCHELL, WILLIAM GOODMAN, and LAURA BARRY for $149,000,000.00.

Comp. for Inj. and Dec. Relief                    Melissa L. White, (206)304-2261
                                                  31633 202nd AVE SE
                                                  Kent, WA 98042

498.   WHEREFORE Melissa White moves this Honorable Court to enter an Order for money

damages against the Defendants, together with such other and further relief, as the Court

may deem reasonable and just under the circumstances.

Dated this _8th_ day of _November_, 2022

Respectfully submitted,

_Melissa Lynn White_

Melissa Lynn White, Plaintiff

Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

## **VERIFICATION**

STATE OF WASHINGTON

COUNTY OF KING

BEFORE ME personally appeared Melissa White who, being by me first duly sworn and

Identified in accordance with Washington law, deposes and says:

   1. My name is Melissa White, Plaintiff herein.

   2. I have read and understood the attached foregoing complaint, and each fact

alleged therein is true and correct of my own personal knowledge.

FURTHER, THE AFFIANT SAYETH NAUGHT.

_Melissa White_

                                     Melissa White, Affiant

SWORN TO and subscribed before me this ___4th___ day of ___November___, 2022.

_Signature_

Notary Public

My Commission expires: 12/03/ 2025

Notary Public
State of Washington
NHU TRUONG
LICENSE # 22002132
MY COMMISSION EXPIRES
DECEMBER 3, 2025

Comp. for Inj. and Dec. Relief

                                    Melissa L. White, (206)304-2261
                                    31633 202nd AVE SE

FILED
2022 NOV 08
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 22-2-18496-5 KNT

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

White

Petitioner,

vs.

University of
washington

Respondent.

NO. 22-2-18496-5 KNT

_____ Photos

_____ Report _____

_____ Social Media Messages (SOM)/ Text Messages

_____ Statement/Declaration of _____

☒ Correspondence (CRRSP)

    ☒ Emails (EMAIL)
    ☒ Letter (LTR)

_____ Other _____

1

2

# Exhibits A- M

3

4   Exhibit A ---------------------------------------------------- Page 2

5   Exhibit B ---------------------------------------------------- Page 4

6   Exhibit C ---------------------------------------------------- Page 5

7   Exhibit D ---------------------------------------------------- Page 13

8   Exhibit E ---------------------------------------------------- Page 14

9   Exhibit F ---------------------------------------------------- Page 18

10  Exhibit G ---------------------------------------------------- Page 19

12  Exhibit H ---------------------------------------------------- Page 20

13  Exhibit I ---------------------------------------------------- Page 22

14  Exhibit J ---------------------------------------------------- Page 23

15  Exhibit K ---------------------------------------------------- Page 30

16  Exhibit L ---------------------------------------------------- Page 31

17  Exhibit M---------------------------------------------------- Page 34

18

19

20

21

22

23

24

25

26

27

28

Ex. For Comp. for Inj. and Dec. Relief

Melissa L. White, (206)304-2261
31633 202nd AVE SE
Kent, WA 98042

EXHIBIT A

# Fw: Summer surge: Non-urgent surgery postponement & state vaccine requirement

From: Melissa White <mlwhite@uw.edu>

To:                                    <mlwhite2@protonmail.com>

**Melissa White RDMS, R.T.(R)(CT)**

**Lead Sonographer**
Department of Radiology | **Harborview Medical Center**
325 9th Ave | Box 359728 | Seattle, WA 98104-2499
**OFFICE:**   206.744.5903   **CELL:** 206.744.7557
**EMAIL:**    mlwhite@uw.edu

**From:** UW Medicine Leadership <uwmtalk@uw.edu>
**Sent:** Thursday, August 12, 2021 3:30 PM
**To:** Melissa White <mlwhite@uw.edu>
**Subject:** Summer surge: Non-urgent surgery postponement & state vaccine requirement



To the UW Medicine Community:

Similar to the rest of the country, Washington State is experiencing a rapid increase in COVID-19 cases and hospitalizations, predominantly in the unvaccinated population. This fifth wave of the pandemic comes at a time when hospitals across the state already face significant capacity challenges. In coordination with public health and other healthcare systems across our state, UW Medicine continues to respond to the ongoing pandemic and serve our community. We are incredibly grateful for and proud of your dedication to our patients and to each other amidst the continued toll of the pandemic.
**Postponing Non-Urgent Surgeries**

We wanted to update you on the proactive steps that UW Medicine and other healthcare organizations in the state are taking to build capacity and maintain our ability to safely care for those patients requiring hospitalization. First, UW Medicine is working with our physicians and operational teams to review all non-urgent surgeries scheduled through September 19 and postpone those procedures that can safely be rescheduled to a later date. We know that delaying a surgery or procedure can be difficult for our patients and their families, and we appreciate your role in helping them understand the reasons for this decision. Second, UW Medicine is partnering with state agencies to expedite finding

EXHIBIT A

providers to care for our patients who no longer need hospital level care. Third, UW Medicine is further increasing our recruitment efforts to ensure that we have the staff we need to deliver the high-quality care that our patients have come to expect.

**New Vaccination Mandate for Employees**

Vaccination against COVID-19 is the most important tool to end this pandemic. Vaccination is safe and remains extremely effective in decreasing hospitalizations and deaths even with the emergence of the delta variant. On Monday, in response to rising COVID-19 cases and the need to keep our patients and staff safe, Governor Inslee issued a proclamation mandating that all public and private healthcare workers be vaccinated by October 18. UW Medicine will be adhering to this mandate. It is important to point out that the Governor's proclamation limits exemptions only to medical or a sincerely held religious belief. Therefore, UW Medicine employees in the healthcare setting will no longer be able to claim a philosophical exemption. We expect all employees in the healthcare setting to adhere to the requirements of this mandate and for those that have yet to do so, we ask that you prioritize making your first-dose appointment and take the necessary steps to meet the October 18 deadline.

We appreciate the frustration, anxiety and uncertainty that a fifth COVID-19 wave brings and the impact it has on your life and the lives of our patients. It is your ongoing commitment to our patients and each other that will continue to drive us toward ending this pandemic. Thank you for all that you do to serve our community.

Sincerely,

**Lisa Brandenburg**
President, UW Medicine Hospitals & Clinics
Vice President for Medical Affairs, University of Washington

**Timothy H. Dellit, MD**
Chief Medical Officer, UW Medicine
Vice President for Medical Affairs, University of Washington
President, UW Physicians

**Jeannine Grinnell**
SVP, CFO, Interim CEO, Valley Medical Center

**Sommer Kleweno-Walley**
Interim CEO, Harborview Medical Center

**Cindy Hecker**
CEO, UW Medical Center

**399 bytes** 📄 1

📎 Outlook-tndjvte5.png (399 bytes)

EXHIBIT B



# Religious Exemption Denial Letter – Direct patient care

September 10, 2021

Dear Melissa White:

We received your request for an exemption to the COVID-19 vaccination requirement, as mandated by Governor Inslee's Proclamation 21-14.1, based on a conflict with a sincerely held religious belief, practice, or observance. We have reviewed the information you provided. **Your request for exemption is denied.**

Notwithstanding whether you may have a sincere religious belief, practice, or observance, accommodating your request would cause undue hardship.  This is particularly the case given your position as a Diagnostic Medical Sonographer Lead, in which you provide direct patient care.

Because your request for exemption has been denied, you are required to begin the process of becoming fully vaccinated within 10 days of receiving this notice or you will be subject to non-disciplinary separation effective October 18, 2021.

We do not want that to happen and are here to support you however we can. More information about the COVID-19 vaccines, including FAQs, can be found here.

Thank you for attention to this important matter.

Medical Centers Human Resources.

Cc:      Eddie Oliver

**UW Medicine Human Resources**

1959 NE Pacific Street, BB150
Box 355054          **FAX**        206.598.4610
Seattle, WA  98195    **WEB**      uwmedicine.org

EXHIBIT C



**Stoel Rives** LLP

January 31, 2022

Timothy J. O'Connell
600 University Street, Suite 3600
Seattle, WA 98101
D. 206.386.7562
tim.oconnell@stoel.com

**VIA EEOC PORTAL**

Cheryl Milner
U.S. EEOC
2815 2nd Avenue
Seattle, WA 98121
cheryl.milner@eeoc.gov

**Re:    Melissa L. White / University of Washington/UW Medical Center/Harborview
        Medical Center
        EEOC: 551-2021-03922**

Dear Ms. Milner:

Our firm represents the University of Washington ("University" or "UW"), which operates and
manages Harborview Medical Center ("Harborview"), an entity of UW Medicine.  Please accept
this letter as the University's position statement in response to the above-referenced charge
alleging religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").[1]

By providing responsive information contained in this letter, the University does not waive its
immunity from suit in federal or state court or any of its other defenses to suit.  Further, this
correspondence may contain confidential information, and such information is provided with the
understanding that it will remain confidential.

As discussed in detail below, Melissa L. White's ("White") charge is without merit.  White was
dismissed from her employment with the University because of her inability or unwillingness to
be vaccinated against COVID-19.  The obligation to do so was required by Proclamation 21-14
("Proclamation") issued by the Governor of the State of Washington, Jay Inslee.  As required by
that Proclamation (and its subsequent policies), the University has careful procedures in place to
evaluate each employee's request for accommodation based on religious beliefs. After reviewing
White's individual circumstances, the University concluded that White's sincerely held religious

---

[1] The University provides this response based on its understanding and interpretation of the charge and good faith
understanding of the facts and circumstances as presently known.  The University may seek clarification of the
charge and will amend, withdraw, or supplement the information if necessary.  The University objects to the use of
this response for any purpose other than the federal Equal Employment Opportunity Commission's ("Commission")
consideration of this charge.

EXHIBIT C

Ms. Cheryl Milner
January 31, 2022
Page 2

belief prevented her from getting the COVID-19 vaccine; but the University could not
implement the requested accommodations for her without undue hardship based on her direct
patient contact (her face-to-face and/or physical contact with patients).

Further, the University properly denied White's request for leave under the Family and Medical
Leave Act ("FMLA"). On or about October 13, 2021—days before Proclamation 21-14's
vaccination deadline—White filed for leave to avoid anticipated dismissal for failure to comply
with the Proclamation.

## FACTUAL BACKGROUND

### A. University of Washington

The University is a clinical, research, and learning Health Care Setting (as defined below) with
nearly 29,000 UW faculty, non-faculty practitioners, and staff. The University has four major
hospitals—Harborview in Seattle, UW Medical Center in Seattle with two campuses, and Valley
Medical Center in Renton—and nearly 100 primary, urgent, and specialty care clinics throughout
Washington State. Additionally, the University is affiliated with other medical entities and
shares in the ownership and governance of Children's University Medical Group and Seattle
Cancer Care Alliance.

Harborview and the UW Medical Center are consistently ranked as among the top hospitals in
the state. With the University's clinical, research, and education/training programs, UW
Medicine health professionals provide the most up-to-date care for each individual patient, lead
one of the world's largest and most comprehensive medical research programs, and provide
innovative learning programs for students, trainees, and practitioners in the health professions.

### B. University of Washington's Employment Policies

The University has the strongest possible commitment to equal employment opportunity.
Indeed, the University prohibits discrimination or harassment against a member of the University
community because of race, color, creed, religion, national origin, citizenship, sex, pregnancy,
age, marital status, sexual orientation, gender identity or expression, genetic information,
disability, or veteran status in compliance with Title VII of the Civil Rights Act of 1964 (42
U.S.C. §§ 2000d—2000d-7).[2] As is relevant here, that includes respect for all religions and

---

[2] The University of Washington, University Administrative Policy Statement 46.4, *Statements to Ensure Equal
Opportunity and Reasonable Accommodation*, https://www.washington.edu/admin/rules/policies/APS/46.04.html
(last visited Jan. 27, 2022). *See also*, The University of Washington, Executive Order No. 31, *Nondiscrimination
and Affirmative Action*, https://www.washington.edu/admin/rules/policies/PO/EO31.html (last visited Jan. 27,
2022); The University of Washington, University Administrative Policy Statement 46.3, *Resolution of Complaints
Against University Employees*,
http://www.washington.edu/admin/rules/policies/APS/46.03.html#:~:text=Report%20and%20Cooperate-
,All%20University%20employees%2C%20including%20academic%20personnel%2C%20staff%2C%20temporary
%20staff,harassment%2C%20and%2For%20retaliation%20they (last visited Jan. 31, 2022); The University of
Washington, University Administrative Policy Statement 46.5, *Reasonable Accomodation of Employees with*

# EXHIBIT C

Ms. Cheryl Milner
January 31, 2022
Page 3

religious practices, and the University accommodates religious or deeply held personal beliefs
based on standards articulated by the Commission.

### C. Proclamation 21-14 Issued by the Governor of the State of Washington, Jay Inslee

Under Chapters 38.08, 38.52, and 43.06 of the Revised Code of Washington ("RCW"), the
Governor has the authority to exercise emergency powers by prescribing procedures for conduct
or imposing restrictions, which have the force of law.  Governor Inslee has relied on this
authority to take a number of emergency steps to respond to the current COVID-19 pandemic.
As part of this response, Governor Inslee issued Proclamation 21-14 on August 9, 2021,
prohibiting the following:[3]

> c. Any Health Care Provider from failing to be fully vaccinated against COVID-
> 19 after October 18, 2021; and
>
> d. Any individual or entity that operates a Health Care Setting from permitting a
> Health Care Provider to engage in work for the individual or entity as an
> employee, contractor, or volunteer after October 18, 2021 if the Health Care
> Provider has not been fully vaccinated against COVID-19 and provided proof
> thereof to the individual or entity. Providers who do not work in a Health Care
> Setting must provide proof of vaccination to the operator of the facility in which
> the Provider works, if any, or, if requested, to a lawful authority. A lawful
> authority includes, but is not limited to, law enforcement, local health
> jurisdictions, and the state Department of Health.

Proclamation 21-14 defines a "Health Care Provider" as "[i]ndividuals with credentials listed in
the Healthcare Professional Credentialing Requirements list; [i]ndividuals who are permitted by
law to provide health care services in a professional capacity without holding a credential;
[l]ong-term care workers unless specifically excluded in this order; and [w]orkers in any Health
Care Setting, as defined herein."[4]  Here, White squarely falls within the definition of a "Health
Care Provider."  Additionally, the University falls within the definition of a "Health Care
Setting," which is defined as "any public or private setting that is primarily used for the delivery
of in-person health care services to people."[5]

---

*Disabilities,* https://www.washington.edu/admin/rules/policies/APS/46.05.html (last visited Jan. 31, 2022).  Your
request for information inquired as to whether the University has an affirmative action plan pursuant to EO 11246
and its progeny.  It does.  Your letter also asked whether the University has gone through an OFCCP review within
the past two years.  It has not.

[3] State of Washington, Office of Governor Jay Inslee, *Proclamation 21-14* at 4
https://www.governor.wa.gov/sites/default/files/proclamations/21-14%20-%20COVID-
19%20Vax%20Washington%20%28tmp%29.pdf (Aug. 9, 2021).

[4] *Id.* at 6.

[5] *Id.*

EXHIBIT C

Ms. Cheryl Milner
January 31, 2022
Page 4

In addition, Proclamation 21-14 states that workers for Health Care Providers are not required to get vaccinated against COVID-19 if they are entitled to an accommodation under Title VII.[6] Proclamation 21-14 further clarifies that, as provided in Title VII and other laws, "individuals or entities for which Health Care Providers work as employees, contractors, or volunteers and State Agencies are not required to provide such accommodations if they would cause undue hardship."[7]

### D. Melissa White's Employment with the University

White alleges that the University violated Title VII by failing to accommodate her religious exemption request for Governor Inslee's vaccination mandate in Proclamation 21-14. White's claim is meritless. The University engaged in the interactive process by analyzing White's individual circumstances. After a close review, the University found that it could not implement the requested accommodation for her without undue hardship and without putting its other employees and patients at risk of serious harm or death from COVID-19. Accordingly, the University was required by law to comply with Proclamation 21-14 and dismiss White on October 18, 2021.[8]

#### 1. The University Employed White as a Diagnostic Medical Sonographer

White worked as a Diagnostic Medical Sonographer ("Sonographer") at Harborview. As the region's only Level I Trauma center, Harborview is well known for innovations and excellence in trauma care. Harborview employees play a vital role in the immediate community, as well as the entire Northwest region.

As a Sonographer, White's job duties required her to have direct patient contact, which means that she had face-to-face and/or physical contact with patients. White's essential job duties included, but were not limited to, performing ultrasounds on patients.

#### 2. White's Request for an Accommodation

On August 24, 2021, UW Medicine leadership notified White that consistent with Governor Inslee's Proclamation 21-14, all University employees were required to show proof of vaccination against COVID-19, or receive an approved exemption, no later than October 18, 2021, as a condition of employment.

On August 31, 2021, the University received White's religious exemption request for Governor Inslee's vaccination mandate in Proclamation 21-14. The University then performed a two-part individualized analysis of White's religious accommodation request. As the first part of that inquiry, the University concluded that White's request was based on a sincerely held belief or

---

[6] *Id.* at 4.
[7] *Id.* at 4-5.
[8] Failing to comply with the Proclamation could subject the University "to criminal penalties pursuant to RCW 43.06.220(5)." *Id.* at 8.

EXHIBIT C

Ms. Cheryl Milner
January 31, 2022
Page 5

religion.  The University did not (and does not) dispute the sincerity of her belief or that it was "religious" in nature.

The University thus proceeded to the second part of the analysis, and assessed whether it could implement the requested accommodation without undue hardship because of her direct contact with patients and the permanent nature of the request.  The University concluded that the requested accommodation—wearing an appropriate mask and some testing regime— created a heightened risk of infection for patients and staff.  This determination was made by a team of physicians and human resources personnel who assessed the actual work done by White.  Using the best available scientific evidence, they concluded that employees who are merely masked and periodically tested for COVID-19 place patients and co-workers at a substantially higher risk of infection with COVID-19 than those who are fully vaccinated and using appropriate infection protocols.  Using appropriate legal standards (as identified more fully below) the University concluded that the requested accommodation presented an undue burden.

On September 10, 2021, the University informed White that her exemption request was denied based on her direct patient contact and that she was required to begin the vaccination process within 10 days of the notice.  Despite the University's several non-compliance notifications and follow-up communication regarding the proof of vaccination, White failed to begin the vaccination process by October 18, 2021.  As required by Governor Inslee's vaccination mandate in Proclamation 21-14, the University dismissed White from her position at Harborview on the Proclamation's deadline.[9]

### 3.  White Files for Leave Under the FMLA to Avoid Dismissal from the University

On or about October 13, 2021—days before Proclamation 21-14's vaccination deadline— White filed for leave under the FMLA.  This was in direct response to the University's denial of White's religious accomodation request from Proclamation 21-14.  In White's Washington State Tort Claim Form, White admits that the religious accomodation denial, and the University's subsequent non-compliance notifications and communication regarding proof of vaccination for continued employment, was the reason she requested FMLA leave.

### ANALYSIS

#### A. Religious Accommodation

Title VII requires employers to make reasonable accommodations for employees' religious beliefs.[10]  A *prima facie case* for failure to accommodate under Title VII requires a plaintiff to

---

[9] White's charge also claims that her vaccination status was made public. We are unaware of any supervisor or manager who did so.  White never brought forward complaints to the University and, without more information regarding the specific individuals involved in the alleged incident, the University is unable to respond.

[10] Washington law is in accord with federal law regarding religious accommodation. *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 197 (Wash. 2014).

EXHIBIT C

Ms. Cheryl Milner
January 31, 2022
Page 6

show that (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment. *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002). As a defense, the employer may show that it either offered the employee a reasonable accommodation or that an accommodation would be an "undue hardship" or unduly burdensome on the employer. *Id.*

The United States Supreme Court has ruled that an "undue hardship" results whenever an accommodation "require[s an employer] to bear more than a *de minimis* cost." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977). The Supreme Court has also ruled that a "reasonable accommodation" need not be the precise accommodation the employee requests, even if the employer could provide that accommodation without suffering any undue hardship. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986).

Courts have also held that an undue hardship may be something other than a financial burden. For example, an employer can defeat a religious accommodation claim by showing that a valid safety concern would cause an undue hardship. *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 521 (6th Cir. 1975) ("[S]afety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship on the employer's business. Title VII does not require that safety be subordinated to the religious beliefs of an employee."). *See also, e.g.*, *EEOC v. Kelly Services, Inc.*, 598 F.3d 1022 (8th Cir. 2010); *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984); *Kalsi v. N.Y.C. Transit Auth.*, 62 F. Supp. 2d 745 (E.D.N.Y. 1998), *aff'd mem.*, No. 99-7097, 1999 WL 710257 (2d Cir. Sept. 2, 1999). As noted in *Finnie v. Lee County*, this "line of cases makes clear that an employer can be subjected to an undue hardship if the accommodation would create any significant safety, or even legal, risks." 907 F. Supp. 2d 750, 778 (N.D. Miss. 2012).

Although an analysis of undue hardship may not be based on mere speculation or conjecture, "an employer is not required 'to wait until it [feels] the effects' of the proposed accommodation before determining its reasonableness." *Miller v. Port Auth. of N.Y. & N.J.*, 351 F. Supp. 3d 762, 789 (D.N.J. 2018), *aff'd*, 788 F. App'x 886 (3d Cir. 2019) (alteration in original) (internal citations omitted). "[E]mployers must be given leeway to plan their business operations and possible accommodative options in advance, relying on an accommodation's predictable consequences along the way." *Id.* (alteration in original) (internal citation omitted). If an accommodation would violate a collective bargaining agreement or impose more than a *de minimis* impact on co-workers, "then [the employer] is not required to offer the accommodation under Title VII." *Id.* (*citing Balint v. Carson City*, 180 F.3d 1047, 1054-55 (9th Cir. 1999) (alteration in original)).

Here, White submitted a religious exemption request for Governor Inslee's vaccination mandate in Proclamation 21-14. Once the University received White's request, it engaged in an individualized accommodation analysis. The University does not limit the provision of a reasonable accommodation to only those employees who practice a commonly recognized

# EXHIBIT C

Ms. Cheryl Milner
January 31, 2022
Page 7

religious tradition, and it will accommodate any sincerely held religious belief. As a result, the University did not dispute the sincerity of White's belief or that it was "religious" in nature.

The University then analyzed whether it could provide White with a reasonable accommodation without suffering an undue hardship or burden. Simply put, putting patients and co-workers at heightened risk of serious harm or death from COVID-19 is much, much more than a *de minimis* burden. After careful consideration, the University determined that, given the permanent nature of White's accommodation request and her patient contact, no accommodation could be provided to White without the University bearing more than a *de minimis* cost or risk of harm from COVID-19. Consequently, White's religious accommodation request from Proclamation 21-14 was properly denied under Title VII.

## B. The FMLA Cannot Be Used to Avoid Termination

The FMLA entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons. 29 C.F.R. §§ 825.200—825.220. Additionally, the FMLA makes it unlawful for an employer to interfere with an individual's rights under the FMLA. 29 C.F.R. § 825.220(a)(1). However, "[t]he FMLA is not a tool an employee can use to delay or avoid a termination." *Germanowski v. Harris*, No. CV 15-30070-MGM, 2016 WL 696097, at *4 (D. Mass. Feb. 19, 2016), *aff'd*, 854 F.3d 68 (1st Cir. 2017).

On September 10, 2021, the University notified White that her religious accomodation request was denied and she was required to begin the vaccination process in accordance with Proclamation 21-14's mandate. Over the following month, the University sent numerous non-compliance emails and follow-up correspondence. In sum, this correspondence reiterated that if White did not become vaccinated before the Proclamation 21-14's vaccination deadline, she would be dismissed.

Then, just days prior to the October 18, 2021 deadline, White filed for leave under the FMLA. This was in direct response to her knowledge that dismissal was imminent. Indeed, White admits that the University's denial of her religious accomodation request from Proclamation 21-14 was the reason she applied for leave under the FMLA. But, as explained in *Germanowski*, White cannot use the FMLA as a tool to delay or avoid termination. *Id.* Accordingly, given the University's requirement to abide by Proclamation 21-14 and dismiss White, the University properly denied her FMLA leave.

## RESPONSE TO REQUEST FOR ADDITIONAL INFORMATION

In light of the foregoing, we respectfully request that the Commission reconsider its standard request for additional documentation. This case presents unusual circumstances: in response to a public health crisis unprecedented in our life-times, Washington State's government imposed mandatory new requirements on employers such as the University. While respecting the sincerity of the religious beliefs that gave rise to the request, White's request to be excused from this new requirement could not be accommodated under controlling legal standards. The

**EXHIBIT C**

Ms. Cheryl Milner
January 31, 2022
Page 8

information that would be gleaned from the Commission's standard document requests—the employee's tenure, the quality of her work performance, a history of discipline or the absence of a history of discipline—is not relevant.  However, if after reviewing the foregoing analysis the Commission nonetheless concludes that it needs to review additional documentation, we would be happy to discuss the matter and provide supplemental information.

**CONCLUSION**

For the foregoing reasons, the University requests that the Commission enter a "No Cause" determination.  Please let us know if we can be of further assistance.

Sincerely,

Timothy J. O'Connell

TJO:dld

EXHIBIT D

**UW** Medicine

October 18, 2021

Name:       Melissa L. White
EID:        869003819
Position:   Diagnostic Medical Sonographer Lead (NE S SEIU 1199NW HMC P/T)
Department: HMC – NUCLEAR MEDICINE

As of October 18, 2021, you have not provided proof of full vaccination against COVID-19 or receive an approved exemption. This is to notify you that for non-compliance with the Governor's Proclamation 21-14.2 you are dismissed from your position noted above effective October 18, 2021.

If you have any questions regarding this action, you may contact your Human Resources Consultant:

HRC Name:   Aimee Buckius
HRC Email:  abuckius@uw.edu

Thank you for your service to UW Medicine.

Lisa Brandenburg

Lisa Brandenburg
President
UW Medicine Hospitals & Clinics

Cc:  Eddie Lee Oliver
     Aimee Buckius

EXHIBIT E

## RE: NEW Contact Us Inquiry Received

From   Patricia Nishikawa <Patricia_Nishikawa@Valleymed.org>

To      mlwhite2@pm.me

Date   Wednesday, August 17th, 2022 at 5:43 PM

Hi Melissa,

See attached document responsive to your PRA request.

Sincerely,

Pat Nishikawa
Public Records

**From:** Patricia Nishikawa
**Sent:** Thursday, August 4, 2022 1:41 PM
**To:** mlwhite2@pm.me
**Subject:** FW: NEW Contact Us Inquiry Received

Hi Melissa,

I am acknowledging receipt of your public records request.

I interpret your request as follows:

You would like to know the number of religious exemptions granted for employees for the covid-19 vaccine mandate.  You would like this information as a list with job class and number of employees in the specific job class that were granted an exemption.

Public disclosure of said documents will be produced in accordance the with the Public Records Act (RCW 42.56).

Please expect a response within the next 30 days (September 1, 2022).

Sincerely,

Pat Nishikawa
Public Records Office

**From:** Contact <Contact@Valleymed.org>
**Sent:** Monday, August 1, 2022 2:34 PM
**To:** VMC-PROfficer <VMC-PROfficer@Valleymed.org>; Patricia Nishikawa <Patricia_Nishikawa@Valleymed.org>
**Subject:** FW: NEW Contact Us Inquiry Received

**From:** noreply <noreply@Valleymed.org>
**Sent:** Monday, August 1, 2022 2:33:25 PM (UTC-08:00) Pacific Time (US & Canada)

EXHIBIT E

**To:** Contact <Contact@Valleymed.org>
**Subject:** NEW Contact Us Inquiry Received

> ATTENTION: This email originated from outside of the organization.
> Do not open attachments or click on links unless you recognize the sender and know the content is safe.

**A new application has been received on valleymed.org from the individual below:**

Web Form Name: contact-us-form

| | |
|---:|---|
| **First Name:** | Melissa |
| **Middle Name:** | L |
| **Last Name:** | White |
| **Email:** | mlwhite2@pm.me |
| **Home Phone:** | 2063042261 |
| **Mobile Phone:** | |
| **Work Phone:** | |
| **Work Ext:** | |
| **Topic:** | I have a public records request |
| **Visit Date / Date of Issue:** | |
| **Comments:** | I would like a list of how many religious exemptions were granted for employees for the covid-19 vaccine mandate. Please list job class and number of employees in the specific job class that were granted an exemption. Example RN 10 Sonographer 3. Please list for all job classes where exemptions were granted. Thank you, Melissa |
| **Lead Source:** | Episerver |

EXHIBIT E

**From:** Sara Hloshyk <Sara_Hloshyk@Valleymed.org>
**Sent:** Thursday, August 4, 2022 12:24 PM
**To:** Patricia Nishikawa <Patricia_Nishikawa@Valleymed.org>
**Cc:** Katina Maier <Katina_Maier@Valleymed.org>
**Subject:** RE: Religious Exemptions

Hi Pat – these are active (as of 8/4/22) Religious Accommodations

Admitting Registrar - 6
ISR – 3
Anesthesia Tech – 1
Bio Med Tech - 3
Care Management Assistant – 1
Central Processing Tech – 3
Nurse Midwife – 1
Clinic Coordinator – 4
IT - 3
Coder/Charge Capture – 9
Community Health Facilitator – 1
Dietician – 2
Distribution Tech – 1
Endoscopy Tech – 1
Med Surg Tech – 2
Gift Shop Associate – 1
Housekeeper – 8
Interventional Rad Tech – 3
Journey Tech – 3
Lactation Consultant – 1
LPN – 2
LMC Authorization Coordinator – 1
Mammo Tech – 1
Manager – 2
Medical Assistant – 11
Medical Record Scanner – 1
Medical Record Technician – 1
MRI-ARRT – 1
Nursing Resident – 4
Office Coordinator – 1
Treatment Coordinator – 1
Patient Access Admitting Coordinator – 1
Patient Access Associate – 3
Patient Account Rep – 2
Patient Care Assistant – 6
Patient Resource Rep – 9
Patient Service Rep – 11
Periop Services Scheduler – 1
Pharmacy Tech – 3
Physical Therapist – 1

EXHIBIT E

PRC Operations Coordinator – 1
Pro1cedure Coordinator – 1
Rad Tech – 7
RN – 62
Rehab Aide – 1
Respiratory Therapist – 8
RN Care Manager – 2
Security Officer – 2
SST – 2
Staffing Coordinator – 1
Supervisor – 1
Surgery & Procedure Coordinator – 1
Surgical Tech – 7
Telecom Operator – 1
Triage Nurse – 2
Ultrasound Tech – 3
Unit Secretary – 3


Sara Hloshyk, MS, SPHR
Senior HR Business Partner

# EXHIBIT F

# UW Medicine

| | |
|---|---|
| **DATE:** | September 10, 2021 |
| **TO:** | White, Melissa L. (869003819) |
| **CC:** | Oliver, Eddie Lee |
| **FROM:** | UW Medicine HR |
| **SUBJECT:** | COVID-19 Vaccine Mandate Non-Compliance Notification – Action Needed |

As you know, UW Medicine, in keeping with the Governor's Proclamation 21-14.1, is requiring that all employees be vaccinated against COVID-19 or receive an approved exemption no later than Monday, Oct. 18, 2021.*

**Our records indicate that you are not yet in compliance with the mandate.**

You can submit your proof of vaccination, schedule a vaccine, or find forms for claiming a medical or religious exemption on our scheduling portal at https://c19-vaccine.uwmedicine.org/. Please note:

- If you've **already submitted an exemption form**, you will be notified of the status (i.e., approval or denial) within the next week.
- If you've **already received your first dose** of Moderna or Pfizer, our records will continue to reflect you as non-compliant until after you've received the second dose.

Compliance with this mandate is a condition of your employment as dictated by the state. Failure to comply will result in your dismissal.

We do not want that to happen and are here to support you however we can. More information about the COVID-19 vaccines, including FAQs, can be found here. Also, below is a timeline that shows when you would need to schedule your first and second doses to be fully vaccinated by the deadline.

| Vaccine | Doses | 1st dose (no later than) | 2nd dose (no later than) | Series completed | Fully vaccinated |
|---|---|---|---|---|---|
| Moderna | 2 doses, 28 days apart | 9/6/21 | 10/4/21 | 10/4/21 | 10/18/21 |
| Pfizer | 2 doses, 21 days apart | 9/13/21 | 10/4/21 | 10/4/21 | 10/18/21 |
| Johnson & Johnson | 1 dose | 10/4/21 | N/A | 10/4/21 | 10/18/21 |

Thank you for your cooperation and prompt attention to this matter.  If you have questions about the vaccine mandate please email uwm-vaccine@uw.edu.

Sincerely,

UW Medicine Human Resources

---

*Any changes to this timeline due to UW policy and/or bargaining updates will be communicated promptly to impacted staff.*

EXHIBIT G

UW Medicine

October 6, 2021

Name: Melissa L. White
EID: 869003819
Position: Diagnostic Medical Sonographer Lead (NE S SEIU 1199NW HMC P/T)
Department: HMC - NUCLEAR MEDICINE

Dear Melissa:

On August 24, 2021, UW Medicine Leadership notified our community via email that consistent with the Governor's Proclamation 21-14.2, all UW Medicine employees are required to show proof of vaccination against COVID-19, or receive an approved exemption, no later than Monday, October 18, 2021, as a condition of employment.

Based on your non-compliant status, we took the following actions to inform you of this requirement.

- September 10, 2021 – Non-Compliance Notification sent to you via email
- September 24, 2021 – Non-Compliance Notification sent to you via email

Based on our records, you were identified as an employee who applied for and was denied either a religious or medical exemption. At the time of the denial you were notified that you had ten days to engage in the vaccination process. As of October 5, 2021, our employee health records indicate you have not yet engaged in the process by securing your first dose and continue to be non-compliant with the Governor's vaccine mandate.

**Therefore, this letter serves as notice that you will be dismissed from your position noted above at the end of the day on October 18, 2021 due to non-compliance with this condition of employment** unless you take one of the following actions:

- Confirm vaccination through the UW Medicine scheduling portal https://c19-vaccine.uwmedicine.org/.
- Receive approval for a religious or medical exemption prior to the end of the day on October 18, 2021.

If you feel the information reflected in our records is inaccurate or you have additional information that you believe may impact this decision, you can request a meeting by contacting your Human Resources Consultant:
HRC Name: Aimee Buckius
HRC Email: abuckius@uw.edu

**If you take no additional action, you will be dismissed effective at the end of the day on October 18, 2021.**

Sincerely,

UW Medicine Human Resources

CC: Eddie Lee Oliver
Aimee Buckius

EXHIBIT H

# Fwd: Step 1 Grievance

From   Todd Christenson <tac4jc@uw.edu>

To     mlwhite<Mlwhite2@protonmail.com>

Date   Monday, November 29th, 2021 at 8:39 PM

Here is their response.

Get Outlook for iOS

**From:** Fili Flemon <mzf@uw.edu>
**Sent:** Friday, November 19, 2021 2:34:15 PM
**To:** Todd Christenson <tac4jc@uw.edu>
**Cc:** Eddie L Oliver <eddieo@uw.edu>; Aimee Buckius <abuckius@uw.edu>
**Subject:** Step 1 Grievance

Hello Todd,

This email is in response to the attached grievance you filed on behalf of Melissa White, which was dated 11/2/2021 and received by management shortly thereafter. Upon review of the relevant dates, we note that Ms. White ended employment with the UW on 10/18/2021. As the union has no standing to file a grievance for former employees, this grievance is denied.

Respectfully,

**Mena (Fili) Flemon**

**Assistant Director**
Radiology | **UW Medicine**
325 9th Ave | Box 359728 | Seattle, WA 98104-2499
OFFICE:   206.744.3396
EMAIL:   mzf@uw.edu   WEB: uwmedicine.org

Page 20 of 82

Print Form

EXHIBIT H

## Employee Grievance

**SEIU** Healthcare.
1199NW | United for Quality Care

| | |
|---|---|
| Melissa White | 11/2/2021 |
| Grievant's Name | Date |
| Todd Christianson    2066501779 | Radiology |
| Delegate's Name         Phone # | Facility / Department / Unit |

**STEP 1**
Written presentation made to  Eddie Oliver                11/2/2021
                              Immediate Supervisor          Date

**STEP 1**
**NATURE OF GRIEVANCE:**   (Include contract violation, personnel policy, etc. Attach additional information to this sheet.)
21.1    Federal Family and Medical Leave Act.  Consistent with the federal Family and Medical Leave Act of 1993 an

employee who has worked for the state for at least twelve (12) months and for at least one thousand two hundred and fift

(1250) hours during the twelve (12) months prior to the requested leave is entitled to up to twelve (12) work weeks of

leave per year for any combination of the following:

B.    personal medical leave due to the employee's own serious medical condition that requires the employee's

absence from work

**REMEDY DESIRED:**
Employee is to be put on FLMA.



Grievant Signature                                    Delegate or Union Rep. Signature

Received by: _____
                        Signature          Date

| STEP 1 | | DISPOSITION: | Copy to: |
|---|---|---|---|
| Answer received | _____ | ☐ Settled | Delegate |
| **STEP 2** | | | Management |
| Grievance notification sent | _____ | ☐ Withdrawn | Grievant |
| Grievance meeting held on | _____ | | Union |
| Answer received on | _____ | ☐ Appealed to Arbitration | |
| **STEP 3** | | | |
| Grievance notification sent | _____ | Date: _____ | |
| Grievance meeting held on | _____ | | |
| Answer received on | | | |

SEIU Healthcare 1199NW • 1-800-422-8934 • www.seiu1199nw.org
C:\Users\jujap\Downloads\Employee Grievance-Form (1).doc
Page 21 of 82

EXHIBIT 1

April 27, 2022

William Goodman
Claim Specialist, Claim Services
Univesity of Washington
Box 354964
Seattle, Wa 98195

Melissa White
31633 202nd Avenue SE
Kent, WA 98042

**Re:    Melissa White Claim Against the University of
          Washington and/or Harborview Medical Center**

Dear Ms. White:

As suggested by my April 19, 2022, letter, we have now had the opportunity to complete our
investigation of the claim you filed against the University of Washington and/or Harborview
Medical Center (the "University"). Thank you for your patience during that process.

In your claim, you alleged that your separation from employment in October, 2021, violated the
law in one or more ways. After a thorough review of the facts and the law related to your
separation from employment, the University has concluded that your separation of employment
did not violate any laws. The University will not be offering you reinstatement of your
employment, compensation, or settlement.

It has come to my attention that you have corresponded with several other personnel at the
University regarding your claim. Please be advised that no other person has the authority to
speak on behalf of the University regarding your claim. Therefore, please direct
communications and documentation to one of my contact connections.

Thank you for your previous service to the University.

Sincerely,

William Goodman
Claim Specialist
Claim Services Department
University of Washington

115293985.1 0015714-00037

EXHIBIT J

**REQUEST FOR LEAVE OF ABSENCE OR MODIFIED WORK SCHEDULE**
**FAMILY AND MEDICAL LEAVE**
Personal Medical, Family Medical, Disability, or Parental Leave; or Leave related to a Family Member's Military Service

This form is used when an employee is requesting leave (full or intermittent) or a reduced or modified work schedule. Complete the portions of this form that are relevant to your request and **submit the form to your manager for signature.**

## Employee Information

| | |
|---|---|
| Full Name (print):Melissa White | Employee ID #:869003819 |
| Phone: 2063042261 | Email:mlwhite@uw.edu |
| Department Name: Radiology | Date:10/14/2021 |
| **Department Manager Name:**<br><br>Phone:          Email: | Supervisor Name Eddie Oliver<br>(if different than Manager):<br>Phone:  2067444481          Email:<br>:eddieo@uw.edu |

## Leave Request Information *(Please check box)*

Leave Start Date (Required):_10/6/2021_____ 11/5/2021_____                    Leave End Date (Required):

I am requesting a:

x☒ **Full Leave of Absence** *(off work entirely during the dates requested above)*

☐ **Intermittent Leave of Absence** - *Describe the time you will need off* (e.g., absent two times/month during the timeframe noted above):_____

☐ **Reduced Work Schedule** – *Describe the reduction you are requesting* (e.g., 100% FTE to 80% FTE during the timeframe noted above): _____

☐ **Modified Work Schedule** – *Describe the work schedule you are requesting* (e.g., work M, T, & W versus T, W, Th during the timeframe noted above): _____

All leave requests, **including requests for intermittent leave or reduced/modified work schedules, need to have a start and end date.** Health Care Provider documentation will be used to verify the requested dates and schedules (please estimate if unsure).

## Are you Applying for Washington Paid Family Leave (PFML)?

☒ **Yes**                    ☐ **No**

## Reason for Request *(Please check box)*

☒ **Leave for my own serious health condition, including pregnancy** (Requirement: Attached "**Certification of Health Care Provider**" form must be completed in order to verify the need for leave)

☐ **Leave for a family member's serious health condition** (Requirement: Attached "**Certification of Health Care Provider**" form must be completed in order to verify the need for leave)
Relationship of family member _____ If Child, child's age _____
Is leave due to an injury/illness associated with a family member's military service?     ☐Yes     ☐No

☐ **Parental Leave** (Requirement: Attached "**Certification of Health Care Provider**" form must be completed in order to verify the need for leave OR if leave is for adoption/foster care, verification from the appropriate agency confirming the date of birth or placement is required to verify the need for leave)
Anticipated date of birth_____     OR     Anticipated date of placement _____

☐ **Leave for a family member who is called to active duty** (Requirement: Attached "**Certification of Qualifying Exigency**" form must be completed in order to verify the need for leave)

| Request Verification | Leave Request Receipt by Manager |
|---|---|
| *Melissa White*     10/14/21 | *[signature]*     10/14/21 |
| **Employee Signature**          (date) | **Department Manager Signature**          (date) |

**\*\*REQUIRED: Department Manager must sign this request prior to sending it to Human Resources.**

Rev 1/2020

# EXHIBIT J

<table>
<tr>
<td>
University of Washington Medical Centers<br>
**Family and Medical Leave Certification**<br>
**of Health Care Provider for**<br>
**Personal Serious Health Condition**
</td>
<td>
**To Employee – Please complete the following information:**<br>
Name: Melissa L White<br>
Dept.: Radiology – Ultrasound EID: 86700 38A<br>
Employee Phone: 206 744. ~~4609~~ 5903<br>
Employee email: mlwhite @ uw.edu
</td>
</tr>
<tr>
<td>
**To Employee:** Complete the upper right corner of this page and arrange for your health care provider to complete the remainder of the form. Return the completed form as soon as possible, but no later than 15 calendar days after the date you receive it. Return it to the appropriate office indicated in the space to the right. Contact this office if you believe that you will not be able to return the completed form within the specified time period.
</td>
<td>
☐ **Harborview Medical Center**<br>
Human Resources Operations Office<br>
325 Ninth Avenue<br>
Box 359715<br>
Seattle, WA 98104- 2499<br>
Phone: (206) 744-9220<br>
Fax: (206) 744-9955<br>
Or, send scan to: HMCFMLA@uw.edu<br><br>
☐ **UW Medical Center**<br>
Human Resources Operations Office<br>
1959 NE Pacific<br>
Room BB150, Box 356054<br>
Seattle, WA 98195<br>
Phone: (206) 598-6116<br>
Fax: (206) 598-4610<br>
Or, send scan to: UWMCFMLA@uw.edu
</td>
</tr>
</table>

**Medical Facts – TO BE COMPLETED BY HEALTH CARE PROVIDER**

**Our employee is requesting leave from work and/or a modified work schedule under the FMLA for a health condition. Please provide the information requested below so that we can process our employee's leave request. Only provide information regarding the condition(s) that relate to our employee's request to take leave or adopt a modified work schedule.**

*The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.*

Describe the medical facts related to the condition(s) that require our employee to be off work and/or to work a reduced or intermittent work schedule (medical facts may include symptoms, diagnosis, or any plan for continuing treatment or therapy):

Experiencing acute anxiety and stress leading to sleep impairment; and excessive distractibility which leave her unable to safely perform the tasks required to do her job.

Was your patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility? Yes ☐ No ☒

If yes, dates of admission: _____

Date(s) you treated patient for this condition: 10/6/21, but she continues twice weekly therapy sessions.

Will your patient need to have treatment visits at least twice per year due to the condition? Yes ☐ No ☒

Was medication, other than over-the-counter medication, prescribed? Yes ☐ No ☒

Was your patient referred to other health care provider(s) for evaluation or treatment? Yes ☒ No ☐

If yes, describe the nature and expected duration of the treatments:

Psychotherapy Provider – Twice weekly as recommended by that Provider

**For Pregnancy-Related Incapacity**

| Expected date of delivery: | Expected dates of your patient's physical incapacity due to pregnancy and delivery (not parental leave): |
|---|---|
| _____<br>Planned C-Section? Yes ☐ No ☐ | From (date): _____  to (date): _____ |

Rev 3/2016

EXHIBIT J

## Need for Leave or Work Schedule Adjustment

Several of the following questions ask about the frequency or duration of a condition or treatment. We know that health conditions can vary or change over time, so please provide your best estimate in response to these questions, being as specific as you can. Using terms such as "lifetime," "unknown," or "indeterminate" may not be specific enough for us to determine leave eligibility for our employee under the Family and Medical Leave Act.

### Continuous Leave:

Will your patient be incapacitated for a single, continuous period of time including time for treatment and recovery?   Yes ☒   No ☐

If yes, estimate the beginning and ending dates for the period of incapacity:

From (date): __10/6/21__   to (date): __11/5/21__

### Intermittent Leave:

Will the condition(s) cause episodic flare-ups that prevent your patient from performing his/her job functions?   Yes ☐   No ☐

If yes, please explain:

Based upon your patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 time per 3 months, 2 days per episode)

Frequency: _____ time(s) per _____ week(s) -or- _____ month(s)

AND

Duration: _____ hours or _____ day(s) per episode

From (date): _____   to (date): _____

### Appointments:

Are follow-up and/or periodic treatment appointments medically-necessary for your patient?   Yes ☒   No ☐

If yes, describe the anticipated treatment schedule and any treatment recovery period(s):

2+ times per week with therapy provider for 4 to 3 mos.

Will there be a need for planned medical appointments and/or absences?   Yes ☐   No ☒

Frequency: _____ time(s) per _____ week(s) -or- _____ month(s)

AND

Duration: _____ hours or _____ day(s) per episode

From (date): _____   to (date): _____

### Reduced/Modified Work Schedule:

Will your patient require a reduction in or modification of the amount of time worked per week due to his/her medical condition, including any time for treatment and recovery?   Yes ☐   No ☐

If yes, describe the reduced or modified work schedule that you believe is medically necessary:

This work schedule needs to be in place from (date): _____   to (date): _____

### Health Care Provider Information (please complete or attach business card)

Name (please print): __Kyle West, DC, ARNP__   Specialty: __Psychiatric Nurse Practitioner__

Business Address: __17813 SE. 392nd St   Auburn WA 98092__   Phone __253 804-8752__   Fax __253 887-8737__

Health Care Provider Signature (required): __Kyle West__   Date __10/6/21__

Rev 3/2016

**EXHIBIT J**

| | |
|---|---|
| **Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act** | **U.S. Department of Labor Wage and Hour Division** |



**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

OMB Control Number: 1235-0003
Expires: 6/30/2023

The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. 29 U.S.C. §§ 2613, 2614(c)(3); 29 C.F.R. § 825.305. The employer must give the employee **at least 15 calendar days** to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied. 29 C.F.R. § 825.313. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

## SECTION I – EMPLOYER

Either the employee or the employer may complete Section I. While use of this form is optional, this form asks the health care provider for the information necessary for a complete and sufficient medical certification, which is set out at 29 C.F.R. § 825.306. **You may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308.** Additionally, you **may not** request a certification for FMLA leave to bond with a healthy newborn child or a child placed for adoption or foster care.

Employers must generally maintain records and documents relating to medical information, medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

(1) Employee name: <u>Melissa L White</u>

          *First*                      *Middle*                     *Last*

(2) Employer name: <u>Harborview Medical Center</u>      Date: <u>10/06/20</u>   *(mm/dd/yyyy)*

                                                     *(List date certification requested)*

(3) The medical certification must be returned by <u>10/20/20</u>         *(mm/dd/yyyy)*

    *(Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)*

(4) Employee's job title: <u>Lead Sonographer</u>      Job description (☐ is / ☐ is not) attached.

    Employee's regular work schedule: <u>Mon-Tues. 630-5pm and Thurs.-Fri 630-5pm</u>

    Statement of the employee's essential job functions: <u>Scan patients, Cordinate workflow, answer call, communic changes in the lab, order supplies, do the work schedules, ect.</u>

    *(The essential functions of the employee's position are determined with reference to the position the employee held at the time the employee notified the employer of the need for leave or the leave started, whichever is earlier.)*

## SECTION II - HEALTH CARE PROVIDER

Please provide your contact information, complete all relevant parts of this Section, and sign the form. Your patient has requested leave under the FMLA. The FMLA allows an employer to require that the employee submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to the serious health condition of the employee. For FMLA purposes, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves *inpatient care* or *continuing treatment by a health care provider*. For more information about the definitions of a serious health condition under the FMLA, see the chart on page 4.

You may, but are **not required** to, provide other appropriate medical facts including symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. Please note that some state or local laws may not allow disclosure of private medical information about the patient's serious health condition, such as providing the diagnosis and/or course of treatment.

EXHIBIT J

**Employee Name:** Melissa L White

Health Care Provider's name: *(Print)* Kyle West ARNP

Health Care Provider's business address: 17813 SE 392nd ST., Auburn, WA 98092

Type of practice / Medical specialty: Behavior Health

Telephone: (206) 8048752 ___ Fax: ( ) ___ E-mail: ___

## PART A: Medical Information

Limit your response to the medical condition(s) for which the employee is seeking FMLA leave. Your answers should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. **After completing Part A, complete Part B to provide information about the amount of leave needed.** Note: For FMLA purposes, "incapacity" means the inability to work, attend school, or perform regular daily activities due to the condition, treatment of the condition, or recovery from the condition. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b).

(1) State the approximate date the condition started or will start: 10/06/21 ___ *(mm/dd/yyyy)*

(2) Provide your **best estimate** of how long the condition lasted or will last: 90 days ___

(3) Check the box(es) for the questions below, as applicable. For all box(es) checked, the amount of leave needed must be provided in Part B.

☐ **Inpatient Care**: The patient (☐ has been / ☐ is expected to be) admitted for an overnight stay in a hospital, hospice, or residential medical care facility on the following date(s): ___

☐ **Incapacity plus Treatment**: *(e.g. outpatient surgery, strep throat)*
Due to the condition, the patient (☐ has been / ☐ is expected to be) incapacitated for *more than* three consecutive, full calendar days from ___ *(mm/dd/yyyy)* to ___ *(mm/dd/yyyy)*.

The patient (☐ was / ☐ will be) seen on the following date(s): ___
___

The condition (☐ has / ☐ has not) also resulted in a course of continuing treatment under the supervision of a health care provider *(e.g. prescription medication (other than over-the-counter) or therapy requiring special equipment)*

☐ **Pregnancy**: The condition is pregnancy. List the expected delivery date: ___ *(mm/dd/yyyy)*.

☐ **Chronic Conditions**: *(e.g. asthma, migraine headaches)* Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year.

☐ **Permanent or Long Term Conditions**: *(e.g. Alzheimer's, terminal stages of cancer)* Due to the condition, incapacity is permanent or long term and requires the continuing supervision of a health care provider (even if active treatment is not being provided).

■ **Conditions requiring Multiple Treatments**: *(e.g. chemotherapy treatments, restorative surgery)* Due to the condition, it is medically necessary for the patient to receive multiple treatments.

☐ **None of the above**: If none of the above condition(s) were checked, (i.e., inpatient care, pregnancy) no additional information is needed. Go to page 4 to sign and date the form.

Form WH-380-E, Revised June 2020

EXHIBIT J

**Employee Name:** Melissa L White

(4) If needed, briefly describe other appropriate medical facts related to the condition(s) for which the employee seeks FMLA leave. *(e.g., use of nebulizer, dialysis)* _____

---

## PART B: Amount of Leave Needed

For the medical condition(s) checked in Part A, complete all that apply. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage.

(5) Due to the condition, the patient (☐ had / ☐ will have) **planned medical treatment(s)** (scheduled medical visits) *(e.g. psychotherapy, prenatal appointments)* on the following date(s): 2-3 days/week as scheduled with therapy provid

(6) Due to the condition, the patient (■ was / ☐ will be) **referred to other health care provider(s)** for evaluation or treatment(s).

State the nature of such treatments: *(e.g. cardiologist, physical therapy)* Psychotherapy

Provide your **best estimate** of the beginning date 10/06/21 *(mm/dd/yyyy)* and end date 01/07/22 *(mm/dd/yyyy)* for the treatment(s).

Provide your **best estimate** of the duration of the treatment(s), including any period(s) of recovery *(e.g. 3 days/week)* 2-3 days/week ongoing as recommended by therapy provider

(7) Due to the condition, it is medically necessary for the employee to work a **reduced schedule**.

Provide your **best estimate** of the reduced schedule the employee is able to work. From _____ *(mm/dd/yyyy)* to _____ *(mm/dd/yyyy)* the employee is able to work: *(e.g., 5 hours/day, up to 25 hours a week)*

(8) Due to the condition, the patient (☐ was / ■ will be) **incapacitated for a continuous period of time**, including any time for treatment(s) and/or recovery.

Provide your **best estimate** of the beginning date 10/06/21 *(mm/dd/yyyy)* and end date 12/05/21 *(mm/dd/yyyy)* for the period of incapacity.

(9) Due to the condition, it (☐ was / ☐ is / ☐ will be) medically necessary for the employee to be absent from work on an **intermittent basis** (periodically), including for any episodes of incapacity i.e., episodic flare-ups. Provide your **best estimate** of how often (frequency) and how long (duration) the episodes of incapacity will likely last.

Over the next 6 months, episodes of incapacity are estimated to occur _____ times per (☐ day / ☐ week / ☐ month) and are likely to last approximately _____ (☐ hours / ☐ days) per episode.

Form WH-380-E, Revised June 2020

EXHIBIT J

**Employee Name:** Melissa L White

## PART C: Essential Job Functions

If provided, the information in Section I question #4 may be used to answer this question. If the employer fails to provide a statement of the employee's essential job functions or a job description, answer these questions based upon the employee's own description of the essential job functions. An employee who must be absent from work to receive medical treatment(s), such as scheduled medical visits, for a serious health condition is considered to be *not able* to perform the essential job functions of the position during the absence for treatment(s).

(10)   Due to the condition, the employee (■ was not able / □ is not able / □ will not be able) to perform *one or more* of the essential job function(s). Identify at least one essential job function the employee is not able to perform: Scan patients, cordinate workflow in the department, perform quarterly meeting

**Signature of
Health Care Provider** Kyle West, ARNP    Digitally signed by Kyle West, ARNP Date: 2021.12.08 13:07:43 -08'00'    **Date** 12/08/21    *(mm/dd/yyyy)*

| Definitions of a Serious Health Condition *(See 29 C.F.R. §§ 825.113-.115)* |
| --- |
| **Inpatient Care** |

- An overnight stay in a hospital, hospice, or residential medical care facility.
- Inpatient care includes any period of incapacity or any subsequent treatment in connection with the overnight stay.

| **Continuing Treatment by a Health Care Provider (any one or more of the following)** |
| --- |

**Incapacity Plus Treatment:** A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either:

- o Two or more in-person visits to a health care provider for treatment within 30 days of the first day of incapacity unless extenuating circumstances exist. The first visit must be within seven days of the first day of incapacity; or,

- o At least one in-person visit to a health care provider for treatment within seven days of the first day of incapacity, which results in a regimen of continuing treatment under the supervision of the health care provider. For example, the health provider might prescribe a course of prescription medication or therapy requiring special equipment.

**Pregnancy:** Any period of incapacity due to pregnancy or for prenatal care.

**Chronic Conditions:** Any period of incapacity due to or treatment for a chronic serious health condition, such as diabetes, asthma, migraine headaches. A chronic serious health condition is one which requires visits to a health care provider (or nurse supervised by the provider) at least twice a year and recurs over an extended period of time. A chronic condition may cause episodic rather than a continuing period of incapacity.

**Permanent or Long-term Conditions:** A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective, but which requires the continuing supervision of a health care provider, such as Alzheimer's disease or the terminal stages of cancer.

**Conditions Requiring Multiple Treatments:** Restorative surgery after an accident or other injury; or, a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days if the patient did not receive the treatment.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 15 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

Form WH-380-E, Revised June 2020

<u>EXHIBIT K</u>



## HUMAN RESOURCES

FROM: Laura Barry, Leave Specialist                                    10/18/2021
Medical Centers Human Resources

TO:     MELISSA WHITE
31633 202ND AVE SE
KENT, WA 98042-9521

RE:     **Medical Leave-Denial**

MELISSA:

Thank you for submitting your request for a leave of absence. The request outlined below has been **denied**.

| Employee ID #: | 869003819 |
|---|---|
| **Leave Category:** | Personal Health Condition |
| **Reason for leave request:** | Self Illness-Injury |
| **Leave Type:** | Continuous |
| **Total Inclusive Dates of Leave:** | 10/06/2021-11/07/2021 |

**The following is important information regarding why your leave was denied:**

☒ **Other**; As of 10/18/2021 leave of absence not required, employment has ended.

Please feel free to contact me at 206.744.9228 if you have questions or concerns.

cc:     Eddie Oliver, Fili Flemon-Ultrasound
Aimee Buckius, HR Consultant
Medical Centers Human Resources File/Medical Centers Payroll

H8-S01

EXHIBIT L

## Re: Pay

From: Eddie Oliver <eddieo@uw.edu>

To:  Melissa White <mlwhite@uw.edu>
     Ryan Butler <ryanb04@uw.edu>

CC:  Mlwhite2@protonmail.com <mlwhite2@protonmail.com>
     melissagagewhite@gmail.com <melissagagewhite@gmail.com>
     homari <homari@uw.edu>

Date: Thursday, December 2nd, 2021 at 11:12 AM


Hi Melissa and Ryan,

Please see below for your sick time question.


Thanks,
Eddie


**From:** homari <homari@uw.edu>
**Sent:** Friday, October 22, 2021 8:43 AM
**To:** Eddie L Oliver <eddieo@uw.edu>
**Subject:** RE: WHITE, MELISSA L -Termination pay out

She needs 8hrs sick leave, I reduced to 8hrs .

Thanks,
Homaira

**From:** Eddie L Oliver <eddieo@uw.edu>
**Sent:** Thursday, October 21, 2021 1:56 PM
**To:** homari <homari@uw.edu>
**Subject:** Re: WHITE, MELISSA L -Termination pay out

Sick time added.

Thanks

Eddie O

Eddie Oliver, Jr.
Imaging Supervisor
Harborview Medical Center
Box 359728
Office: 744-4481
PGR: 540-2321
CELL: 744-7626
FAX: 744-8868

# EXHIBIT L

The above email may contain patient identifiable or confidential information. Because email is not secure, please be aware of associated risks of email transmission. If you are communicating with a UW Medicine Provider or Researcher via email, your acceptance of the risk and agreement to the conditions for email communications is implied.
(See http://www.uwmedicine.org/Global/Compliance/EmailRisk.htm.)
The information is intended for the individual named above. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please notify the sender by reply email, and then destroy all copies of the message and any attachments. See our Notice of Privacy Practices at http://uwmedicine.washington.edu.

**From:** homari <homari@uw.edu>
**Sent:** Thursday, October 21, 2021 12:09 PM
**To:** Eddie L Oliver <eddieo@uw.edu>
**Subject:** WHITE, MELISSA L -Termination pay out

Hi Melissa is terminated effective 10/18, Pls add paid or unpaid leave on 10/18 ASAP.

**Thank you,**

**Homaira Omari**

**Payroll Specialist**
**Payroll Services | UW Medicine**
401 Broadway | Box 359749 | Seattle, WA 98104-2499
**OFFICE:  206.744.9738   EMAIL:** homari@uw.edu

**Don't forget!** Semi-monthly timecard approval goes into effect on 12/16/19.  Timecards will be approved only twice each month by 2pm.  Calendar and e-mail reminders will go out. **Tips for success:** update Kronos on a daily basis.

The above email may contain patient identifiable or confidential information. Because email is not secure, please be aware of associated risks of email transmission. If you are communicating with a UW Medicine Provider or Researcher via email, your acceptance of the risk and agreement to the conditions for email communications is implied. (See http://www.uwmedicine.org/Global/Compliance/Pages/Risks-of-Using-Email.aspx.)
The information is intended for the individual named above. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please notify the sender by reply email, and then destroy all copies of the message and any attachments. See our Notice of Privacy Practices at http://uwmedicine.washington.edu.

Eddie Oliver, Jr.
Imaging Supervisor
Harborview Medical Center
Box 359728
Office: 744-4481
PGR: 540-2321
CELL: 744-7626
FAX: 744-8868

EXHIBIT L

**W** UNIVERSITY *of* WASHINGTON

The above email may contain patient identifiable or confidential information. Because email is not secure, please be aware of associated risks of email transmission. If you are communicating with a UW Medicine Provider or Researcher via email, your acceptance of the risk and agreement to the conditions for email communications is implied.
(See http://www.uwmedicine.org/Global/Compliance/EmailRisk.htm.)

The information is intended for the individual named above. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please notify the sender by reply email, and then destroy all copies of the message and any attachments. See our Notice of Privacy Practices at http://uwmedicine.washington.edu.

**From:** Melissa White <mlwhite@uw.edu>
**Sent:** Monday, November 8, 2021 10:37 AM
**To:** Eddie L Oliver <eddieo@uw.edu>; Ryan C Butler <ryanb04@uw.edu>
**Cc:** mlwhite2@protonmail.com <mlwhite2@protonmail.com>; Fili Flemon <mzf@uw.edu>
**Subject:** Pay

Hi Eddie and Ryan,

Hope all is well. I was looking at my check for the 10th online. I noticed I was paid for 8 hrs of sick on the 18th. My shift is 10 hours. Can you please have this fixed?

Miss you guys!

Thank you,
Melissa

**Melissa White RDMS, R.T.(R)(CT)**

**Lead Sonographer**
Department of Radiology | **Harborview Medical Center**
325 9th Ave | Box 359728 | Seattle, WA 98104-2499
OFFICE: 206.744.5903  CELL: 206.744.7557
EMAIL: mlwhite@uw.edu

**3.32 KB** 🖻 2

⚓ Outlook-j4uixjyg.png (399 bytes)          ⚓ Outlook-http__www.png (2.93 KB)

# EXHIBIT M

Certified and Domestic Return Receipt No.: _____

**FROM:**

Melissa White
31633 202nd Avenue S.E.,
Kent, WA 98042

**TO:**

University of Washington
Department of Radiology / UW Medicine / Harborview Medical Center,
325 9th Avenue,
Seattle, Wash. 98104

**AND TO:**

Stoel Rives
Timothy J. O'Connell,
600 University Street, Suite 3600,
Seattle, Wash. 98101

**AND TO:**

Cheryl Milner
U.S. EEOC
2815 2nd Avenue,
Seattle, WA 98121

SUBJECT: REQUEST AND DEMAND THAT I BE REINSTATED TO MY FORMER
EMPLOYMENT WITH THIS COMPANY THE UNIVERSITY OF
WASHINGTON (UW MEDICINE) DEPARTMENT OF RADIOLOGY
HARBORVIEW MEDICAL CENTER BASED AND ON AN UNLAWFUL
TERMINATION OF MY EMPLOYMENT FOR FAILURE TO BE
VACCINATED WHICH IS NOT REQUIRED BY LAW, AND BECAUSE
WASHINGTON INFORMED CONSENT STATUTES AT RCW 7.70.050;
RCW 7.70.030; RCW 7.70.040, AND THE (EUA) EMERGENCY USE
AUTHORIZATION STATUTES AT **21 U.S.C. § 360BBB–3
(E)(1)(A)(II)(III); FDCA § 564(E)(1)(A)(II)(III)** PROVIDES THAT I
HAD AND HAVE A RIGHT TO REFUSE TO BE VACCINATED!

To the University of Washington (UW Medicine) Department of Radiology Harborview

EXHIBIT M

Medical Center, and to whom it may concern, this letter is meant to provide you constructive and legal notice that I am requesting that this company the University of Washington (UW Medicine) Department of Radiology Harborview Medical Center hire me back to my former position as "Lead Sonographer", working the same shift four 10 hour shifts 6:30-5pm Monday, Tuesday, Thursday, and Friday that I was working prior to being unlawfully terminated with no valid legal reason. I further request and demand that I be given back pay for all the time that I missed, that I be given all pay raises and bonuses that were scheduled to be given, that all regular (PERS) Public Employees Retirement System Plan 2 contributions are to be paid up to date by the University of Washington, that all sick pay be reinstated with all sick hours that accrued if I was not unlawfully terminated, that your company reinstate all 180 plus hours of vacation time on the books without having to buy it back, that you reinstate all parking privileges in the Viewpark Parking Garage, that you reinstate all pre-approved vacations, and add all vacations that I would have put in for if I was not wrongfully terminated, that you reinstate my life insurance policy that I had for my husband as if I was never unlawfully terminated without any valid legal reason, and finally I request, and demand that you pay me $500,000.00 for emotional and psychological damages, based upon the fact that I was wrongfully terminated for refusing to be vaccinated which is not required by law, and because your unlawful request that I be "**vaccinated**" violates my rights to refuse unwanted medical treatment under the "**Informed Consent Doctrine**" as codified at RCW 7.70.050; RCW 7.70.030; RCW 7.70.040, and it violates my rights to refuse to be vaccinated specifically granted by the (EUA) Emergency Use Authorization Statute itself, "**21 U.S.C. § 360bbb–3 (e)(1)(A)(ii)(III); FDCA §564(e)(1)(A)(ii)(III);** Riggins v. Nevada, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992)**;** Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977); Cruzan v.

Page 2 of  49

# EXHIBIT M

Director, Missouri Department of Health, 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224

(1990);  Washington v. Glucksberg, 521 U.S. 702,, 720 (1997);  White v. Napolean, 897 F.2d 103

(1990);  Benson v. Terhune, 304 F.3d 874 (2002);  Washington v. Harper, 494 U.S. 210, 229, 110

S.Ct. 1028, 108 L.Ed.2d 178 (1990).

 I am reminding you that I did NOT voluntarily quit employment with your company by

declining your unlawful request that I be vaccinated, and/or that I provide you with "proof of

vaccination" or a "vaccine passport" or "show you my papers" because it constitutes an illegal

warrantless search, and is a violation of my rights to privacy pursuant to the Fourth Amendment of

the United States Constitution, and the "**without authority of law clause**" as codified at article 1,

section 7 of the Washington State Constitution.

 Further,  your unlawful request that I be "vaccinated" violates my rights to the "due process

of law clauses" under the Fourteenth Amendment of the United States Constitution, and article 1,

sections 3 and 8 of the Washington Constitution.

 I respectfully request that you provide a written response within ten (10) days of receiving

this document if you wish to avoid civil litigation.

*Melissa White*

Melissa White

Dated this  30th  day of March,  A.D.  2022

**And see:**

**Subjoined Memorandum of Law:**

Page 3 of  49

# EXHIBIT M

ARGUMENT

1.   THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION,
     ARTICLE 1, SECTION 7 OF THE WASHINGTON STATE CONSTITUTION,
     TERRY v. OHIO,  392 U.S. 1, 16-19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
     DELAWARE v. PROUSE, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed. 2d 660,
     667 (1979) AND FLORIDA v. ROYER, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d
     229 (1983) PROTECTS MY RIGHTS TO PRIVACY AND PROHIBITS
     UNREASONABLE SEARCHES AND SEIZURES OF MY MEDICAL RECORDS,
     PROOF OF VACCINATION OR DEMAND FOR VACCINE PASSPORTS.

The Fourth Amendment of the United States Constitution,  and article 1, section 7 of the

Washington Constitution prohibit unreasonable searches and seizures.  Terry v. Ohio, 392 U.S. 1,

16-19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391,

1396, 59 L.Ed. 2d 660, 667 (1979);  Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229

(1983);  State v. Young,  135 Wn.2d 498, 509, 957 P.2d 681 (1998);  State v. Ladson, 138 Wn.2d

343, 349, 979 P.2d 833 (1999) (citing State v. Hendrickson, 129 Wn.2d 61, 70, 917 P.3d 563 (1996).

The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against
> unreasonable searches, shall not be violated . . ."

Article 1, Section 7 provides:

> "No person shall be disturbed in his private affairs, or his home invaded, without authority
> of law."

Article 1, Section 7, is explicitly broader than the Fourth Amendment, and as such, it "clearly

recognizes an individual's right to privacy with no express limitation." State v. Simpson, 95 Wn.2d

170, 178, 622 P.2d 1199 (1980); State v. Ferrier, 136 Wn.2d 103, 111, 960 P.2d 927 (1988).  In

Page 4 of  49

EXHIBIT M

addition, the Washington State Constitution explicitly provides even greater protection for its citizens. State v. White, 97 Wn.2d 92, 110, 649 P.2d 1061 (1982).

The request by the University of Washington (UW Medicine) Department of Radiology Harborview Medical Center that I submit my Medical Records or Papers violates the well settled principles of law as stated in Hale v. Henkel, 201 U.S. 43 (1906), which proves that:

> "There is a clear distinction in this particular case between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for an examination at the suit of the State. The individual may stand upon his constitutional right as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no such duty to the State, since he receives nothing therefrom, beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the State, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of law. He owes nothing to the public so long as he does not trespass upon their rights." Hale vs Henkel, 201 U.S. 43 (1906).

As the Supreme Court held just last year, "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S.Ct. 63, 68 (2021).

The Fourth Amendment was made applicable to the states through the due process clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

2.    THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 3 OF THE WASHINGTON STATE CONSTITUTION PREVENTS THE STATE FROM DEPRIVING ANYONE OF LIFE, LIBERTY OR PROPERTY WITHOUT DUE PROCESS OF LAW OR FROM DENYING ANY PERSON THE EQUAL PROTECTION OF THE

Page 5 of 49

EXHIBIT M

LAW.

The Fourteenth Amendment of the United States Constitution states:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article 1, Section 3 of the Washington State Constitution states:

"SECTION 3 PERSONAL RIGHTS. No person shall be deprived of life, liberty, or property, without due process of law."

Article 1, Section 8 of the Washington State Constitution states:

"SECTION 8 IRREVOCABLE PRIVILEGE, FRANCHISE OR IMMUNITY PROHIBITED. No law granting irrevocably any privilege, franchise or immunity, shall be passed by the legislature."

The current Covid related "Executive Orders" grants some employees of the State the ability to remain employed, and also allows big businesses the ability to stay in business, which is a privilege that does not equally belong to all employees and small businesses of the State of Washington. The EO fails to explain why it applies to only certain employees and small businesses and not others. The EO states that employers with a 100 or more workers are prohibited from hiring or continuing to employ any workers that are not fully vaccinated. The EO unequally deprives employers of their property interest in their businesses, and employees of their property interest in

Page 6 of 49

their jobs without due process of law.  To the extent that employers and employees are treated differently from other similarly situated employees the Executive Order are also a violation of the employer's and employees rights to equal protection under the law.

3.  THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, ARTICLE 1, SECTION 3 OF THE WASHINGTON STATE CONSTITUTION;  RIGGINS v. NEVADA, 504 U.S. 127, 134 (1992); INGRAHAM v. WRIGHT, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); WASHINGTON v. HARPER, 494 U.S. 210, 229, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); CRUZAN v. DIRECTOR, MISSOURI DEPARTMENT OF HEALTH, 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990);  PLANNED PARENTHOOD v. CASEY, 505 U.S. 833, 857 (1992); AND BENSON v. TERHUNE, 304 F.3d 874, 884 (9th Cir. 2002) PROVIDE THAT I HAVE THE RIGHT TO INFORMED CONSENT, THE RIGHT TO BE FREE FROM UNJUSTIFIED INTRUSIONS INTO THE BODY, THE RIGHT TO REFUSE UNWANTED MEDICAL TREATMENT AND THAT FORCIBLE INJECTION OF VACCINES INTO A NONCONSENTING PERSONS BODY REPRESENTS A SUBSTANTIAL INTERFERENCE WITH THAT PERSON'S LIBERTY.

Although the following cases apply to mentally ill people, psychotic people, people that are a danger to themselves, people that are a danger to others, people that have violent outbursts, people have a history of assault, people that have a history of domestic violence, child molesters, pedophiles, and other sexual predators, the petitioner objects and argues that this State cannot provide it's competent and normal adults and children lessor protection under the law than what it provides to mentally psychotic people and sexual predators without violating the "equal protection of the law clauses" of the United States Constitution, and the Washington State Constitution.

EXHIBIT M

a.  The necessity of forced antipsychotic drugs must be proven by clear, cogent and convincing evidence.  All persons accused of a crime possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs."  Washington v. Harper, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); U.S. Const. Amend 14; Wash Const. art. 1, §§ 3, 7.  Involuntary medications interfere with an individual's rights to privacy, liberty, and to a fair trail free of undesired side effects caused by antipsychotic medications.  Riggins v. Nevada, 504 U.S. 127,  137, 112 S.Ct. 810, 118 L.Ed.2d 479 (1992); State v. Adams, 77 Wn.App. 50, 55, 888 P.2d 1207,  rev. denied, 126 Wn.2d 1016 (1995); U.S. Const. Amends 5, 6, 14; Wash. Const. art 1, §§ 3, 7, 22.

As the Riggins Court noted, the side effects of forced medications may impact . . . "not just Riggins' outward appearance, but also the content of his testimony on direct or cross examination, his ability to follow the proceedings, or the substance of his communication with counsel." Riggins, supra, at 137.  Consequently, tfhe record had to show . . . "that administration of antipsychotic medication was necessary to accomplish an essential State Policy." Riggins, supra, at 138.

The involuntary administration of drugs . . . "solely for trial competence" . . . purposes may occur only in "rare" instances. Sell v. United States, 539 U.S. 166, 180, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003).  In Sell, the court ruled that the rare instances when forced medication is permitted for purposes of trial competence arises only after the State has proven: (1) "that important government interests are at stake"; (2) "that involuntary medication will significantly further those concomitant state interests"; (3) "that involuntary medication is necessary to further those interests"; and (4) "that administration of the drugs is medically appropriate." Sell, supra, 539 U.S. at 180-83.

In any case where the State seeks to forcibly medicate a person in order to stand trial, "[t]he

EXHIBIT M

State bears the burden of proven each element justifying involuntary medication by clear, cogent,, and convincing evidence." State v. Hernandez-Ramirez, 129 Wn.App. 504, 512, 119 P.3d 880 (2005). Furthermore, the court may not give . . . "unrestricted authority" . . . to the medical providers and therefore must specify the types of medications permitted, dosages, and the duration of forced medications. United v. Hernandez-Vasquez, 513 F.3d 908, 916-17 (9th Cir. 2008).

The Fourteenth Amendment protects the right to be "**free from unjustified intrusions into the body**." See Benson v. Terhune, 304 F.3d 874, 884 (9th Cir. 2002) (describing Fourteenth Amendment right to informed consent) (citing Riggins v. Nevada, 504 U.S. 127, 134 (1992)). This includes the right "**to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently**." Id. (citing White v. Napolean, 897 F.2d 103, 111 (3d Cir. 1990)). Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir.1981) ("the right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process."). See also Washington v. Glucksberg, 521 U.S. 702,, 720 (1997) ("the liberty protected by the Due Process Clause [of the Fourteenth Amendment] includes the right . . . to bodily integrity.")

> "It is well established that this liberty includes freedom from unjustified intrusions on personal security." Ingraham v. Wright, 430 U.S. 651, 673-674, 97 S.Ct. 1401, 1413-1414, 51 L.Ed.2d 711 (1977)." Davidson v. Cannon, 474 U.S. 344 (1986). And'

The source of this fundamental freedom is the word "**liberty**" itself as used in the Due Process Clause, and as informed by "history, reason, the past course of decisions," and the judgment and experience of "those whom the Constitution entrusted" with interpreting that word Anti-Fascist Committee v. McGrath, 341 U.S. 123, 162-163, 71 S.Ct. 624, 643-644, 95 L.Ed. 817 (Frankfurter

EXHIBIT M

J., concurring).

The Ninth Circuit Court of Appeals in <u>Benson v. Terhune</u>, 304 F.3d 874 (2002), stated that:

"The California courts, as did the district court looked to Riggins v. Nevada, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992), as the most relevant authority for determining Benson's claim of unconstitutional involuntary medication. In Riggins, the Supreme Court held that the forced administration of antipsychotic drugs to control the behavior of a pretrial detainee–absent overriding justification and proof of medical appropriateness–is impermissible because it may violate the defendant's constitutional right to due process, including her right to a fair trial. Id. at 134-38, 112 S.Ct. 1810. In reaching this conclusion, the Court recognized the principle stated earlier in Washington v. Harper, 494 U.S. 210, 229, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), that the "forcible injection of medication into a nonconsenting person's body . . . represents a substantial interference with that person's liberty." <u>Benson v. Terhune</u>, 304 F.3d 874 (2002). And;

The Third Circuit United States Court of Appeals held in <u>White v. Napolean</u>, 897 F.2d 103 (1990) citing the United States Supreme Court, <u>Ingraham v. Wright</u>, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977), held that:

"The Due Process clause of the Fourteenth Amendment substantively protects fundamental rights. Among these are the right to be free from unjustified intrusions into the body, Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977), the related right to refuse unwanted medical treatment, Rennie v. Klein, 653 F.2d 836, 844 (3d Cir.1981), and, as we decide today, the right to sufficient information to intelligently exercise those rights." <u>White v. Napolean</u>, 897 F.2d 103 (1990). And;

Other Federal Circuits have acknowledged the existence of a constitutional right to refuse treatment, although they differ on the source of the right. See <u>United States v. Watson</u>, 893 F.2d 970 (8th Cir.1990); <u>United States v. Charters</u>, 829 F.2d 479, 487-94 (4th Cir.1987), rehearing en banc, 863 F.2d 302, 305-06 (1988) (due process right of person involved of person involuntarily committed

Page 10 of 49

to mental hospital); Bee v. Greaves, 744 F.2d 1387, 1392-94 (10th Cir.) (pre-trial detainee suffering from schizophrenia has a due process right to refuse treatment with anti-psychotic drugs), cert. denied, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1984). "Pabon v. Wright, 459 F.3d 241, 250 (2nd Cir.2006) ("[T]here exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment.")." Rainwater v. Alarcon, 268 Fed.Appx. 531 (2008). See also Clarkson v. Coughlin, 898 F.Supp. 1019, 1049 (S.D.N.Y.1995) (holding that the "failure to provide such information as is sufficient to informed consent in a manner permitting the inmate/plaintiff to make a knowledgeable evaluation" of his options is a violation of the inmate's due process rights to be free from unwanted medical treatment." The one state jurisdiction adopting a requirement of full disclosure is New Mexico, see Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520 (1962). The federal case is Canterbury v. Spence, 464 F.2d 772 (D.C.Cir.1972).

Further, in Planned Parenthood v. Casey, 505 U.S. 833, 857 (1992), the U.S. Supreme Court stated the protected liberty claims inherent in personal autonomy and bodily integrity include both the right to be free from unwanted medical intervention, and the right to obtain medical intervention:

> "As the joint opinion acknowledges, ante, 505 U.S. at 857, this Court has recognized the vital liberty interest of persons in refusing unwanted medical treatment. Cruzan v. Director, Mo. Dept. Of Health, 497 U.S. 261, 111 L.Ed.2d 224, 110 S.Ct. 2841 (1990). Just as the Due Process Clause protects the deeply personal decision of the individual to refuse medical treatment, it also must protect the deeply personal decision to obtain medical treatment, including a woman's decision to terminate a pregnancy." Planned Parenthood v. Casey, 505 U.S. 833, at 927 (1992). And;

See also "Cruzan v. Director, Missouri Department of Health, 497 U.S. 261, 278, 110 S.Ct.

EXHIBIT M

2841, 111 L.Ed.2d 224 (1990) (holding that a "person has a constitutionally protected liberty interest in refusing unwanted medical treatment.). In the words of Justice Sandra Day O'Connor, "[T]he liberty guaranteed by the Due Process Clause must protect, if it protects anything, and individual's decision to reject medical treatment. . . . Cruzan, 497 U.S. at 289.

b.  To date no court in the State of Washington has held any hearing to determine the need for forced administration or forced injection of the Covid 19 Vaccination to the general population. In Riggins v. Nevada, 504 U.S. 127, 137, 112 S.Ct. 810, 118 L.Ed.2d 479 (1992), the court did not acknowledge Riggin's "liberty interest in freedom from unwanted antipsychotic drugs." Riggins, supra,  504 U.S. at 137.  The Riggins court failed to apply the Sell factors before approving the forcible administration of medications to Riggin's, and did not find the State established the Sell factors by clear, cogent, and convincing evidence.

"The record must be developed whenever a Sell Determination is to be made." United States v. Rivera-Guerro, 426 F.3d 1130, 1142 (9th Cir. 2005).  The court must explicitly find that the State has proven the need for medications as required by Sell, and the defendant must have an opportunity to challenge the request.

Forced medications substantially further the prosecution's interest in pursuing the case only when they are likely to render the defendant competent and are "substantially unlikely to have side effects that may undermine the fairness of the trial." Hernandez-Ramirez, 129 Wn.Ap. at 510. Additionally, "to pass muster under Sell," the court must specifically authorize certain medications for a limited period of time. Hernandez-Vasquez, 513 F.3d at 916. As explained in Hernandez-Vasquez, the court's order:

EXHIBIT M

"Must identify: (1) the specific medication or range of medications that the treating physicians are permitted to use in their treatment of the defendant, (2) the maximum dosages that may be administered, and (3) the duration of time that involuntary treatment of the defendant may continue before the treating physicians are required to report back to the court on the defendant's mental condition and progress." United v. Hernandez-Vasquez, 513 F.3d 908, at 916-17 (9th Cir. 2008). And;

Such specificity is required because the court may not "simply delegate unrestricted authority

to physicians" in the context of competency restoration. Hernandez-Vasquez, 513 F.3d at 917. See

RCW 71.05.215, which provides mental patients the right to refuse anti-psychotic medicine:

### "RCW 71.05.215  Right to refuse antipsychotic medicine—Rules.

(1) A person found to be gravely disabled or to present a likelihood of serious harm as a result of a behavioral health disorder has a right to refuse antipsychotic medication unless it is determined that the failure to medicate may result in a likelihood of serious harm or substantial deterioration or substantially prolong the length of involuntary commitment and there is no less intrusive course of treatment than medication in the best interest of that person.

(2) The authority shall adopt rules to carry out the purposes of this chapter. These rules shall include:

(a) An attempt to obtain the informed consent of the person prior to administration of antipsychotic medication.

(b) For short-term treatment up to thirty days, the right to refuse antipsychotic medications unless there is an additional concurring medical opinion approving medication by a psychiatrist, physician assistant working with a supervising psychiatrist, psychiatric advanced registered nurse practitioner, or physician or physician assistant in consultation with a mental health professional with prescriptive authority.

(c) For continued treatment beyond thirty days through the hearing on any petition filed under RCW 71.05.217, the right to periodic review of the decision to medicate by the medical director or designee.

(d) Administration of antipsychotic medication in an emergency and review of this decision within twenty-four hours. An emergency exists if the person presents an imminent likelihood of serious harm, and medically acceptable alternatives to administration of antipsychotic medications are not available or are unlikely to be successful; and in the opinion of the physician, physician assistant, or psychiatric advanced registered nurse practitioner, the person's condition constitutes an emergency requiring the treatment be instituted prior to obtaining a second medical opinion.

Page 13 of 49

EXHIBIT M

(e) Documentation in the medical record of the attempt by the physician, physician assistant, or psychiatric advanced registered nurse practitioner to obtain informed consent and the reasons why antipsychotic medication is being administered over the person's objection or lack of consent.

[ 2020 c 302 § 30; 2018 c 201 § 3008. Prior: 2016 sp.s. c 29 § 228; 2016 c 155 § 3; 2008 c 156 § 2; 1997 c 112 § 16; 1991 c 105 § 1.]." And;

See also RCW 71.05.217(5)(6)(7)(a), which (prohibits involuntary administration of antipsychotic drugs unless ordered after judicial hearing and "specific findings of fact" entered on mandatory criteria).

RCW 71.05.217, clearly provides:

**"RCW 71.05.217  Rights—Posting of list.**

(1) Insofar as danger to the individual or others is not created, each person involuntarily detained, treated in a less restrictive alternative course of treatment, or committed for treatment and evaluation pursuant to this chapter shall have, in addition to other rights not specifically withheld by law, the following rights, a list of which shall be prominently posted in all facilities, institutions, and hospitals providing such services:

(a) To wear his or her own clothes and to keep and use his or her own personal possessions, except when deprivation of same is essential to protect the safety of the resident or other persons;

(b) To keep and be allowed to spend a reasonable sum of his or her own money for canteen expenses and small purchases;

(c) To have access to individual storage space for his or her private use;

(d) To have visitors at reasonable times;

(e) To have reasonable access to a telephone, both to make and receive confidential calls;

(f) To have ready access to letter writing materials, including stamps, and to send and receive uncensored correspondence through the mails;

(g) To have the right to individualized care and adequate treatment;

(h) To discuss treatment plans and decisions with professional persons;

(i) To not be denied access to treatment by spiritual means through prayer in accordance with the tenets and practices of a church or religious denomination in addition to the treatment otherwise proposed;

(j) Not to consent to the administration of antipsychotic medications beyond the hearing conducted pursuant to RCW 71.05.320(4) or the performance of electroconvulsant therapy or surgery, except emergency lifesaving surgery, unless

Page 14 of  49

EXHIBIT M

ordered by a court of competent jurisdiction pursuant to the following standards and procedures:

(i) The administration of antipsychotic medication or electroconvulsant therapy shall not be ordered unless the petitioning party proves by clear, cogent, and convincing evidence that there exists a compelling state interest that justifies overriding the patient's lack of consent to the administration of antipsychotic medications or electroconvulsant therapy, that the proposed treatment is necessary and effective, and that medically acceptable alternative forms of treatment are not available, have not been successful, or are not likely to be effective.

(ii) The court shall make specific findings of fact concerning: (A) The existence of one or more compelling state interests; (B) the necessity and effectiveness of the treatment; and (C) the person's desires regarding the proposed treatment. If the patient is unable to make a rational and informed decision about consenting to or refusing the proposed treatment, the court shall make a substituted judgment for the patient as if he or she were competent to make such a determination.

(iii) The person shall be present at any hearing on a request to administer antipsychotic medication or electroconvulsant therapy filed pursuant to this subsection. The person has the right: (A) To be represented by an attorney; (B) to present evidence; (C) to cross-examine witnesses; (D) to have the rules of evidence enforced; (E) to remain silent; (F) to view and copy all petitions and reports in the court file; and (G) to be given reasonable notice and an opportunity to prepare for the hearing. The court may appoint a psychiatrist, physician assistant working with a supervising psychiatrist, psychiatric advanced registered nurse practitioner, psychologist within their scope of practice, physician assistant, or physician to examine and testify on behalf of such person. The court shall appoint a psychiatrist, physician assistant working with a supervising psychiatrist, psychiatric advanced registered nurse practitioner, psychologist within their scope of practice, physician assistant, or physician designated by such person or the person's counsel to testify on behalf of the person in cases where an order for electroconvulsant therapy is sought.

(iv) An order for the administration of antipsychotic medications entered following a hearing conducted pursuant to this section shall be effective for the period of the current involuntary treatment order, and any interim period during which the person is awaiting trial or hearing on a new petition for involuntary treatment or involuntary medication.

(v) Any person detained pursuant to RCW 71.05.320(4), who subsequently refuses antipsychotic medication, shall be entitled to the procedures set forth in this subsection.

(vi) Antipsychotic medication may be administered to a nonconsenting person detained or committed pursuant to this chapter without a court order pursuant to RCW 71.05.215(2) or under the following circumstances:

(A) A person presents an imminent likelihood of serious harm;

(B) Medically acceptable alternatives to administration of antipsychotic

Page 15 of 49

EXHIBIT M

medications are not available, have not been successful, or are not likely to be effective; and

(C) In the opinion of the physician, physician assistant, or psychiatric advanced registered nurse practitioner with responsibility for treatment of the person, or his or her designee, the person's condition constitutes an emergency requiring the treatment be instituted before a judicial hearing as authorized pursuant to this section can be held.

If antipsychotic medications are administered over a person's lack of consent pursuant to this subsection, a petition for an order authorizing the administration of antipsychotic medications shall be filed on the next judicial day. The hearing shall be held within two judicial days. If deemed necessary by the physician, physician assistant, or psychiatric advanced registered nurse practitioner with responsibility for the treatment of the person, administration of antipsychotic medications may continue until the hearing is held;

(k) To dispose of property and sign contracts unless such person has been adjudicated an incompetent in a court proceeding directed to that particular issue;

(l) Not to have psychosurgery performed on him or her under any circumstances.

(2) Every person involuntarily detained or committed under the provisions of this chapter is entitled to all the rights set forth in this chapter and retains all rights not denied him or her under this chapter except as limited by chapter 9.41 RCW.

(3) No person may be presumed incompetent as a consequence of receiving evaluation or treatment for a behavioral health disorder. Competency may not be determined or withdrawn except under the provisions of chapter 10.77 or * 11.88 RCW.

(4) Subject to RCW 71.05.745 and related regulations, persons receiving evaluation or treatment under this chapter must be given a reasonable choice of an available physician, physician assistant, psychiatric advanced registered nurse practitioner, or other professional person qualified to provide such services.

(5) Whenever any person is detained under this chapter, the person must be advised that unless the person is released or voluntarily admits himself or herself for treatment within one hundred twenty hours of the initial detention, a judicial hearing must be held in a superior court within one hundred twenty hours to determine whether there is probable cause to detain the person for up to an additional fourteen days based on an allegation that because of a behavioral health disorder the person presents a likelihood of serious harm or is gravely disabled, and that at the probable cause hearing the person has the following rights:

(a) To communicate immediately with an attorney; to have an attorney appointed if the person is indigent; and to be told the name and address of the attorney that has been designated;

(b) To remain silent, and to know that any statement the person makes may be used against him or her;

(c) To present evidence on the person's behalf;

(d) To cross-examine witnesses who testify against him or her;

(e) To be proceeded against by the rules of evidence;

(f) To have the court appoint a reasonably available independent professional person to examine the person and testify in the hearing, at public expense unless the person is able to bear the cost;

(g) To view and copy all petitions and reports in the court file; and

(h) To refuse psychiatric medications, including antipsychotic medication beginning twenty-four hours prior to the probable cause hearing.

(6) The judicial hearing described in subsection (5) of this section must be held according to the provisions of subsection (5) of this section and rules promulgated by the supreme court.

(7)(a) Privileges between patients and physicians, physician assistants, psychologists, or psychiatric advanced registered nurse practitioners are deemed waived in proceedings under this chapter relating to the administration of antipsychotic medications. As to other proceedings under this chapter, the privileges are waived when a court of competent jurisdiction in its discretion determines that such waiver is necessary to protect either the detained person or the public.

(b) The waiver of a privilege under this section is limited to records or testimony relevant to evaluation of the detained person for purposes of a proceeding under this chapter. Upon motion by the detained person or on its own motion, the court shall examine a record or testimony sought by a petitioner to determine whether it is within the scope of the waiver.

(c) The record maker may not be required to testify in order to introduce medical or psychological records of the detained person so long as the requirements of RCW 5.45.020 are met except that portions of the record which contain opinions as to the detained person's mental state must be deleted from such records unless the person making such conclusions is available for cross-examination.

(8) Nothing contained in this chapter prohibits the patient from petitioning by writ of habeas corpus for release.

(9) Nothing in this section permits any person to knowingly violate a no-contact order or a condition of an active judgment and sentence or an active condition of supervision by the department of corrections.

(10) The rights set forth under this section apply equally to ninety-day or one hundred eighty-day hearings under RCW 71.05.310.

[ 2020 c 302 § 32; (2020 c 302 § 31 expired January 1, 2021); 2016 c 155 § 4; 2008 c 156 § 3; 1997 c 112 § 31; 1991 c 105 § 5; 1989 c 120 § 8; 1974 ex.s. c 145 § 26; 1973 1st ex.s. c 142 § 42. Formerly RCW 71.05.370.]." And;

4.     THE WASHINGTON INFORMED CONSENT STATUTES, RCW 7.70.050; RCW 7.70.030;     RCW   7.70.040;   AND   THE   (EUA)   EMERGENCY   USE AUTHORIZATION STATUTES, 21 U.S.C. § 360bbb–3 (e)(1)(A)(ii)(III); FDCA

Page 17 of 49

EXHIBIT M

§ 564(e)(1)(A)(ii)(III) PROVIDE THAT ALL HEALTH CARE PROVIDERS, DOCTORS AND NURSES ARE REQUIRED TO GAIN THE INFORMED CONSENT AND INFORM ALL PATIENTS OF ALL POSSIBLE RISKS, ALL MATERIAL FACTS RELATING TO THE TREATMENT, THE RECOGNIZED POSSIBLE ALTERNATIVE FORMS OF TREATMENT, THE RIGHT AND OPTION TO REFUSE TREATMENT, INCLUDING THE RIGHT TO NONTREATMENT OF ALL PATIENTS BEFORE THEY ADMINISTER ANY KIND OF MEDICAL TREATMENT OR VACCINATIONS.

The Washington Informed Consent Statute RCW 7.70.050, clearly provides that

**"RCW 7.70.050 Failure to secure informed consent—Necessary elements of proof—Emergency situations. (Effective until January 1, 2022.)**

(1) The following shall be necessary elements of proof that injury resulted from health care in a civil negligence case or arbitration involving the issue of the alleged breach of the duty to secure an informed consent by a patient or his or her representatives against a health care provider:

**(a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;**

**(b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;**

**(c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;**

**(d) That the treatment in question proximately caused injury to the patient.**

(2) Under the provisions of this section a fact is defined as or considered to be a material fact, if a reasonably prudent person in the position of the patient or his or her representative would attach significance to it deciding whether or not to submit to the proposed treatment.

(3) Material facts under the provisions of this section which must be established by expert testimony shall be either:

(a) The nature and character of the treatment proposed and administered;

(b) The anticipated results of the treatment proposed and administered;

**(c) The recognized possible alternative forms of treatment; or**

**(d) The recognized serious possible risks, complications, and anticipated benefits involved in the treatment administered and in the recognized possible alternative forms of treatment, including nontreatment.**

Page 18 of 49

EXHIBIT M

(4) If a recognized health care emergency exists and the patient is not legally competent to give an informed consent and/or a person legally authorized to consent on behalf of the patient is not readily available, his or her consent to required treatment will be implied.

[ 2011 c 336 § 252; 1975-'76 2nd ex.s. c 56 § 10.]

NOTES:

Severability—1975-'76 2nd ex.s. c 56: See note following RCW 4.16.350."

And;

RCW 7.70.030, provides that:

"**RCW 7.70.030   Propositions required to be established—Burden of proof.**

No award shall be made in any action or arbitration for damages for injury occurring as the result of health care which is provided after June 25, 1976, unless the plaintiff establishes one or more of the following propositions:

(1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;

(2) That a health care provider promised the patient or his or her representative that the injury suffered would not occur;

**(3) That injury resulted from health care to which the patient or his or her representative did not consent.**

Unless otherwise provided in this chapter, the plaintiff shall have the burden of proving each fact essential to an award by a preponderance of the evidence.

[ 2011 c 336 § 250; 1975-'76 2nd ex.s. c 56 § 8.]

NOTES:

Severability—1975-'76 2nd ex.s. c 56: See note following RCW 4.16.350."

And;

RCW 7.70.040, provides that:

"**RCW 7.70.040   Necessary elements of proof that injury resulted from failure to follow accepted standard of care—COVID-19 pandemic.**

(1) The following shall be necessary elements of proof that injury resulted from the failure of the health care provider to follow the accepted standard of care:

**(a) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;**

**(b) Such failure was a proximate cause of the injury complained of.**

Page 19 of 49

EXHIBIT M

(2)(a) The following shall be necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care in acting or failing to act following the proclamation of a state of emergency in all counties in the state of Washington by the governor in response to the COVID-19 pandemic on February 29, 2020, and until the state of emergency is terminated:

(i) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances, taking into account whether the act or omission:

(A) Was in good faith based upon guidance, direction, or recommendations, including in interim or preliminary form, published by the federal government, the state of Washington or departments, divisions, agencies, or agents thereof, or local governments in the state of Washington or departments, divisions, agencies, or agents thereof, in response to the COVID-19 pandemic and applicable to such health care provider; or

(B) Was due to a lack of resources including, but not limited to, available facility capacity, staff, and supplies, directly attributable to the COVID-19 pandemic;

**(ii) Such failure was a proximate cause of the injury complained of.**

(b) The provisions in (a) of this subsection apply only if relevant to the determination of whether the health care provider followed the standard of care, as determined by the court.

**(c) If any health care provider presents evidence described in (a) of this subsection, the injured patient or the patient's representative is permitted to present rebuttal evidence, so long as such evidence is otherwise admissible.**

[ 2021 c 241 § 2; 2011 c 336 § 251; 1983 c 149 § 2; 1975-'76 2nd ex.s. c 56 § 9.]." And;

Washington RCW 7.70.050; RCW 7.70.030; RCW 7.70.040; Section 564 of the FDCA, and

W. PROSSER, LAW OF TORTS 165 (4th ed. 1971), provides that the Washington Secretary of

Health, Dr. Umair A. Shah, MD MPH had and has a continuing duty to disclose that 21 U.S.C. §

360bbb–3, says that all Doctors and Employers are to provide the appropriate conditions designed

to ensure that individuals to whom the Covid 19 Vaccine or PCR Test is administered are informed

. . . "**of the option to accept or refuse administration of the product, of the consequences if any,**

**of refusing administration of the product, and of the alternatives to the product that are**

**available and of their benefit and risks**" as clearly stated in subsection (e)(1)(A)(ii)(III) of 21

Page 20 of 49

EXHIBIT M

U.S.C. § 360bbb–3; FDCA § 564(e)(1)(A)(ii)(III), and as required by the "**Doctrine of Informed Consent**" whose main purpose is to protect the patient from being given "**Unauthorized Treatments or PCR Tests**" without the patients knowledgeable permission. The Emergency Use Authorization Fact Sheets for Recipients and Caregivers that is required to be distributed to potential Moderna COVID-19 Vaccine, Johnson & Johnson COVID-19 Vaccine, and Pfizer-BioNTech COVID-19 Vaccine recipients: "**It is your choice to receive or not receive the Moderna COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care.**" ("**It is your choice to receive or not to receive the Pfizer-BioNTech COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care.**") (**It is your choice to receive or not to receive the Johnson & Johnson COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care.**")

Put simply, the (EUA) Emergency Use Authorization Statute provides that, as a condition of receiving authorization for emergency use, ALL individuals to whom the EUA product may be administered are given the right to accept or refuse administration of the product.

If any physician performs any treatments or tests on any patient without fully informing the patient of his or her "**option to accept or refuse administration**" of any "**Emergency Use Authorization**" of any PCR Test and/or any Covid 19 Vaccination under "**21 U.S.C. § 360bbb–3 (e)(1)(A)(ii)(III); FDCA § 564(e)(1)(A)(ii)(III)**", he has committed an assault and battery against that patient for failure to obtain the patients knowledgeable permission. Holt v. Nelson, 11 Wn.App. 230 (1974); Miller v. Kennedy, 11 Wn.App. 272 (1974); Miller v. Kennedy, 85 Wn.2d 151 (1975); Gates v. Jenson, 92 Wn.2d 246 (1979); ZeBarth v. Swedish Hosp. Med. Center, 81 Wn.2d 12 (1972); Harris v. Groth, 99 Wn.2d 438 (1983); Smith v. Shannon, 100 Wn.2d 26 (1983); Watkins

EXHIBIT M

v. Parpala, 2 Wn.App. 484  (1970);  Canterbury v. Spence, 464 F.2d 772 (D.C.Cir.), cert. denied,

409 U.S. 1064 (1972);  Cobbs v. Grant, 8 Cal.3d 229 (1972).

The Washington Appellate Court in Burnet v. Spokane Ambulance, 54 Wash.App. 162

(1989), held that:

> "Informed consent focuses on the patient's right to know his bodily condition
> and to decide what should be done.  RCW 7.70.050; Alexander v. Gonser, 42
> Wash.App. 234, 237, 711 P.2d 347 (1985), review denied, 105 Wash.2d 1017 (1986)
> (citing Keogan v. Holy Family Hosp., 95 Wash.2d 306, 314, 622 P.2d 1246 (1980)).
> Whenever a physician becomes aware of a condition which indicates risk to the
> patient's health, he has a duty to expose it. Keogan,, at 314,  622 P.2d 1246; Gates
> v. Jensen, 92 Wash.2d 246, 251, 595 P.2d 919 (1979); Alexander, 42 Wash.App. at
> 237, 711 P.2d 347; Miller v. Kennedy, 11 Wash.App. 272, 282, 522 P.2d 852 (1974),
> aff'd 5 Wash.2d 151, 530 P.2d 334 (1975)."  Burnet v. Spokane Ambulance, 54
> Wash.App. 162 (1989).  And;

The Supreme Court of Oregon in Gaston v. Parsons, 318 Or. 147 (1994), clearly stated that:

> "This interest was aptly stated by Justice Cardozo for the New York Court
> of Appeals:
> "Every human being of adult years and sound mind has a right to determine
> what shall be done with his own body; and a surgeon who performs an operation
> without his patients consent commits an assault, for which he is liable in damages."
> Schloendorff v. New York Hospital, 211 N.Y. 125, 129, 105 N.E. 92 (1914)."  And;

The Supreme Court of Oregon in Mayor v. Dowsett, 240 Or. 196 (1965), held that:

> "It may be stated as a general rule that a physician who performs an operation
> or administers treatment to which his patient has not expressly or impliedly
> consented is guilty of a technical battery: 41 Am.Jur. 220, Physicians and Surgeons
> § 108; 6 C.J.S. Assault and Battery § 8, p. 801; Annotation, 56 A.L.R.2d 695, at 697;
> 76 A.L.R. 562."  Oregon in Mayor v. Dowsett, 240 Or. 196 (1965).  And;

The Supreme Court of California in Cobbs v. Grant, 8 Cal.3d 229 (1972), held that:

> "Where a doctor obtains consent of the patient to perform one type of
> treatment and subsequently performs a substantially different treatment for which

Page 22 of  49

# EXHIBIT M

consent was not obtained, there is a clear case of battery." Cobbs v. Grant, 8 Cal.3d 229 (1972). And;

It is well established that customary international law includes a norm that requires voluntary, informed consent and prohibits non-consensual human medical experimentation. Abdullahi v. Pfizer, 562 F.3d 163, 174-188 (2nd Cir. 2009).

The general rule regarding the duty of a physician to inform his patient of known dangers is not questioned. Upon that subject see the Annotation, 79 A.L.R.2d 1028. Plante, An Analysis of 'Informed Consent,' 36 Ford.L.Rev. 639, 650-653 (1968). Moreover a doctor could be held liable for punitive damages under a battery count, and if held liable for the intentional tort of batter he might not be covered by his malpractice insurance. Comment, Informed Consent in Medical Malpractice, 55 Cal.L.Rev. 1396 (1967); Fraser & Chadsey, Informed Consent in Malpractice Cases, 6 Will.L.J. 183, 185 (1970); Hagman, The Medical Patient's Right to Know, 17 U.C.L.A.Rev. 758, at 778 (1970). Any defense, of course, must be consistent with what has been termed the 'fiducial qualities' of the physician-patient relationship. See Emmett v. Eastern Dispensary & Cas. Hosp., 130 U.S.App.D.C. 50, 396 F.2d 931, 935 (1967). See also Brushwood & Simonsmeier, Drug Information For Patients: Duties of the Manufacturer, Pharmacist, Physician, and Hospital, 7 J.Legal Med. 270, 280 n. 6 (1986) (listing PPI requirements), and Curran, Package Inserts for Patients: Informed Consent in the 1980s, 305 New Eng.J.Med. 1564, 1565-66 (1981).

In anticipation that your attorney or law firm will object and argue that Washington State Governor Jay Inslee's executive order allegedly overrides all of the above, that argument is meritless, moot and inapplicable to obtain the required results because the State of Washington has failed to cite or plead any Statute passed by the Washington State Legislature that purports to allow

Page 23 of 49

EXHIBIT M

the State of Washington mandate or require that anyone get vaccinated or wear a mask.

5.  WASHINGTON STATE GOVERNOR JAY INSLEE IS GUILTY OF RCW 9A.80.010 OFFICIAL MISCONDUCT AND RCW 9A.72.020 PERJURY OF HIS OATH OF OFFICE AT RCW 43.01.020 FOR FRAUDULENTLY ISSUING AN EXECUTIVE ORDER REQUIRING EVERYONE TO BE VACCINATED OR TO WEAR A MASK IN VIOLATION OF THE SEPARATION OF POWERS DOCTRINE AS CODIFIED IN THE WASHINGTON STATE CONSTITUTION, ARTICLE III, SECTION 1; ARTICLE IV, SECTION 1; ARTICLE XI, SECTION 5;  STATE v. OSLOOND,  60 Wash. App. 584, at 587,  805 P(2d) 263 (1991); STATE v.  BLILIE, 132 Wash.2d 484, 489, 939 P.2d 691 (1997);  CARRICK v. LOCKE, 125 Wash.2d 129, 134-35, 882 P.2d 173 (1994); STATE v. MORENO, 147 Wn.2d 500, 505, 58 P.3d 265 (2002);  PEOPLE v. THE MUNICIPAL COURT FOR THE VENTURA JUDICIAL DISTRICT, 27 Cal. App. 3d 193, 103 Cal. Rptr. 645 (1972);  PEOPLE v. SMITH, 53 Cal.App.3d 655 at 660;  126 Cal.Rptr. 195 (1975); IN RE PETITION OF PADGET, 678 P.2d 870 (Wyo. 1984);  MYERS v. UNITED STATES, 272 U.S. 52, 47 S.Ct. 21,  71 L.Ed. 160 (1926).

In anticipation that your attorney or law firm Stoel Rives will object and argue that Washington State Governor Jay Inslee's executive order allegedly overrides all of the above, that argument is meritless, moot and inapplicable to obtain the required results.

It is undisputed pursuant to CR 8(d) that the Washington State Legislature has NEVER passed any laws requiring anyone to be "**vaccinated**" or to wear "**face masks**" in public and it is also undisputed that Governor Jay Inslee has no statutory or constitutional authority to issue "**Vaccine Mandates**" or to make any "**Face Mask Wearing Laws**" on his own authority and therefore,  Governor Jay Inslee is guilty of RCW 9A.80.010 Official Misconduct and RCW

EXHIBIT M

9A.72.020 Perjury of his Oath of Office at RCW 43.01.020 for fraudulently issuing an Executive Order requiring everyone to be "vaccinated" with the "COVID-19 Vaccine" and/or be required to wear a Face Mask in violation of the "**Separation of Powers Doctrine**", Washington State Constitution, article III, section 1; article IV, section 1; article XI, section 5; State v. Osloond, 60 Wash. App. 584, at 587, 805 P(2d) 263 (1991); State v. Blilie, 132 Wash.2d 484, 489, 939 P.2d 691 (1997); Carrick v. Locke, 125 Wash.2d 129, 134-35, 882 P.2d 173 (1994); State v. Moreno, 147 Wn.2d 500, 505, 58 P.3d 265 (2002); People v. The Municipal Court for the Ventura Judicial District, 27 Cal. App. 3d 193, 103 Cal. Rptr. 645 (1972); People v. Smith, 53 Cal.App.3d 655 at 660; 126 Cal.Rptr. 195 (1975); In re Petition of Padget, 678 P.2d 870 (Wyo. 1984); Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926).

The constitutional structure of the United States, as well as the State of Washington, requires a tri-partite form of government. This form maintains the independence between the legislative, the executive, and the judicial branch. "**If there is a principle in our Constitution, indeed in any free Constitution, it is that which separates the Legislature, Executive, and Judicial powers.**" Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926). This separation of powers and independence of all branches is a "**security for the people**" in the preservation of liberty. Myers, 272 U.S. at 116. **Rule of law is preserved under this system by requiring that the people who make the law differ from those who execute and apply the law. Myers, 272 U.S. at 123.**

Washington State Governor Jay Inslee, the Washington Secretary of Health, Dr. Umair A. Shah, MD MPH, and OSHA only have the power granted by statute. Hoppe v. King County, 95 Wn.2d 332, 337, 622 P.2d 845 (1980); 63 Am. Jur. 2d, Public Officers and Employees, section 263 (1972); Neither officer or OSHA can make laws on their own motion without violating "**The**

Page 25 of 49

# EXHIBIT M

**Separation of Powers Doctrine**." <u>State v. Osloond</u>, 60 Wash. App. 584, at 587, 805 P(2d) 263 (1991); <u>Myers v. United States</u>, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926). Only Congress or the State legislature can make laws.

      6.    NEITHER WASHINGTON STATE GOVERNOR JAY INSLEE, THE WASHINGTON SECRETARY OF HEALTH, DR. UMAIR A. SHAH, MD MPH OR OSHA CAN REDELEGATE ANY AUTHORITY OR POWER TO EMPLOYERS TO HIRE OR FIRE ANY EMPLOYEE FOR REFUSAL TO BE VACCINATED OR MASKED IN THEIR WORK PLACE WITHOUT VIOLATING "THE NON DELEGATION DOCTRINE." <u>NOE v. EDMONDS SCH. DIST. 15</u>, 83 Wn.2d 97, 515 P.2d 977 (1973); <u>LEDGERING v. STATE</u>, 63 Wn.2d 94, 385 P.2d 522 (1963).

Only Congress or the State legislature can make laws. Neither Washington State Governor Jay Inslee, the Washington Secretary of Health, Dr. Umair A. Shah, MD MPH or OSHA can redelegate any authority or power to Employers to hire or fire any employee for refusal to be vaccinated or masked in their work place without violating "The Non Delegation Doctrine." <u>Noe v. Edmonds Sch. Dist. 15</u>, 83 Wn.2d 97, 515 P.2d 977 (1973); <u>Ledgering v. State</u>, 63 Wn.2d 94, 385 P.2d 522 (1963). What the Legislature is forbidden to do directly, certainly [the Governor Jay Inslee, the Washington Secretary of Health, Dr. Umair A. Shah, MD MPH and OSHA] cannot [illegally solicit or recruit Employers] to do indirectly." <u>The City of Seattle v. Filson</u>, 98 Wn.2d 66 (Nov. 1982). The non delegation doctrine constrains Congress's ability to delegate it's legislative authority to executive agencies. See, e.g., <u>Mistretta v. United States</u>, 488 U.S. 361, 371-72 (1989)

Page 26 of 49

## EXHIBIT M

("The Constitution provides that '[a]ll legislative Powers herein granted shall be vested in a Congress of the United States' . . . and we have long insisted that 'the integrity and maintenance of the system of government ordered by the Constitution' mandate that Congress generally cannot delegate it's legislative power to another Branch." (first quoting U.S. Const. art. I, § 1; then quoting Field v. Clark, 143 U.S. 649, 692 (1892))). "A flat prohibition against regulation of a matter in one direction does not give Congress power to regulate the matter in another direction." Powe vs United States, 109 F.2d 140 (1940). Congress must "speak clearly if it wishes to assign an agency decisions of vast economic and political significance." Ala. Ass'n of Realtors v. Dep't of Health & Human Servs., 141 S.Ct. 2485, 2489 (2021) (quoting Util. Air Regul. Grp v. EPA, 573 U.S. 302, 324 (2014).

7. WASHINGTON STATE GOVERNOR JAY INSLEE, THE WASHINGTON SECRETARY OF HEALTH, DR. UMAIR A. SHAH, MD MPH AND OSHA FAILED TO CITE OR PLEAD ANY PRIVATE STATUTE BY ITS TITLE, AND THE DAY OF ITS PASSAGE AS REQUIRED BY SUBSECTION (j) OF RULE 9 PLEADING PRIVATE MATTERS, THAT ALLOWS THEM TO MANDATE VACCINES OR REQUIRE THAT ANYONE WEAR MASKS.

Washington State Governor Jay Inslee, the Washington Secretary of Health, Dr. Umair A. Shah, MD MPH, and OSHA failed to cite or plead any private statute by its title, and the day of its passage as required by subsection (j) of Rule 9 Pleading Private Matters, that allows them to Mandate Vaccines or require that anyone wear Masks

"**CR 9(j) Pleading Private Statutes**. In pleading a private statute, or a right

Page 27 of 49

EXHIBIT M

derived therefrom, it shall be sufficient to refer to such statute by its title, and the day of its passage, and the court shall thereupon take judicial notice thereof." And;

In Bowen v. Baumgardner, 6 Wn.App. 18, 491 P.2d 1301 (1971), **the court refused to consider claimed applications of the Seattle Traffic Code Sections because they were neither pleaded nor included in any affidavit.** Likewise, all courts and all employers in the State of Washington are required to ignore Washington State Governor Jay Inslee's Covid related executive orders and proclamation, and their enforcement via health orders issued by the Washington Secretary of Health, Dr. Umair A. Shah, MD MPH, and OSHA's most recent ETS–the Agency's November 5, 2021 Emergency Temporary Standard (the "Mandate") requiring employees of covered employers to undergo COVID-19 vaccination or take weekly COVID-19 tests and wear a mask.

The Occupational Safety and Health Administration (OSHA) has failed to invoke any statute expressly authorizing any emergency temporary standard (ETS) to protect working people from occupational exposure to infectious disease, including COVID-19, and therefore has "no authority" to issue sweeping health standards to address entire classes of known and unknown infectious diseases on an emergency basis without notice and comment." See Department of Labor's Resp. To the Emergency Pet. for a Writ of Mandamus at 33-34, In re AFL-CIO, No. 20-1158 (D.C. Cir. May 29, 2020) (OSHA D.C. Circuit Brief).

It is undisputed that there is no statute or law in existence that requires me to be vaccinated, tested or masked that allows any Employer in the State of Washington to grant or deny the continued employment or new employment of any person based upon whether or NOT they have received a Covid 19 Vaccination or PCR Test. I have a "vested" Constitutional Right to my continued employment under 1 Sutherland Statutory Construction (3d ed.), p 525, § 2043, and the common

Page 28 of 49

EXHIBIT M

law pursuant to RCW 4.04.010; RCW 9A.04.060; CrR 1.1.

8.    ALL EMPLOYEES INCLUDING MELISSA WHITE ARE ENTITLED TO BACK
      PAY UNDER THE HOLDINGS OF PHELPS DODGE CORP. v. NATIONAL
      LABOR RELATIONS BOARD, 313 U.S. 177, 85 L.Ed. 1271, 61 S.Ct. 845 (1941);
      ALBEMARIE PAPER CO. v. MOODY, 422 U.S. 405, 45 L.Ed.2d 280, 95 S.Ct.
      2362 (1975); SECURITY BOARD v. NIEROTKO, 327 U.S. 358, 370-71, 66 S.Ct.
      637, 90 L.Ed. 718, 728 (1945); AND KRYSTAD v. LAU, 65 Wn.2d 827, 400 P.2d
      72 (1965).

Backpay as a remedy was first widely used by the National Labor Relations Board (NLRB)

when ordering reinstatement of workers fired for union activity.  Phelps Dodge Corp. v. National

Labor Relations Board, 313 U.S. 177, 85 L.Ed. 1271, 61 S.Ct. 845 (1941).  While it's use in this

context was statutorily authorized, the federal courts later recognized the "historic power of equity"

to award lost wages to workers discriminated against in violation of the Fair Labor Standards Act,

29 U.S.C. 201 et seq., notwithstanding the absence of any statutory authority for such a remedy.

Mitchell v. DeMario Jewelry, 361 U.S. 288, 4 L.Ed.2d 323, 80 S.Ct. 332 (1960).  Similar results

were reached under the federal civil rights statutes.  Albemarie Paper Co. v. Moody, 422 U.S. 405,

45 L.Ed.2d 280, 95 S.Ct. 2362 (1975).

In this later case the court emphasized the "make whole" nature of reinstatement and

reimbursement for lost wages and observed:

> "The general rule is, that when a wrong has been done, and the law gives a
> remedy, the compensation shall be equal to the injury.  The latter is the standard by

Page 29 of  49

which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed. Wicker v. Hoppock, 6 Wall 94, 99, 18 L.Ed. 752 (1867)." Albemarie Paper Co. v. Moody, 422 U.S. 405, at 418-419, 45 L.Ed.2d 280, 95 S.Ct. 2362 (1975). And;

While the Albemarie court conceded that backpay awards involved the exercise of discretion by the trial courts, it also pointed out that such awards are routinely granted and that trial courts must have specific, articulated reasons for refusing to grant them. Albemarie Paper Co. v. Moody, supra, at 421 n. 14, 45 L.Ed.2d 280, 299.

Washington Courts have followed this direction since 1965 in it's own labor laws. In Krystad v. Lau, 65 Wn.2d 827, 400 P.2d 72 (1965), our State Supreme Court implied substantial remedies and a partial abrogation of the employment "at will doctrine" from the general policy statement contained in Washington's "little Norris-LaGuardia Act", RCW 49.32, which recognized the right of workers to organize. Analyzing the remedies available to other workers wrongfully terminated for union activities, the court directed that they be reinstated and compensated for any damages proximately resulting from their wrongful discharge. Krystad v. Lau, supra, 65 Wn.2d at 846, 400 P.2d at 83. While this standard certainly could include damages beyond backpay, such reimbursement is the minimum necessary to make the employees whole.

Whether the employees here were placed on unpaid leave, paid leave or allowed to use up accumulated sick time pay the employees here were illegally discharged and subjected to enforced idleness when they should have been earning wages.

The proper remedy for the employer's wrongful conduct is the payment of the wages and all pensions moneys to which they would have been entitled but for that wrongful conduct. If participation in the pension plan, retirement plan or any 401k's are terminated early, the employer

<u>EXHIBIT M</u>

is required under the common law to financially compensate the individual for the loss of any

financial benefits. See RCW 4.04.010; RCW 9A.04.060; CrR 1.1.

The United States Supreme Court long ago acknowledged:

" . . . that a man's time may, as a matter of law, be in the service of another
though he be inactive. . . . When the employer is liable for back pay, he is so liable
because under the circumstances, though he has illegally discharged the employee,
he still absorbs his time. In short, an employer must pay wages although, in
violation of the law, he has subjected his employee to enforced idleness." <u>Social
Security Board v. Nierotko</u>, 327 U.S. 358, 370-71, 66 S.Ct. 637, 90 L.Ed. 718, 728
(1945) (Frankfurter, concurring). And;

The purpose of a backpay award is to put the employee in the position he or she would have

occupied but for the wrongful acts of the employer. It is not a punishment. The Supreme Court,

in a Title VII case analogous to the present one ruled:

"[T]he mere absence of bad faith simply opens the door to equity; it does not
depress the scales in the employee's favor. If backpay were awardable only upon a
showing of bad faith, the remedy would become a punishment for moral turpitude,
rather than a compensation for worker injuries. This wold read the "make whole"
purpose right out of Title VII, for a worker's injury is no less real simply because his
employer did not inflict it in bad faith." <u>Albemarie Paper Co. v. Moody</u>, 422 U.S.
405, at 422, 45 L.Ed.2d 280, 95 S.Ct. 2362 (1975).

The real injury suffered by the workers here was the loss of their jobs. Had they not been

wrongfully discharged, they would still be employed today.

9.  ALL EMPLOYEES INCLUDING MELISSA WHITE ARE ENTITLED TO
RECEIVE UNEMPLOYMENT COMPENSATION FOR GOOD CAUSE
BECAUSE THEY BECAME UNEMPLOYED THROUGH NO FAULT OF THEIR

Page 31 of 49

EXHIBIT M

OWN PURSUANT TO RCW 50.01.010, AND THE WELL SETTLED
PRINCIPLES STATED IN COWLES PUB'G CO. v. DEPARTMENT OF EMPL.
SEC., 15 Wn.App. 590, 550 P.2d 712 (Div. III, 1976) PETITION FOR REVIEW
DENIED, 88 Wn.2d 1001 (1977).

The basic policy of Washington's Employment Security Act is to reduce the impact of

unemployment on those persons who are unemployed through no fault of their own. See RCW

50.01.010. The Court of Appeals Division III, explained in Cowles Pub'g Co. v. Department of

Empl. Sec., 15 Wn.App. 590, 550 P.2d 712 (Div. III, 1976) petition for review denied, 88 Wn.2d

1001 (1977), at page 593:

> "[W]hether unemployment be involuntary or voluntary for good cause, the
> Act requires that the reason for the unemployment be external and separate from the
> claimant. Quite simply, the Act operates generally on a fault principle. A claimant,
> whether involuntarily unemployed or voluntarily unemployed for good cause, will
> qualify for benefits under the Act when the fault of the unemployment does not lie
> with the claimant. Because the Act provides for compensation of those "unemployed
> through no fault of their own", benefits cannot be awarded on a comparative fault
> basis. The courts cannot legislate otherwise." Cowles Pub'g Co. v. Department of
> Empl. Sec., 15 Wn.App. 590, at 593, 550 P.2d 712 (Div. III, 1976) petition for
> review denied, 88 Wn.2d 1001 (1977)." And;

Here the record clearly shows that the reason for the employees unemployment was external

and separate from the employee claimant. The former employee claimant objects and argues that

whether he or she was terminated, involuntarily unemployed, placed on paid leave, leave with no

pay or voluntarily unemployed with good cause that he or she qualifies for benefits under the Act

because the fault of the unemployment does not lie with the employee claimant, and because the

employee claimant left employment for primarily because of work connected factors that were of

Page 32 of 49

EXHIBIT M

such a compelling nature as to cause a reasonably prudent person to leave his or her employment with "good cause" as contemplated by RCW 50.20.050.

The Washington State Supreme Court in Davis v. Department of Empl. Sec., 108 Wn.2d 272, 276, 737 P.2d 1262 (1987), has made it quite clear that only work-connected factors, and not personal reasons, may supply an unemployment compensation benefit claimant with "good cause" under RCW 50.20.050, supra.

10. WASHINGTON STATE GOVERNOR JAY INSLEE, THE WASHINGTON SECRETARY OF HEALTH, DR. UMAIR A. SHAH,  MD MPH, AND OSHA ARE GUILTY OF 18 U.S.C. § 371 AND RCW 9A.28.040 CRIMINAL CONSPIRACY; RCW 9A.28.020 CRIMINAL ATTEMPT AND RCW 9A.28.030 CRIMINAL SOLICITATION FOR RECRUITING OR SOLICITING EMPLOYEES OF THE DEPARTMENT OF LABOR AND/OR THE DEPARTMENT OF HEALTH TO GIVE FALSE LEGAL ADVICE IN VIOLATION OF RCW 2.48.180, GIVING FALSE MEDICAL ADVICE IN VIOLATION OF RCW 18.130.190, AND PRESCRIBING A MEDICINE OR VACCINE WITHOUT A PHARMACIST LICENSE IN VIOLATION OF RCW 18.64.020.

Washington State Governor Jay Inslee, the Washington Secretary of Health,  Dr. Umair A. Shah,  MD MPH, and OSHA, are guilty of RCW 9A.28.040 Criminal Conspiracy; RCW 9A.28.020 Criminal Attempt and RCW 9A.28.030 Criminal solicitation for attempting to recruit or solicit employees of the Department of Labor and/or the Department of Health to give False Legal Advice, False Medical Advice and to Prescribe Pharmaceutical Drugs (COVID-19 VACCINES), without being licensed so to do to thousands of Employers in the State of Washington. Any Employer who gives False Legal advice is subject to being charged with and prosecuted for "**unauthorized**

Page 33 of  49

EXHIBIT M

**practice of law"** pursuant to RCW 2.48.180 et seq, or **"practicing medicine without a license"** in violation of RCW 18.130.190 or **"practicing pharmacy without a license"** in violation of RCW 18.64.020.

11.    NO BUSINESS PUBLIC OR PRIVATE HAS THE RIGHT TO REFUSE ENTRANCE OR SERVICE TO ANYONE WHO IS NOT WEARING A MASK AND OR REFUSES TO BE MASKED PURSUANT TO THE FEDERAL PUBLIC ACCOMMODATION LAWS AS CODIFIED AT 28 CFR $\S$ 36.202(a)(b)(c)(d) and 13 CFR § 112.6, AND PURSUANT TO THE WASHINGTON STATE PUBLIC ACCOMMODATION LAWS AS CODIFIED AT RCW 49.60.030 AND RCW 49.60.215.

No business public or private, including this business has the Right to Refuse Accommodation, Entrance or Service to anyone who is not vaccinated or for not wearing a Mask on the False Premise that they are a privately owned business or membership only pursuant to the Federal Public Accommodation Law at 28 CFR $\S$ 36.202(a)(b)(c)(d) and 13 CFR § 112.6, and pursuant to the Washington State Public Accommodation Laws as codified at RCW 49.60.030 and RCW 49.60.215.  It is undisputed that all businesses in Washington State are in fact and law . . . **"STATE LICENSED CORPORATIONS"** . . ., that were issued . . . **"A FEDERAL TAX ID NUMBER"** . . ., therefore, all State Licensed Businesses are **"Political Subdivisions"** and **"Instrumentalities"** of the State and/or the Corporate United States as contemplated by **"26 U.S.C.**

Page 34 of  49

EXHIBIT M

**3401(23)(c)**." Every Privately Owned Business Signed an Application for a Master Business License Contract and Agreement with the State promising to abide by all State and Federal Laws, which includes the United States Constitution, the Washington State Constitutions, and their Equal Protection of the Law Clauses and their Religious Clauses.

It is undisputed that all Publicly or Privately Owned Businesses including the University of Washington (UW Medicine), Harborview Medical Center are deemed to be . . . "**PUBLIC ACCOMMODATIONS**" . . . under Federal Law at (CFR) Code of Federal Regulations, at Title 28 - Judicial Administration > CHAPTER 1 - DEPARTMENT OF JUSTICE > PART 36 > NON DISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ACCOMMODATIONS AND IN COMMERCIAL FACILITIES > Subpart B - General Requirements > § 36.202 Activities.

28 CFR § 36.202, reads:

> "**§ 36.202 Activities.**
>
> **(a) Denial of participation.** A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, **to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.**
>
> **(b) Participation in unequal benefit. A public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing,** or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, **or accommodation that is not equal to that afforded to other individuals.**
>
> **(c) Separate benefit. A public accommodation shall not provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing**, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.
>
> **(d) Individual or class of individuals. For purposes of paragraphs (a) through (c) of this section, the term "individual or class of individuals" refers to the clients or customers of the public accommodation that enters into the contractual, licensing, or other arrangement."** And;

<u>EXHIBIT M</u>

The (CFR) Code of Federal Regulations at **13 CFR § 112.6**, reads:

**"§ 112.6 Discrimination in accommodations or services.**

Small business concerns which apply for or receive any financial assistance of the kind described in § 112.2(a)(1), concerns which are identifiable beneficiaries of loans made under § 112.2(a)(2), and physicians, hospitals, schools, libraries, and other individuals or organizations which apply for or receive financial assistance of the kind described in § 112.2(a)(5), may not discriminate in the treatment accommodations or services they provide to their patients, students, visitors, guests, members, passengers, or patrons in the conduct of such businesses or other enterprises, whether or not operated for profit.

[31 FR 2374, Feb. 4, 1966]." And;

Title VII requires employers and businesses that are open to the public to make reasonable accommodations for employees and customers religious beliefs. A prima facie case for failure to accommodate under Title VII requires a plaintiff to show that (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer or business owner of the beliefs and the conflict; and (3) the employer or business responded by subjecting the employee or customer to threatened or actual discriminatory treatment. <u>Lawson v. Washington</u>, 296 F.3d 799, 804 (9th Cir., 2002). As a defense, the employer or business owner may show that it either offered the employee a reasonable accommodation or that an accommodation would be an "undue hardship" or unduly burdensome on the employer. However, in the instant case, the business, specifically the University of Washington (UW Medicine), and/or the Harborview Medical Center have both failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that Melissa White poses any threat or danger to other school employees or students, and failed to make any accommodation in direct violation of  28 CFR §

Page 36 of  49

EXHIBIT M

36.202; 13 CFR § 112.6; RCW 49.60.030; RCW 49.60.215, and further failed to make any showing that it offered a reasonable accommodation or that an accommodation would be an "undue hardship" or that providing any kind of accommodation would be "unduly burdensome on the employer or place of business.

It is undisputed pursuant to CR 8(d), that both the University of Washington (UW Medicine), and/or the Harborview Medical Center have both failed to provide any "competent evidence" or any proof that any "accommodation" is or was required in the first place, because neither business or company has any "competent evidence" or "proof" that Melissa White is sick or infected with the Covid-19 Virus in the first instance, therefore, both the the University of Washington (UW Medicine), and/or the Harborview Medical Center are guilty of perpetrating a fraud against Melissa White by terminating her from employment, and illegally stripping her of sick time, and retirement benefits with no valid legal reason.

The United States Supreme Court has ruled than an "undue hardship" results whenever an accommodation "require[s an employer] or place of business to bear more than a de minimis cost." Transworld Airlines, Inc. v. Hardison, 431 U.S. 63, 84 (1977). Here in the instant case, the University of Washington (UW Medicine), Harborview Medical Center has also failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that Melissa White, subjected the University of Washington (UW Medicine), Harborview Medical Center to any kind of "undue hardship" which caused or causes it to bear more than a "deminimis cost." Melissa White is not sick or infected with the Covid-19 Virus, and nor is Melissa White displaying any symptoms of being sick or infected with the Covid-19 Virus, therefore, Melissa White does NOT need to wear a mask or be vaccinated. Further, this company has no reasonable

suspicion or the required probable cause that would allow it to apply to any court in this state to apply for a search warrant or request any court in this State to issue a court order that Melissa White be searched or be required to submit to a PCR Test to determine whether or not she is sick or infected with the Covid-19 Virus.  This company cannot apply for a search warrant or request any court issue any court order that Melissa White submit to a PCR Test or any other kind of testing to test for the Covid-19 Virus on speculation, conjecture or hearsay, it must have Washington Evidence Rule,  ER 702 "Competent Admissible Evidence" or make an "Offer of Proof" pursuant to Washington Evidence Rule 103 (2) that Melissa White is actually infected or sick with the Covid-19 Virus, before it could apply to any court in this State for a warrant or search of her "person" for the Covid-19 Virus.  In fact, on this point Melissa White, objects and argues that the State of Washington has overreached and overstepped it's authority by placing an "undue hardship" on all employers and all businesses in the State of Washington by forcing all employers and all businesses to bear more than a de minimis cost by requiring them to spend any money towards the purchase of masks which do nothing to prevent or slow the transmission of the manmade synthetic Covid-19 biological weapon.  Melissa White objects and argues that she is causing the University of Washington (UW Medicine), Harborview Medical Center  to save money by causing them to not even bear a "deminimis cost."   The Supreme Court has also ruled that "a reasonable accommodation" need not be the precise accommodation the employee or customer requests, even if the employer could provide the accommodation without suffering any undue hardship. Ansonia Bd. Of Educ. v. Philbrook, 479 U.S. 60, 68 (1986).

Courts have also held than an undue hardship may be something more than a financial burden.  For example, an employer or place of business can defeat a religious accommodation claim

by showing that a valid safety concern would cause an "undue hardship." Draper v. U.S. Pipe & Foundry Co., 527 F.2d 515, 521 (6th Cir., 1975). However, in the instant case, both the University of Washington (UW Medicine), and Harborview Medical Center have completely failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that Melissa White is sick or infected with the Covid-19 Virus in the first place, and conjunctively that an "accommodation" would be necessary. Melissa White objects and argues that she is not sick or infected with the Covid-19 Virus, and therefore "no accommodation" is necessary, and that she should be allowed to return to work as though the pandemic never existed. Further, both the the University of Washington (UW Medicine), and Harborview Medical Center have completely failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that allowing Melissa White any accommodation under 28 CFR § 36.202; 13 CFR § 112.6; RCW 49.60.030; RCW 49.60.215, would pose any valid safety concern that would cause it any "undue hardship." Draper v. U.S. Pipe & Foundry Co., supra. While safety considerations are highly relevant in determining whether a proposed accommodation would produce any "undue hardship" on the employer or business, Title VII does not require that safety be subordinated to the religious beliefs of an employee or customer if the employer or business can make a showing that Melissa White, or anybody else not wearing a mask would place the University of Washington (UW Medicine), Harborview Medical Center employees or other customers under any kind of "undue hardhip." However, in the instant case both the the University of Washington (UW Medicine), and Harborview Medical Center have completely failed to submit any ER 702 "competent written evidence" and/or failed to make any ER 103(2) Offers of Proof that any accommodation is necessary because she is not sick or infected with the Covid-19 Virus in the first place. All the case law

Page 39 of 49

EXHIBIT M

provided by your attorney has been misquoted out of context with the facts and reality, therefore, if this case were to go to court, Melissa White would ask the court to issue CR 11 Sanctions against your law firm, and it's attorneys for misstating the law of this case. See also, e.g., EEOC v. Kelly Services, Inc., 598 F.3d 1022 (8th Cir. 2010); LBhatia v. Chevron U.S.A., Inc., 734 F.2d 1382, 1384 (9th Cir., 1984); Kalsi v. N.Y.C. Transit Auth., 62 F.Supp.2d 745 (E.D.N.Y. 1998), aff'd mem., No. 99-7097, 1999 WL 710257 (2nd Cir. Sept. 2, 1999). As noted in Finnie v. Lee County, this "line of cases makes clear that an employer [or place of business] can be subjected to an undue hardship if the accommodation would create any significant safety, or even legal, risks. Finnie v. Lee County, 907 F.Supp.2d 750, 778 (N.D. Miss. 2012). However, this case like all the other cases cited by your law firm, and it's criminally corrupt and unethical attorneys does not apply because Melissa White is not sick or infected with the Covid-19 Virus, and therefore rehiring and reinstating Melissa White to her former position would pose no undue hardship because there is no need to provide her any accommodation in the first place.

Although "an employer [or place of business] is not required to 'to wait until it [feels] the effects of the proposed accommodation before determining its reasonableness" Miller v. Port Auth. of N.Y. & N.J., 351 F.Supp. 3 762, 789 (D.N.J. 2018, aff'd, 788 F.App'x 886 (3d Cir., 2019), an analysis of "undue hardship" cannot be based upon mere speculation or conjecture that Melissa White, might have the Covid-19 Virus or that she is asymptomatic or that she is susceptible to contracting or catching the Covid-19 Virus.

Melissa White is not sick, and does not display any Covid-19 symptoms, and does not need a doctor, and does not need to wear a mask period, and Gods law at Matthew 9:12; Mark 2:7, and Luke 5:31, clearly says that the whole of the people don't need the doctor or a mask, and that only

# EXHIBIT M

the sick need the doctor or a mask, and clearly reads:

> "Now when Jesus heard it, he said unto them, The whole need not the Physician, but they that are sick." **Matthew 9:12**

> "Now when Jesus heard it, he said unto them, The whole have no need of the Physician, but the sick. I came not to call the righteous, but the sinners to repentance." **Mark 2:7**

> "Then Jesus answered, and said unto them, They that are whole, need not the Physician, but they that are sick." **Luke 5:31**

The University of Washington (UW Medicine), Harborview Medical Center have clearly violated both State and Federal Public Accommodation laws as codified at 28 CFR § 36.202; 13 CFR § 112.6; RCW 49.60.030; RCW 49.60.215, based upon mere speculation, conjecture and fraud.

The United States Supreme Court has held that when a state law conflicts with federal law, that state law is "**without effect**." Cipollone v. Ligget Group, Inc., 505 U.S. 504, 516 (1992); M'Culloch v. Maryland, 17 U.S. 316, 427 (1819); In cases where federal preemption is found, **the federal law will supercede the state statute** to the extent necessary to protect the achievement of the aims of the [federal enactment]. Merrill Lynch, Nevada, Fenner & Smith, Inc. v. Ware, 414 U.S. 117, 127, 38 L. Ed. 2d 348, 94 S. Ct. 383 (1973). **Federal regulations (28 CFR § 36.202 and 13 CFR § 112.6), have the same preemptive effect as federal statutes.** Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 73 L.Ed. 2d 664, 102 S. Ct. 3014, 3022 (1982).

12. THE UNIVERSITY OF WASHINGTON (UW MEDICINE), AND THE

EXHIBIT M

HARBORVIEW MEDICAL CENTER IS ENGAGED IN A 18 U.S.C. § 371 AND RCW 9A.28.040 CRIMINAL CONSPIRACY WITH THE STATE OF WASHINGTON TO COMMIT FALSE ADVERTISING IN DIRECT VIOLATION OF RCW 9.04.050; RCW 9.04.0*10*; 18 U.S.C. § 1341, AND 18 U.S.C. § 1343 FOR POSTING ON ITS WEBSITE, AND SENDING LETTERS VIA THE UNITED STATES POST OFFICE THAT COVID-19 VACCINATIONS ARE MANDATORY IN VIOLATION OF THE  IN DIRECT VIOLATION OF THE EMERGENCY USE AUTHORIZATION STATUTES  "21 U.S.C. § 360BBB–3 (E)(1)(A)(II)(III);   FDCA § 564(E)(1)(A)(II)(III), AND IN VIOLATION OF WASHINGTON INFORMED CONSENT STATUTES;  RCW 7.70.050; RCW 7.70.030; RCW 7.70.040; SECTION 564 OF THE FDCA,  AND W. PROSSER, LAW OF TORTS 165 (4TH ED. 1971), WHICH PROVIDE THAT ALL STRAINS OF THE COVID-19 VACCINATION IS 100% VOLUNTARY, AND THAT EVERYONE HAS THE RIGHT TO OPT OUT OF TAKING THE COVID-19 VACCINE.

The State of Washington and the University of Washington (UW Medicine), Harborview Medical Center are currently engaged in multiple counts of false advertising in violation of both State and Federal law as codified at RCW 9.04.050;  RCW 9.04.0*10*; 18 U.S.C. § 1341, and 18 U.S.C. § 1343, for posting on its website, and sending numerous letters out to its administrative agencies and departments via the United States Post Office that Covid-19 Vaccinations are allegedly Mandatory in direct violation of the Emergency Use Authorization statutes, "21 U.S.C. § 360bbb–3 (e)(1)(A)(ii)(III);  FDCA § 564(e)(1)(A)(ii)(III); Section 564 of the FDCA; and in violation of the Washington State Informed Consent Statutes,  RCW 7.70.050; RCW 7.70.030; RCW 7.70.040, and W. PROSSER, LAW OF TORTS 165 (4th ed. 1971), which provide that everyone has the right to opt out of taking the Covid-19 Vaccine which is 100% voluntary.

# EXHIBIT M

Please take ER 201 Mandatory Judicial Notice of RCW 9.04.050 False, misleading, deceptive advertising, which reads:

> **"RCW 9.04.050  False, misleading, deceptive advertising.**
> It shall be unlawful for any person to publish, disseminate or display, or cause directly or indirectly, to be published, disseminated or displayed in any manner or by any means, including solicitation or dissemination by mail, telephone, electronic communication, or door-to-door contacts, any false, deceptive or misleading advertising, with knowledge of the facts which render the advertising false, deceptive or misleading, for any business, trade or commercial purpose or for the purpose of inducing, or which is likely to induce, directly or indirectly, the public to purchase, consume, lease, dispose of, utilize or sell any property or service, or to enter into any obligation or transaction relating thereto: PROVIDED, That nothing in this section shall apply to any radio or television broadcasting station which broadcasts, or to any publisher, printer or distributor of any newspaper, magazine, billboard or other advertising medium who publishes, prints or distributes, such advertising in good faith without knowledge of its false, deceptive or misleading character." And;

Please take ER 201 Mandatory Judicial Notice of RCW 9.04.010 False advertising, which reads:

> **"RCW 9.04.010  False advertising.**
> Any person, firm, corporation or association who, with intent to sell or in any wise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation or association, directly or indirectly, to the public for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or an interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public in this state, in a newspaper or other publication, or in the form of a book, notice, hand-bill, poster, bill, circular, pamphlet, or letter, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading, shall be guilty of a misdemeanor: PROVIDED, That the provisions of this section shall not apply to any owner, publisher, agent, or employee of a newspaper for the publication of such advertisement published in good faith and without knowledge of the falsity thereof." And;

Please take ER 201 Mandatory Judicial Notice of 18 U.S.C. § 1038 - False information and hoaxes!

> **"U.S. Code Title 18 PART I CHAPTER 47 § 1038**
>
> **18 U.S. Code § 1038 - False information and hoaxes**
>
> **(a)Criminal Violation.—**
> **(1)In general**.—Whoever engages in any conduct with intent to convey false or misleading

Page 43 of  49

information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), or section 46502, the second sentence of section 46504, section 46505(b)(3) or (c), section 46506 if homicide or attempted homicide is involved, or section 60123(b) of title 49, shall—

(A) be fined under this title or imprisoned not more than 5 years, or both;

(B) if serious bodily injury results, be fined under this title or imprisoned not more than 20 years, or both; and

(C) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

(2) Armed forces.—Any person who makes a false statement, with intent to convey false or misleading information, about the death, injury, capture, or disappearance of a member of the Armed Forces of the United States during a war or armed conflict in which the United States is engaged—

(A) shall be fined under this title, imprisoned not more than 5 years, or both;

(B) if serious bodily injury results, shall be fined under this title, imprisoned not more than 20 years, or both; and

(C) if death results, shall be fined under this title, imprisoned for any number of years or for life, or both.

(b) Civil Action.—

Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), or section 46502, the second sentence of section 46504, section 46505 (b)(3) or (c), section 46506 if homicide or attempted homicide is involved, or section 60123(b) of title 49 is liable in a civil action to any party incurring expenses incident to any emergency or investigative response to that conduct, for those expenses.

(c) Reimbursement.—

(1) In general.—

The court, in imposing a sentence on a defendant who has been convicted of an offense under subsection (a), shall order the defendant to reimburse any state or local government, or private not-for-profit organization that provides fire or rescue service incurring expenses incident to any emergency or investigative response to that conduct, for those expenses.

(2) Liability.—

A person ordered to make reimbursement under this subsection shall be jointly and severally liable for such expenses with each other person, if any, who is ordered to make reimbursement under this subsection for the same expenses.

(3) Civil judgment.—

An order of reimbursement under this subsection shall, for the purposes of enforcement, be treated as a civil judgment.

(d) Activities of Law Enforcement.—

This section does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or political subdivision of a State, or of an intelligence agency of the United States." And;

Please take ER 201 Mandatory Judicial Notice of 18 U.S.C. § 1341 - Frauds and swindles

which reads:

EXHIBIT M

"U.S. Code Title 18 PART I CHAPTER 63 § 1341

**18 U.S. Code § 1341 - Frauds and swindles**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." And;

Please take ER 201 Mandatory Judicial Notice of 18 U.S.C. $\S$ 1343 - Fraud by wire, radio,

or television, which reads:

"U.S. Code Title 18 PART I CHAPTER 63 § 1343

**18 U.S. Code § 1343 - Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." And;

It is undisputed pursuant to CR 8 (d), that I have valid legal grounds to file a Criminal

Complaint pursuant to Rule 3 of the Federal Rules of Criminal Procedure against the University of

Washington (UW Medicine), Harborview Medical Center, and the State of Washington for violating

RCW 9.04.0*50* False, misleading, deceptive advertising; RCW 9.04.0*10* False advertising; 18

Page 45 of 49

EXHIBIT M

U.S.C. § 1038 - False information and hoaxes;  18 U.S.C. § 1341 - Frauds and swindles; and 18 U.S.C. § 1343 - Fraud by wire, radio, or television, for terminating my employment for no valid legal reason.

13.     THE DOCTRINE OF QUALIFIED IMMUNITY OPERATES TO PROTECT ALL THOSE EXCEPT THOSE WHO KNOWINGLY VIOLATE THE STATUTES AND THE CONSTITUTION AND SAUCIER v. KATZ, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001);  HARLOW v. FITZGERALD, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); AND PARRAT v. TAYLOR, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Indeed, it is a touchstone of qualified immunity doctrine that "a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  To successfully establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must prove the following two elements: (1) the defendant was acting under the color of state law, and (2) the offending conduct deprived the plaintiff of rights secured by federal law. Parrat v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).  In order to assert a violation of a "clearly established" right and defeat a qualified immunity defense," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The doctrine protects all but the plainly incompetent or those who knowingly violate the law." Id.  To that end, we ask two questions to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional

Page 46 of  49

# EXHIBIT M

right has been violated, and (2) whether that right was clearly established. Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), The courts are free to address these questions in any sequence. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 821, 172 L.2d 565 (2009). An individual who has been wrongfully arrested or seized under the color of law can make a § 1983 claim based on the Fourth Amendment. Brooks v. Rothe, 577 F.3d 701, 706 (6th Cir.2009). Because the law is clearly established that, absent probable cause to believe that an offense has been committed, officers may not arrest an individual. Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir. 1999).

**Conclusion and Relief Requested:**

I respectfully request and demand that the University of Washington (UW Medicine), and/or the Harborview Medical Center hire me back to my former position as "Lead Sonographer" working the same shift four 10 hour shifts 6:30-5:00 pm Monday, Tuesday, Thursday, and Friday that I was working prior to being unlawfully terminated with no valid legal reason, and based upon "fraud" in that there is no RCW _____, statutory authority in State Law, and because there is no ____ U.S.C. _____, statutory authority in Federal Law that I, or anyone is required to be vaccinated with the Covid-19 Vaccine, and because this company is clearly committing "fraud" by falsely stating in writing that your company could no longer "accommodate" me, without ever establishing or providing even a scintilla of evidence that I ever needed to be "accommodated" in the first place. I am not sick with the Covid-19 Virus, therefore I do not need to wear a mask or be vaccinated, Matthew 9:12; Mark 2:7, and Luke 5:31. I am not displaying any symptoms of being infected with the Covid-19 Virus, I am not required to submit to a warrantless search or PCR Test or any other test to test for the Covid-19 Virus, furthermore, your company does not even any reasonable

Page 47 of 49

suspicion or any probable cause to even apply for a search warrant or request that any court issue a court order requiring me to submit to any PCR Test or warrantless search. I object to your law firm Stoel Rives, misquoting cases out of context stating that an employer can overcome a religious exemption "if" you have "proof" or "evidence" that my mere unmasked presence poses any kind of danger, threat or imminent danger to any other co-worker or any other person. If this case ends up going to court, I would request the court issue CR 11 Sanctions against Stoel Rives for misquoting all the cases it used against me in it's fraudulent letter dated January 31, 2022. The facts are that your company has committed fraud by illegally firing me for no valid legal reason, and with no evidence to support it's position in this regard.

Therefore, based upon all of the above, I respectfully request and demand that I be given back pay for all the time that I missed, that I be given all pay raises and bonuses that were scheduled to be given, that all regular (PERS) Public Employees Retirement System Plan 2 contributions are to be paid up to date by the University of Washington, that all sick pay be reinstated with all sick hours that accrued if I was not unlawfully terminated, that your company reinstate all 180 plus hours of vacation time on the books without having to buy it back, that you reinstate all parking privileges in the Viewpark Parking Garage, that you reinstate all pre-approved vacations, and add all vacations that I would have put in for if I was not wrongfully terminated, that you reinstate my life insurance policy that I had for my husband as if I was never unlawfully terminated without any valid legal reason, and finally I request, and demand that you pay me $500,000.00 for emotional and psychological damages, based upon the fact that I was wrongfully terminated for refusing to be vaccinated.

Note: a Separate list of everything I demand along with being reinstated is attached to the

Page 48 of  49

EXHIBIT M

back of this document, and is adopted by reference as though fully stated herein pursuant to CR 10(c).

This notice is also to inform you that "forced vaccinations and/or forced masking" violates my Constitutional Rights under both Constitutions, State and Federal, the laws of the State, the laws of the United States, and the 1964 Civil Rights Act, which are enforceable via Title 42, Section 1983. See also 18 U.S.C. § 241 and 18 U.S.C. § 242.

*Melissa White*

Melissa White

Dated this __30th__ day of March, A.D. 2021

**Prepared by:**

Luis Ewing, Federal Lawyer/Tribal Lawyer/Of Counsel/Paralegal

Telephone: 1 - (360) 335-1322

Cellular: 1 - (253) 226-3741

Email: <rcwcodebuster@gmail.com>