1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16

MELISSA WHITE,

                    Plaintiff(s),

        v.

UNIVERSITY OF WASHINGTON et al,

                    Defendant(s).

CASE NO. 2:22-cv-01798-TL

ORDER

17
18
19
20
21

        This is an employment discrimination case brought by Plaintiff Melissa White against her former employer, the University of Washington (the "University"), and related entities and individuals. This matter comes before the Court on various motions filed by the Parties. *See* Dkt. Nos. 42, 44, 52. Having reviewed the relevant record, the Court rules on the pending motions as follows and LIFTS the stay in this case.

22
23
24

# I.   BACKGROUND

## A.   Plaintiff's Allegations

Plaintiff alleges that she was formerly employed by the University at the Harborview Medical Center starting in December 2001 and throughout the COVID-19 pandemic. Dkt. No. 1-2 at 6 (complaint). Plaintiff alleges that, in August 2021, the University imposed a new "license/medical document" requirement on employees to ensure their continued employment. *Id.* at 9. Plaintiff applied for a religious exemption from the requirement, which was denied. *Id.* at 10. Plaintiff then applied for a Family and Medical Leave Act ("FMLA") leave and was denied because her employment had been terminated on October 18, 2021. *Id.* at 13. Plaintiff primarily challenges Defendants for their denial of her religious exemption and the subsequent termination of her employment. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983 and 1985 for violations of her constitutional rights, common law conspiracy, breach of contract, violation of RCW 9A.80.010 (official misconduct), and negligent infliction of emotional stress. *Id*. at 24–52. Plaintiff represents that she received a notice of right to sue from the Equal Employment Opportunity Commission on September 9, 2022. *Id.* at 20.

## B.   Defendants' Response to the Complaint

Plaintiff brought suit in King County Superior Court, and Defendants removed this case to this Court on December 19, 2022. Dkt. No. 1. Defendants also filed an answer, asserting the following affirmative defenses, in full:

(1)   "Plaintiff has failed to state . . . a claim, in whole or in part, upon which relief may be granted."

(2)   "Plaintiff's damages, if any, were caused by Plaintiff's own acts or omission and/or by the acts or omissions of third parties."

(3)   "The Complaint fails, in whole or in part, because some or all of the relief sought may be barred by Plaintiff's failure to mitigate damages."

(4)     "Defendant has not yet had a full opportunity to conduct discovery and, accordingly, reserves the right to assert additional affirmative defenses that may be disclosed in the course of discovery."

Dkt. No. 19 at 24.

## C.     The Parties' Motions Practice & Subsequent Stay

In the three months following removal, the Parties—mostly Plaintiff—filed a flurry of motions, as summarized below:

- Plaintiff's motion to remand the case to state court. Dkt. No. 11. The Court denied the motion. Dkt. No. 65.

- Plaintiff's motions for the entry of default against Defendants UW Medicine Choice Care LLC and Timothy Dellit. Dkt. Nos. 12, 13. Plaintiff withdrew the motions two days later. Dkt. No. 17.

- Plaintiff's motion to "consider state Superior Court pending motions," asking the Court to adopt and consider Plaintiff's motions in the King County Superior Court proceedings for the entry of default against UW Medicine Choice Care LLC and Timothy Dellit. Dkt. No. 18. Defendants opposed. Dkt. No. 27. Plaintiff withdrew the motion. Dkt. Nos. 29, 31.

- Plaintiff's motion for a more definite statement. Dkt. No. 34. Defendants opposed. Dkt. No. 38. Plaintiff withdrew the motion later that day. Dkt. No. 40.

- Plaintiff's motion to strike Defendants' affirmative defenses (the "Motion to Strike"). Dkt. No. 42 (motion); Dkt. No. 47 (reply); *see also* Dkt. No. 41 (Plaintiff's "reply to affirmative defenses"). Defendants oppose. Dkt. No. 46.

- Defendants' motion for sanctions against Plaintiff (the "Motion for Sanctions"). Dkt. No. 44. Plaintiff opposes. Dkt. No. 48.

- Plaintiff's motion seeking acknowledgment that Defendant Lisa Brandenburg has been served or, in the alternative, for alternative service on Ms. Brandenburg by publication (the "Motion for Service"). Dkt. No. 52. Defendants oppose as to the first part but neither join nor oppose in Plaintiff's alternative request. Dkt. No. 58.

Plaintiff also filed two declarations, each titled "Ethical Conduct Complaint," against Defendants' counsel Jacqueline Middleton and Timothy O'Connell. Dkt. Nos. 21, 22. These appear to be copies of ethics complaints filed with the Washington State Bar Association.

Parties filed a joint status report on February 24, 2023, in which Plaintiff appears to concede that Defendant Laura Barry has not been served with process in a timely manner and may be dismissed from the action. *See* Dkt. No. 57 at 11. Other details regarding Plaintiff's service attempts are summarized *infra*, Section III.B.

On March 1, the Court instituted a stay in the action pending the resolution of the various motions. Dkt. No. 59. The Court directed that no new motions were to be filed, absent urgent or extenuating circumstances, and that Defendants' motion to dismiss the Complaint would be due 45 days after the Court's resolution of the pending motions. *Id.* at 4. Plaintiff subsequently filed a "request for clarification," objecting to the Court's reliance on the Complaint's exhibits in describing Plaintiff's allegations. Dkt. No. 61 at 1.

## II.  LEGAL STANDARD

### A.  Motion to Strike

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In deciding a Rule 12(f) motion to strike, a court should not resolve disputed and substantial factual or legal issues. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–75 (9th Cir. 2010) ("We . . . hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Id.* at 973 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Rule 12(f) motions to strike are generally disfavored because the motions may be used as delay tactics and because of the strong policy favoring resolution on the merits. *E.g.*, *Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018) (citations and internal quotation marks omitted).

**B.      Service of Process**

Under Federal Rule of Civil Procedure ("FRCP") 4(e), an individual may be served with process within a judicial district of the United States by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). Alternatively, service may be made by following Washington law. *See id.* 4(e)(1). Washington law permits service by personal delivery or "by leaving a copy of the summons at the house of [the defendant's] usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(16).

A complainant has 90 days after the complaint is filed to serve each defendant with process. Fed. R. Civ. P. 4(m). If service is not completed within the 90 days, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

**C.      Sanctions**

A court may impose sanctions on a party or its counsel by three primary means: (1) FRCP 11, which applies to signed, written filings; (2) 28 U.S.C. § 1927, which penalizes unreasonable and vexatious multiplicity of proceedings; and (3) the inherent power of the court. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).[1]

---

[1] Because Defendants do not seek sanctions under FRCP 11, the Court does not set out the standard for sanctions under that basis here.

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The imposition of sanctions under § 1927 requires a finding of recklessness or bad faith. *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001). A reckless but nonfrivolous filing may not be sanctioned unless it was intended to harass. *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996); *see also Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 442 (9th Cir. 2017) ("Without more, reckless, but nonfrivolous, filings may not be sanctioned."), *abrogated on other grounds by Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).

A court may also impose sanctions, including attorney fees, under its inherent authority for "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *Fink*, 239 F.3d at 991 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980)); *see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 436 (holding that a finding of bad faith is required to impose sanctions under a court's inherent powers).

## III.   DISCUSSION

There are three pending motions before this Court. These motions, as well as other issues previously raised to this Court, are each addressed below.

### A.   Motion to Strike Affirmative Defenses

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c)(1) (listing examples of affirmative defenses). Defendants assert four affirmative defenses in their Answer to the Complaint. Dkt. No. 19 at 24. Plaintiff moves to strike all four affirmative defenses because they "have no possible relation or

logical connection to the subject matter of the controversy." Dkt. No. 42 at 3. Plaintiff also argues that each defense does not meet the proper pleading standard, lacks sufficient details to give Plaintiff fair notice of the defense, or is otherwise insufficient. *Id.* at 3–4; Dkt. No. 47 (reply). Defendants oppose. Dkt. No. 46.

As an initial matter, the Court rejects Plaintiff's argument that Defendants' affirmative defenses are immaterial and unrelated to the allegations of this case. Defendants' defenses, though not particularly specific, are directly responsive and relevant to Plaintiff's claims. Nor does Plaintiff show that any of the affirmative defenses constitute redundant, impertinent, or scandalous matters. *See* Fed. R. Civ. P. 12(f).

A court may also strike an insufficient defense from a pleading. *Id.* "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff *fair notice* of the defense." *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019) (emphasis added) (quoting *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1023 (9th Cir. 2010), *abrogated on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)). The Parties dispute the pleading standard governing what constitutes "fair notice."[2]

"A pleading that states a claim for relief," such as a complaint, "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," while a responsive pleading must "state in short and plain terms its defenses to each claim asserted against it." *Compare* Fed. R. Civ. P. 8(a)(2), *with id.* 8(b)(1)(A). In *Twombly* and *Iqbal*, the Supreme Court of the United States held that FRCP 8(a)'s requirement for a "short and plain statement of the

---

[2] One might instead conceive the issue as one of alternatives: a higher *Twombly/Iqbal* pleading standard versus a lower "fair notice" standard. *But see Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 801 (C.D. Cal. 2016) (disputing the notion that "fair notice" has been replaced by the *Twombly/Iqbal* standard and noting "*Twombly* and *Iqbal* can be seen as laying out a 'fair notice' standard" themselves). In any case, the question is simply what pleading standard governs an affirmative defense.

claim" requires a complaint to "plausibly" state a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007) (setting forth the standard); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–83 (2009) (applying the *Twombly* standard to find plaintiff's allegations did not plausibly state a claim for relief). The Ninth Circuit has yet to examine whether this plausibility standard also governs affirmative defenses.

As Plaintiff points out, some courts—including some in this Circuit—have adopted the plausibility standard for affirmative defenses. *See, e.g.*, *Barnes v. AT&T Pension Benefit Plan– Nonbargained Program*, 718 F. Supp. 2d 1167, 1171–72 (N.D. Cal. 2010) (adopting *Twombly* and *Iqbal* standard to defenses in an answer); *Bradshaw v. Hilco Receivables, LLC*, 725 F. Supp. 2d 532, 536–37 (D. Md. 2011) (striking affirmative defenses as conclusory and for failure to provide fair notice under the *Twombly*/*Iqbal* standard); *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 691–92 (N.D. Ohio 2010) (striking affirmative defense as a "bare-bone conclusion that makes no sense" in light of facts of the case).[3] On the other hand, as Defendants note, the Ninth Circuit has implied that "fair notice" of an affirmative defense remains a lower pleading standard that "only requires describing the defense in general terms." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (internal quotation marks omitted) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1274 (3d ed. 1998)) (holding defendant provided fair notice of affirmative defense). Other courts of this Circuit have also held that the *Twombly* and *Iqbal* pleading standard does not govern affirmative defenses. *See, e.g.*, *Rosen v. Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 802 (C.D. Cal. 2016); *McElmurry v. Ingebritson*, No. C16-419, 2017 WL 9486190, at *2 (E.D. Wash. Aug. 14, 2017) (quoting *Kohler*, 779 F.3d at 1019); *In re Wash. Mut., Inc. Secs. Derivative & ERISA Litig.*, No. C08-

---

[3] Plaintiff also relies on a Seventh Circuit case that was decided before *Twombly* and *Iqbal* and is therefore of limited value to the analysis at hand. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989).

1756, 2011 WL 1158387, at *1 (W.D. Wash. Mar. 25, 2011) ("Detailed pleading is not necessary to give fair notice to the [p]laintiff under Rule 8(c) of the affirmative defense, given that the core factual circumstances are already well known to the parties.").

Absent clearer guidance from the Supreme Court or the Ninth Circuit, the Court declines to adopt the heightened plausibility pleading standard for asserting an affirmative defense. The language of the Federal Rules of Civil Procedure supports treating affirmative defenses differently from a complaint: (1) a party asserting a claim—and therefore bearing the ultimate burden of showing its entitlement to relief—must plead "a short and plain statement of the claim *showing* that the pleader is *entitled* to relief," while (2) a defending party must simply "*state* in short and plain terms its defenses to each claim asserted against it" and "affirmatively *state* any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(a), 8(b), 8(c)(1) (emphases added); *see Bushbeck v. Chi. Title Ins. Co.*, No. C08-755, 2010 WL 11442904, at *2 (W.D. Wash. Aug. 26, 2010) (declining to adopt *Twombly/Iqbal* standard to affirmative defenses "in light of the differences in language between Rule 8(a)(2) and Rule 8(c)(1)"). Put simply, the burden of showing an entitlement is heavier than that of stating something, even if both must be pleaded in "short and plain" terms. This is because a claim for relief must show that the action is worth pursuing, including the expenses of discovery and trial, while a defense establishes expectations for discovery and the remainder of the litigation. *See, e.g.*, *Rosen*, 222 F. Supp. 3d at 802 (noting affirmative defense in part assists the court in limiting discovery).

*Twombly* itself supports this distinction, as it explains that the plausibility standard "reflects the threshold requirement . . . that the 'plain statement' possess enough heft to 'sho[w] that the pleader is *entitled* to relief.'" 550 U.S. at 556 (emphasis added) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). The Supreme Court emphasized that, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency

should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks omitted) (quoting 5 Wright & Miller § 1216)); *see also id.* at 559 (noting need for greater judicial supervision in avoiding unnecessary discovery). On the other hand, affirmative defenses are aimed at providing notice, not entitlement. *See Kohler*, 779 F.3d at 1019; *see also Rosen*, 222 F. Supp. 3d at 802 ("[A]ffirmative defenses must be supported by at least some facts indicating the grounds on which the defense is based, but need not include facts sufficient to demonstrate plausible entitlement to relief.").

This conclusion is further bolstered by the procedural mechanisms by which a claim for relief and an affirmative defense are challenged. The sufficiency of a claim for relief is ordinarily challenged by a Rule 12(b)(6) motion to dismiss, but an affirmative defense has no comparable means of challenging its legal sufficiency early in the case; in contrast, a Rule 12(f) motion to strike is disfavored, does not resolve the legal or factual questions of the defense, and is reviewed for abuse of discretion. *See Whittlestone Inc.*, 618 F.3d at 974 (noting the difference in reviewing a Rule 12(f) decision and a Rule 12(b)(6) decision); *see also Manning v. Swedish Med. Ctr.*, No. C15-949, 2015 WL 12696168, at *1 (W.D. Wash. Sept. 23, 2015) ("Courts generally decline to strike affirmative defenses unless the moving party shows 'there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" (quoting *Kerzman v. NCH Corp.*, No. C05-1820, 2007 WL 765202, at *7 (W.D. Wash. Mar. 9, 2007))). Simply put, the Federal Rules of Civil Procedure do not contemplate that the pleadings of a complaint be treated the same as an affirmative defense.[4]

---

[4] To clarify, an affirmative defense is distinguishable from a counterclaim or cross-claim, which would presumably assert its own claim for relief.

### 1.      First Affirmative Defense

Defendants' first affirmative defense is that Plaintiff has failed to state a claim for relief. Dkt. No. 19 at 24. Plaintiff contends that the defense is "boilerplate" and that in any case the Complaint states claims for relief. Dkt. No. 42 at 3. Defendants assert they are merely "reserv[ing] Defendants' right to seek a Rule 12(b)(6) motion." Dkt. No. 46 at 8. FRCP 12(b)(6) permits a party to assert a defense of failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

As an initial matter, Plaintiff's argument that her Complaint states claims for relief is an argument on the merits that is improper at this stage. *See Whittlestone, Inc.,* 618 F.3d at 973–75.

Failure to state a claim for relief is not an affirmative defense. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *Fish, LLC v. Harbor Marine Maint. & Supply, Inc.*, No. C17-0245, 2018 WL 1792186, at *3 (W.D. Wash. Apr. 16, 2018) (dismissing the defense because "failure to state a claim is not a proper affirmative defense [and instead] should be brought by motion"). Defendants' argument that an affirmative defense is generally deemed waived if not asserted in an answer misses this point. *See* Dkt. No. 46 at 8 (citing *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 714 (9th Cir. 2020)).[5] On the other hand, FRCP 12(h)(2) explicitly permits this argument to be raised "in any pleading allowed or ordered under Rule 7(a)," which includes an answer to a complaint. *See* Fed. R. Civ. P. 7(a), 12(h)(2); *see also Valley Cmty. Bank v. Progressive Cas. Ins. Co.*, No. C11-574, 2011 WL 1833116, at *3 (N.D. Cal. May 13, 2011) (noting this point).

---

[5] Defendants also cite to *Hochberg v. Lincare, Inc.*, which contain no analysis of why the court did not strike a "failure to state a claim" defense except to note that whether a complaint fails to state a claim is better addressed on a dispositive motion—which this Court does not dispute. No. C07-31, 2008 WL 11342786, at *2 (E.D. Wash. Mar. 12, 2008).

Whether Defendants may assert this defense in their Answer is moot, however, because Defendants failed to actually assert the defense in any case. They provide no supporting arguments or allegations in support of their defense. *See Garcia*, 918 F.3d at 1008 ("[S]imply stating that the plaintiff failed to state a claim is insufficient to provide notice of a specific affirmative defense."). As Defendants themselves acknowledge, they do not assert the defense so much as merely reserve the right to do so at a later stage.

Accordingly, the Court GRANTS the Motion to Strike as to the first affirmative defense. However, Defendants may challenge the legal sufficiency of Plaintiff's claims by a motion for judgment on the pleadings under FRCP 12(c) or other dispositive motion during litigation, if appropriate.[6]

### 2.      Second & Third Affirmative Defenses

Defendants' second and third affirmative defenses essentially assert barebone defenses of comparative or contributory fault (on the part of Plaintiff or unidentified third parties) and failure to mitigate damages, respectively. Dkt. No. 19 at 24. Plaintiff asks the Court to strike both defenses as "vague and insufficient." Dkt. No. 42 at 3–4. Defendants oppose and argue that plausible facts in the Complaint exist to support these defenses. Dkt. No. 46 at 9.

Having previously held that the higher pleading standard under *Twombly/Iqbal* does not control affirmative defenses, the Court finds that Defendants' second and third affirmative defenses do provide Plaintiff with "fair notice" of the defenses, though just barely. *See Garcia*,

---

[6] At Defendants' request in the Joint Status Report (Dkt. No. 57 at 5), the Court set a deadline of 45 days after the resolution of the pending motions for Defendants to file a Rule 12(b)(6) motion to dismiss. Dkt. No. 59 at 4. However, the Court now notes that Defendants already filed an Answer. Dkt. No. 19. FRCP 12(b)(6) provides that a motion asserting the defense "must be made before pleading if a responsive pleading is allowed." An answer is a responsive pleading, and Defendants are therefore no longer permitted to bring a Rule 12(b)(6) motion. *See, e.g.*, *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (clarifying a motion to dismiss filed after the answer is a motion for judgment on the pleadings). This Order SUPERSEDES and AMENDS the order at Dkt. No. 59 with regard to any motion to dismiss.

918 F.3d at 1008 (stating the "fair notice" standard). Defendants belatedly attempt to augment their affirmative defenses by explaining in their opposition to the Motion to Strike why the alleged facts might support the defenses, but this is absent in the actual pleading. Nonetheless, the Court finds that the basic facts of the case are clear enough that the second and third affirmative defenses give fair notice of how Plaintiff *might* have arguably contributed to her own asserted damages, by either causing them or failing to mitigate them, or how a third party may also have contributed to Plaintiff's damages. Detailed factual allegation are not required—simply "[p]leading enough factual content to identify the factual grounds on which an affirmative defense rests is adequate to provide fair notice" of the affirmative defenses to Plaintiff and the Court. *See Rosen*, 222 F. Supp. 3d at 802. It may be that Defendants will ultimately struggle to prevail on these defenses,[7] but that issue is best resolved through discovery, dispositive motions, or trial rather than a Rule 12(f) motion to strike. *See Whittlestone, Inc.,* 618 F.3d at 973–75 (noting that Rule 12(f) should not be used to resolve substantial factual or legal issues).

Accordingly, the Court DENIES Plaintiff's motion to strike Defendants' second and third affirmative defenses. For the avoidance of doubt, the Court is simply allowing Plaintiff to assert her claims and Defendants to assert their defenses and does not rule on whether the Parties' claims or defenses are justified under the law and facts of this case.

### 3.   Fourth Affirmative Defense

Defendants' fourth affirmative defense is a reservation of "the right to assert additional affirmative defenses that may be disclosed in the course of discovery." Dkt. No. 19 at 24. A reservation of a right is not an affirmative defense. *See, e.g.*, *Howarth v. Patterson*, No. C19-726,

---

[7] It may also be that Defendants may not rely on facts outside of the Complaint and Answer—particularly if such facts are only in possession of Defendants and unknown to Plaintiff—to support their affirmative defenses during this litigation, having failed to give fair notice of their defenses if so. This does not seem to be at issue here, where Defendants primarily use the allegations already in the record to support their affirmative defenses.

2019 WL 1901268, at *2 (D. Ariz. Apr. 29, 2019) (striking similar reservation of rights as "not a valid affirmative defense"); *Jones v. City of Portland*, No. C18-1485, 2018 WL 7078670, at *3 (D. Or. Dec. 21, 2018) ("[A] 'reservation of rights' is not a proper affirmative defense."), *report and recommendation adopted*, 2019 WL 267716 (D. Or. Jan. 17, 2019). In any case, "[a]lthough Rule 8 requires affirmative defenses to be included in responsive pleadings, absent prejudice to the plaintiff, the district court has discretion to allow a defendant to plead an affirmative defense in a subsequent motion." *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1023 (9th Cir. 2010), *abrogated on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

Accordingly, the Court GRANTS the Motion to Strike as to Defendants' fourth affirmative defense.

**B.     Service of Process**

Plaintiff asks that the Court rule that service of process has been completed on Ms. Brandenburg or, in the alternative, authorize service of process on Ms. Brandenburg through publication in accordance with RCW 4.28.100(2) and 4.28.110. Dkt. No. 52 at 4; Dkt. No. 60 (reply). Defendants oppose and point to their prior explanation of why Plaintiff's attempted service on Ms. Brandenburg was not sufficient. Dkt. No. 58 at 1–2. Defendants do not oppose Plaintiff's alternative request for service by publication. *Id.*

Separately, Plaintiff appears to concede that Ms. Barry has not been served with process and that this may result in the dismissal of Ms. Barry from the case. Dkt. No. 57 at 11 ("Plaintiff is . . . contemplating a possible strike or removal of Laura Barry from . . . this case, however, the Plaintiff believes the 90 day rule is up, in consequence such contemplation may be moot.").

1        1.      **Lisa Brandenburg**

2        Plaintiff has made significant efforts to serve process on Ms. Brandenburg. Plaintiff,

3   through a process server, attempted service on Ms. Brandenburg numerous times in November

4   and December of 2022 at a Seattle address formerly listed as her voter registration address. *See*

5   Dkt. No. 52-1 at 4–5. The process server observed mail addressed to Ms. Brandenburg in the

6   mailbox for that address and that the mail appeared to have been emptied. *Id.* at 5. On December

7   17, 2022, the process server delivered the relevant documents to an unidentified man who

8   claimed to not know Ms. Brandenburg. *Id.* at 3. Plaintiff conducted diligent research to find

9   Ms. Brandenburg's residence and has located at least two other Washington addresses associated

10  with Ms. Brandenburg. *See* Dkt. No. 53 at 2. Counsel for Defendants have represented that

11  Ms. Brandenburg resides out of state.[8]

12       First, Plaintiff has failed to properly serve Ms. Brandenburg with process. Plaintiff's

13  process server did not serve Ms. Brandenburg personally, and Ms. Brandenburg does not live at

14  the address served, meaning service was inadequate under the Federal Rules of Civil Procedure

15  and the comparable Washington requirements for personal service. *See* Fed. R. Civ. P. 4(e);

16  RCW 4.28.080(16). Plaintiff does not appear to dispute this.

17       Second, the Court "must extend the time for service" if the plaintiff shows good cause for

18  her failure to timely serve a defendant. *See* Fed. R. Civ. P. 4(m). Plaintiff has made good faith,

19

20

21

---

[8] Plaintiff represents that the following exchange occurred: defense counsel told her Ms. Brandenburg now lives out
22  of state; Plaintiff informed defense counsel that Ms. Brandenburg remains registered as a voter in Washington and
    accused Ms. Brandenburg of committing voter fraud or actually residing in Washington; defense counsel grew "upset."
23  Dkt. No. 53. Defendants "object[] to" Plaintiff's characterizations but do not provide their own explanation. Dkt. No.
    58. For the purposes of this Order, the Court accepts defense counsel's representation that Ms. Brandenburg lives
    out of state. This does not prejudice Plaintiff, as this permits the Court to make use of the local rules permitting
24  service of process by the means prescribed by this Court.

1  diligent attempts at locating and serving Ms. Brandenburg. Therefore, the Court extends

2  Plaintiff's time to serve Ms. Brandenburg.

3  Finally, the Court finds that service of process by alternative means is appropriate. The

4  Superior Court Civil Rules of the Washington State Court Rules ("CR") permit service of a

5  summons on a party not an inhabitant of or not found in the state by means prescribed by court

6  order. *See* CR 4(e)(1). Service must also provide "notice reasonably calculated, under all the

7  circumstances, to apprise interested parties of the pendency of the action and afford them an

8  opportunity to present their objections." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S.

9  694, 705 (1988) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

10  Ms. Brandenburg has proven to be difficult to locate and serve, despite Plaintiff's diligent

11  attempts. Ms. Brandenburg, through her counsel, has also already appeared in this action and has

12  participated throughout the litigation with the other Defendants; accordingly, she presumably has

13  ample notice of this action. *See, e.g.*, Dkt. No. 7 at 1, 3 (consenting to removal but reserving

14  inadequate service defense); Dkt. No. 44 at 2 & n.1 (making representations on behalf of all

15  Defendants, including Ms. Brandenburg); *see also SEC v. Richman*, C21-1911, 2021 WL

16  9816612, at *3–4 (N.D. Cal. July 19, 2021) (granting alternative service on defendant's counsel

17  in part because of the counsel's "active and ongoing representation of Defendants"). Defendants

18  also do not oppose Plaintiff's request for alternative service.

19  Accordingly, the Court Denies the Motion for Service in part and quashes Plaintiff's

20  attempted service on Ms. Brandenburg. The Court Grants the Motion for Service in part to

21  permit Plaintiff to serve by alternative means. Service on Ms. Brandenburg's counsel appears

22  more likely than service by publication to give notice of this action to Ms. Brandenburg. Plaintiff

23  is therefore Directed to serve Ms. Brandenburg by emailing a copy of the summons and

24  complaint to defense counsel **within seven (7) days** of this Order.

### 2. Laura Barry

Plaintiff concedes that Ms. Barry has not been served with process, that the time to serve Ms. Barry has expired, and that Ms. Barry may be dismissed from this action as a result. Dkt. No. 57 at 11. Plaintiff does not show good cause for her failure to serve Ms. Barry.

Accordingly, Ms. Barry is DISMISSED without prejudice. *See* Fed. R. Civ. P. 4(m).

## C. Motion for Sanctions

Defendants move for sanctions against Plaintiff due to "persistent filings that are without legal basis, are against the Court's rules and Standing Order, and seemly have been made for no purpose other than to drive up the cost of defense for Defendants and/or to harass Defendants and their counsel." Dkt. No. 44 at 2. Defendants request that the Court sanction Plaintiff in the amount of $2,500.00, under 28 U.S.C. § 1927 and the inherent powers of this Court. *Id.* Defendants additionally request that the Court admonish Plaintiff for her alleged failure to comply with the Court's rules and to warn Plaintiff that further misconduct will result in sanctions. *Id.* at 3. Plaintiff opposes and "move[s] this court to admonish the opposing counsel" for allegedly misrepresenting the Parties' interactions during this litigation and for allegedly retaliating against her for filing ethics complaints against defense counsel. *See* Dkt. No. 48 at 6; *see also* Dkt. No. 49 (Plaintiff's affidavit).

As the Ninth Circuit has explicitly recognized, § 1927 sanctions for unreasonable multiplication of proceedings may be imposed on a *pro se* plaintiff. *Wages v. Internal Revenue Serv.*, 915 F.2d 1230, 1235–36 (9th Cir. 1990) (affirming § 1927 sanctions on *pro se* plaintiff for continuous bad faith filings); *see also Barton v. Leadpoint, Inc.*, No. C21-5372, 2022 WL 1746664, at *2–3 (W.D. Wash. May 31, 2022) (awarding fees as sanctions under § 1927 against *pro se* plaintiff), *reconsideration denied*, 2022 WL 19731511 (July 29, 2022), *appeal docketed*.

Although Plaintiff points to contrary case law outside this Circuit (*see* Dkt. No. 48 at 6–8), this Court must follow Ninth Circuit law.

Plaintiff also relies on *Chambers v. NASCO, Inc.*, a decision of the Supreme Court of the United States. In that case, the *trial* court believed § 1927 only applied to attorneys and not the parties themselves, but the Supreme Court did not rely on, affirm, or even discuss that portion of the trial court's decision except to note it in passing. *See* 501 U.S. 32, 41–43 (1991) (affirming imposition of sanctions under court's inherent powers, which were not displaced by § 1927 or FRCP 11 sanctions). Therefore, *Chambers* does not support Plaintiff's position.

The Ninth Circuit's conclusion is consistent with the well-established principle that "pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022). The Court's Standing Order for All Civil Cases also instructs that *pro se* litigants "should be aware that the Court holds them to the same standards of conduct to which it holds attorneys." Judge Tana Lin, Standing Order for All Civil Cases, Section IX (last updated Apr. 26, 2022).

In any case, there are other bases upon which the Court may impose sanctions. The local rules of this District authorize an award of attorney's fees and costs if "an attorney *or party*" presents unnecessary motions or acts in other objectionable ways. *See* LCR 11(c) (emphasis added). Plaintiff also does not dispute that sanctions may be imposed on her through the Court's inherent authority.

In reviewing the record, the Court is troubled by the frequency of Plaintiff's filings (many of which are not meritorious and do not substantively advance the litigation), her apparent failures to give fair and timely notice of her upcoming motions, and other signs that Plaintiff may be engaging in conduct intended to harass Defendants. On the other hand, Defendants' accusations against Plaintiff are somewhat speculative as to her intentions and sometimes

understate the merits of Plaintiff's motions. The Court is therefore willing to provide Plaintiff

with the benefit of doubt and finds that sanctions are not appropriate at this time.

### 1.     Plaintiff's Motions

Plaintiff has engaged in an unusually and alarmingly high volume of filings before this

Court. She has filed at least seven motions before this Court in the span of three months, in

addition to ethics complaints against defense counsel (Dkt. Nos. 21, 22), motions contained

within briefing (*see, e.g.*, Dkt. No. 48 at 6), and a "request" to the Court (Dkt. No. 61, addressed

*infra*, Section III.D.1).

Of the seven procedurally proper motions, three were noted for the Court's consideration

and not voluntarily withdrawn: Plaintiff's motion to remand (Dkt. No. 11), which was denied in

full (Dkt. No. 65), and the Motion to Strike and the Motion for Service (Dkt. Nos. 42, 52), which

are granted in part and denied in part as spelled out in this Order. As this shows, Plaintiff's

motions have not been entirely frivolous, despite Defendants' arguments to the contrary. Plaintiff

has now successfully moved to strike two of Defendant's four affirmative defenses and, in the

process, ably identified a split among courts—and a lack of clear guidance from the Ninth

Circuit—on the pleading standard that governs affirmative defenses. Defendants' two remaining

affirmative defenses only narrowly survived the motion. *See supra*, Section III.A.2. Certainly,

Plaintiff has made numerous other arguments that are far from persuasive, but her arguments

have not been so frivolous as to constitute recklessness or bad faith. *See Vernon*, 255 F.3d at

1134 (noting sanctions under court's inherent powers requires finding of bad faith and sanctions

under § 1927 requires finding of recklessness or bad faith).

Plaintiff voluntarily withdrew the remaining four motions: three motions sought the entry

of default against two Defendants, and the fourth sought the Court's guidance on how Plaintiff

must serve her filings on Defendants who had been served with process (the "Motion for More

Definite Statement"). *See* Dkt. Nos. 12, 13, 18, 34. Defendants accuse Plaintiff of filing and then withdrawing these motions as a harassment tactic, forcing Defendants to incur the time and resources of preparing oppositions to frivolous motions. *See* Dkt. No. 44 at 9–10. Plaintiff essentially argues that she was acting in good faith to follow the rules and that she withdrew the motions when she learned from Defendants that her motions did not comply with the applicable rules. *See* Dkt. No. 48 at 9–10.

Plaintiff's Motion for More Definite Statement serves as an illustrative example of this dispute. Plaintiff filed the motion on January 11, 2023, and the motion was noted for January 27. Dkt. No. 34. Because Plaintiff has not registered for e-filing and must be served by mail, Defendants' opposition was effectively due January 20. *See* LCR 7(d) ("If service is by mail, the opposition papers shall be mailed not later than the Friday preceding the noting date."). On January 17, Defendants notified Plaintiff that the Motion for More Definite Statement was frivolous, citing to FRCP 12(e) and other relevant rules for the motion, and requested the withdrawal of the motion by January 19 at 9:30 a.m. Dkt. No. 55-1 at 3–4. While Plaintiff was not bound by the January 19 deadline, Plaintiff first responded on January 18 (stating, "Thank you for the response it was helpful") and then waited until January 20 at 1:19 p.m.—the afternoon of the day Defendants' response was due—to notify Defendants that she had withdrawn the Motion for More Definite Statement. *Id.* at 3. When Defendants requested that Plaintiff provide the filed withdrawal, Plaintiff responded she could not provide it until well after the close of business hours. *Id.* at 2. Defendants filed their opposition later that day out of caution. *Id.* Plaintiff's notice of withdrawal was then posted to the docket.[9] Dkt. No. 40.

---

[9] The Court does not find any significance in this delay in posting the notice, as the delay may have been the result of Plaintiff's paper-based filing and an administrative delay and thus is not necessarily attributable to Plaintiff.

Plaintiff's underlying confusion as to how she should serve Defendants continued, however, as Plaintiff pressed defense counsel on whether they represented Defendants in their individual capacities or their official capacities only—an issue Plaintiff seems to believe governs whether she can serve Defendants through their counsel. *See* Dkt. No. 48-1 at 4 (Defendants' summary of Parties' discussion); Dkt. No. 34 at 2 (Motion for More Definite Statement). Defense counsel responded—correctly—that the issue is irrelevant for the purposes of whether Plaintiff should serve Defendants through defense counsel. Dkt. No. 48-1 at 4.[10]

Putting little weight on what the Parties represent about Plaintiff's true intentions, the Court is left with a mixed bag of facts from which to draw conclusions. Plaintiff's close scrutiny of the applicable rules governing her motions—including ready acknowledgments that Defendants were correct in pointing out procedural defects in her now-withdrawn motions—as well as her continuing confusion about how she must serve Defendants demonstrate a good faith effort to abide by rules that may be confusing to a *pro se* litigant. Plaintiff's delay in withdrawing the Motion for More Definite Statement until Defendants felt compelled to file an opposition, however, is concerning. The Court could also find that Plaintiff's pattern of filing non-meritorious motions and withdrawing them in itself is sanctionable. In *Barton*, another court of this District imposed sanctions on a *pro se* plaintiff for engaging in gamesmanship and harassing the defendant in part by filing a single frivolous motion to remand and then withdrawing it. *See* 2022 WL 1746664, at *3 ("The fact that [plaintiff] withdrew his motion before [defendant's] response was due does not alter the fact that [defendant] spent attorney time and effort preparing

---

[10] The Court also notes that Plaintiff has filed numerous certificates of service separately from her filings. Dkt. Nos. 23, 24, 25, 43, 51, 56, 62. While the Court appreciates Plaintiff's attempts to abide by all her procedural obligations, Plaintiff is directed to LCR 5(f), which provides that a proof of service should be appended to the filing itself and that "[p]arties should not file a separate proof of service document unless it is necessary." If Plaintiff in the future chooses to register for participation in the ECF system, such that she receives filings and files electronically, no certificate of service is required. *See* LCR 5(f).

to respond to it."). The Court recognizes, however, that *Barton* involved clearer signs of concerning behavior.

Upon consideration of all the facts discussed above, the Court is cognizant of and sympathetic to Defendants' frustrations regarding Plaintiff's motions practice but finds that Plaintiff's motions fall short of being sanctionable at this time. The Court trusts that Plaintiff will exercise better judgment in what motions to bring going forward and warns that, if Plaintiff continues to file unnecessary and non-meritorious motions—even if later withdrawn—the Court will be prepared to impose sanctions, including an award of fees to Defendants for the cost of defending against any such motions.

### 2.    Plaintiff's Compliance with the Standing Order & Other Conduct

The Parties hotly dispute whether Plaintiff fulfilled her obligation to confer in good faith and give notice regarding each motion to Defendants before filing. This Court requires parties to "make a meaningful effort to confer prior to filing a motion." Judge Tana Lin, Standing Order for All Civil Cases, Section II.D (last updated Apr. 26, 2022). A "meet and confer" is a "good faith conference in person or by telephone to attempt to resolve the matter in dispute without the court's involvement." LCR 1(c)(6).

Defendants appear to be correct that Plaintiff has *not* engaged in proper meet-and-confers prior to the filing of each motion. More specifically, Plaintiff appears to have at least generally flagged issues she had with Defendants before filing a motion on those issues, but she did not always warn Defendants that a specific motion was forthcoming (*see* Dkt. No. 44 at 4–5) or was otherwise not fully forthcoming about the contents of her motions (*see id.* at 5–6). Regardless of whether this was intentional or due to a misunderstanding, going forward, the Court encourages the Parties to engage in a telephonic or in-person meet and confer before the filing of a motion and: (1) clearly explain what specific action they will seek in an upcoming motion; (2) briefly

note their legal and factual grounds for asserting an entitlement to such relief; and (3) only

proceed to bring the motion before this Court if the moving party believes that the motion might

still succeed in spite of the opposing party's objections and counter-arguments.

In any case, the Court is troubled by certain of Plaintiff's conduct. In particular, filing

ethics complaints against counsel for fulfilling their duties of making legal arguments and factual

representations on behalf of their clients—though Plaintiff may disagree with such arguments

and representations—is difficult to condone. The Court is also skeptical of Plaintiff's insistence

that the ethics complaints were filed in this case "for record keeping purposes with no such

intention to harass Defendants['] counsel." *See* Dkt. No. 48 at 5–6; *see also* Dkt. No. 21 at 6

(warning that the ethics complaint against Ms. Middleton is "the first of many to come"); Dkt.

No. 22 at 7 (same warning for Mr. O'Connell). As the Court has noted, the timing of Plaintiff's

communications with Defendants is also suspect. *See* Dkt. No. 55-1 at 2–3; *see also* Dkt. No. 44

at 5 (noting emails from Plaintiff to Defendants on Christmas Eve at 11:51 p.m. and on New

Year's Eve).

On the other hand, Defendants' own conduct is not entirely free of blame. For example:

- Defendants requested Plaintiff's withdrawal of the Motion for More Definite Statement only three days before their opposition was due, thus partially causing the rush to file an opposition on the due date. (Defendants also filed their opposition out of caution, in spite of Plaintiff's representation that she had withdrawn the motion.)

- Defense counsel appears to have been less than forthcoming regarding the whereabouts of Ms. Brandenburg or cooperation regarding service of process, contributing in part to the filing of Plaintiff's Motion for Service.

- It is not clear that Defendants have met their own high demands of a meet and confer prior to the filing of a motion. The Motion for Sanctions contains no certification of a meet and confer with Plaintiff prior to filing. *See* Dkt. No. 44 at 7 ("Certification" only noting conferrals related to other motions). While Defendants previously previewed the possibility of a motion for sanctions to Plaintiff, they do not appear to have given Plaintiff notice before actually filing the motion, including of the specific bases for such motion. Notably, Defendants

previously previewed they would seek sanctions under FRCP 11 but ultimately do not. *See, e.g.*, Dkt. No. 35 at 9 ("At this time, Defendants are not seeking Rule 11 sanctions . . . .").

- Some of Defendants' own briefing leaves much to be desired. *See, e.g.*, Dkt. No. 58.[11]

- Given that Plaintiff's motions are not as "objectively frivolous" as Defendants repeatedly assert (*see, e.g.*, Dkt. No. 44 at 3), Defendants' repeated warnings and subsequent Motion for Sanctions could be perceived as heavy-handed attempts to restrict Plaintiff's conduct.

To be clear, these examples do not pose a professional or ethical concern regarding defense counsel's conduct; they are largely within the bounds of acceptable and ordinary conduct in litigation. The Court notes them simply to point out that this level of nitpicking and blow-by-blow fighting is neither productive nor beneficial to either side.

For the reasons discussed above, the Court will give Plaintiff the benefit of the doubt and finds a lack of recklessness or bad faith for imposing sanctions on Plaintiff at this time. Accordingly, Defendants' Motion for Sanctions is DENIED. However, the Court is prepared to impose sanctions if Plaintiff continues to engage in a similar pattern of behavior in spite of the guidance contained in this Order. Plaintiff is also reminded that unnecessary motions will likely only slow down the resolution of her claims.

## D.   Other Matters

For the purposes of an orderly management of this case, the Court now proceeds to tackle the remaining issues and requests before this Court.

---

[11] The Court understands that Defendants are frustrated with Plaintiff. But the Court is tasked with the duty to rule on motions properly before it, and as officers of the court, defense counsel are expected to provide arguments and citations supporting Defendants' positions to assist the Court.

1          **1.     Plaintiff's "Request for Clarification"**

2          The Court previously relied on the exhibits attached to the Complaint to briefly

3  summarize Plaintiff's allegations as, in relevant part, arising out of a COVID-19 vaccination

4  requirement at Plaintiff's prior workplace. *See* Dkt. No. 59 at 1. In her "Request for

5  Clarification," Plaintiff objects to the Court's partial reliance on the exhibits, arguing that the

6  Court's characterization "is clearly outside of the pleadings" because the Complaint itself

7  contains "no mention of a vaccine . . . only that the Plaintiff was unable to obtain the newly

8  required license/medical document . . . ." Dkt. No. 61 at 1.

9          Plaintiff's "request" is a motion, though not labeled as such. Fed. R. Civ. P. 7(b)(1) ("A

10  request for a court order must be made by motion."). It is therefore in contravention of the

11  Court's previous order that "[n]o new motions may be filed . . . absent urgent or extenuating

12  circumstances." Dkt. No. 59 at 4. Plaintiff points to no urgent or extenuating circumstances to

13  justify filing the motion despite the stay. Recognizing Plaintiff's confusion, however, the Court

14  briefly notes that exhibits to a pleading are considered part of the pleading itself. *See* Fed. R. Civ.

15  P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading

16  for all purposes."); *see also Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 811

17  n.14 (9th Cir. 2008) (taking facts from exhibit to complaint even though exhibit contradicted the

18  complaint). The Court may rely on the exhibits to the Complaint in understanding and describing

19  the nature of Plaintiff's allegations.

20          Accordingly, Plaintiff's "Request for Clarification" is DENIED. Plaintiff is also reminded

21  that the Court is not obligated to explain the law or give legal guidance to Plaintiff and that

22  future "requests" to the Court for explanations of the law may be summarily stricken or denied.

23  *See Jacobsen v. Filer*, 790 F.2d 1362, 1364–66, 1365 n.5 (9th Cir. 1986) ("[T]he trial court is

24

under no obligation to become an 'advocate' for or to assist and guide the *pro se* layman through the trial thicket." (quoting *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977)).

### 2.    Other Requests

Plaintiff has made several other motions and requests in her various briefing. *See, e.g.*, Dkt. No. 48 at 6; Dkt. No. 60 at 1. These motions and requests are STRICKEN as improperly before this Court.

### 3.    Note to the Parties

While the Court has attempted to address the Parties' various concerns and requests in this Order, it is not clear that any efficiency in the proceedings or any progress toward the resolution of this matter has ultimately resulted from this flurry of activity. To help in the efficient management and resolution of this case, the Parties are advised to be judicious in what motions they bring before this Court going forward. The Parties are also reminded to act civilly and in good faith toward each other. The Court is not interested in continuing to resolve minor quibbles among the Parties. The Parties are cautioned that frivolous motions or other issues raised to this Court, as well as unprofessional or discourteous conduct, are subject to sanctions by this Court.

## IV.    CONCLUSION

Accordingly, it is hereby ORDERED:

(1)    Plaintiff's Motion to Strike (Dkt. No. 42) is GRANTED in part and DENIED in part.

(2)    The Court STRIKES Defendants' affirmative defenses one and four (Dkt. No. 19 at 24) without leave to amend.

(3)    Plaintiff's Motion for Service (Dkt. No. 52) is GRANTED in part and DENIED in part. Plaintiff may serve Ms. Brandenburg by emailing a copy of the summons and complaint to Ms. Brandenburg's counsel **within seven (7) days** of this Order.

(4)     Defendant Laura Barry is DISMISSED without prejudice for failure to timely serve
with process.

(5)     Defendants' Motion for Sanctions (Dkt. No. 44) is DENIED.

(6)     Plaintiff's "Request for Clarification" (Dkt. No. 61) is DENIED.

(7)     Any motion or other request made in Plaintiff's filings not otherwise ruled upon is
STRICKEN.

(8)     The stay in this matter is LIFTED.

(9)     Defendants are DIRECTED to move to dismiss under Federal Rule of Civil
Procedure 12(c), if appropriate, within **forty-five (45) days** of this Order.

Dated this 22nd day of May 2023.

Tana Lin
United States District Judge