1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MELISSA WHITE,

Plaintiff,

v.

UNIVERSITY OF WASHINGTON et al,

Defendants.

CASE NO. 2:22-cv-01798-TL

ORDER ON MOTION FOR
JUDGMENT ON THE PLEADINGS,
MOTION FOR JUDICIAL NOTICE,
AND MOTION TO AMEND
COMPLAINT

This employment discrimination case brought by *pro se* Plaintiff Melissa White centers

on the termination of her employment as a sonographer upon denial of her request for a religious

exemption from Defendant University of Washington's COVID-19 vaccine requirement.

Plaintiff has filed suit against the University of Washington ("UW") and related entities UW

Medicine Harborview Medical Center ("Harborview") and UW Medicine Choice Care, LLC

(collectively, "University Entities") and Lisa Brandenburg, Timothy Dellit, Mark Richards,

Kathy Schell, and William Goodman ("Individual Defendants").[1] The matter comes before the Court on Defendants' Rule 12(c) Motion on the Pleadings (Dkt. No. 74), Plaintiff's motion seeking judicial notice of several documents in connection with her opposition to the 12(c) motion (Dkt. No. 81), and Plaintiff's Motion for Leave to File Amended Pleading (Dkt. No. 73). Having reviewed the relevant record and governing law, the Court GRANTS the 12(c) motion, GRANTS IN PART and DENIES IN PART the request for judicial notice, and DENIES the motion to amend.

## I.    FACTUAL BACKGROUND

On August 9, 2021, Washington Governor Jay Inslee issued a proclamation requiring all healthcare workers to be vaccinated against COVID-19 or to receive a medical or religious exemption by October 18, 2021 ("Proclamation 21-14"). Dkt. No. 1-2 at 63–64. Proclamation 21-14 explicitly provides that state agencies "are not required to provide [accommodations under Title VII and other laws] if they would cause undue hardship." *Id.* at 64.

Plaintiff was a sonographer at Harborview who provided direct patient care. *See* Dkt. No. 1-2 ¶¶ 9, 46, 52, 55, 76–77. Plaintiff was notified multiple times between August 12, 2021, and October 18, 2021, that she was required to be vaccinated against COVID-19 to retain her position, which she had held since December 2001. Dkt. No. 1-2 ¶¶ 15, 64, 71–72; *see also id.* at 58–60 (Exhibits A and B to complaint), 74 (Exhibit F), 75 (Exhibit G). In late August 2021, Plaintiff submitted a personal statement as well as official paperwork seeking a religious exemption to the vaccine requirement. *Id.* ¶¶ 66–69. Plaintiff received an email on September 10, 2021, that this request was denied and that her employment would be terminated on October 18,

---

[1] Individual Defendant Laura Barry was dismissed without prejudice due to a failure to serve. Dkt. No. 66 at 17. Since then, Plaintiff has not attempted proper service and has filed a proposed amended complaint which would not include Defendant Barry. *See generally* Dkt. No. 73-2.

2021, "if demands were not followed." *Id.* ¶¶ 70–72. Plaintiff alleges that she lost sleep and focus over this and developed an irregular heartbeat and breathing trouble, resulting in her seeking support from a behavior center. *Id.* ¶¶ 73–93. Plaintiff had been an active member of her union. *See id.* ¶¶ 16, 33, 58. On September 27, 2021, she "attended a grievance meeting via Zoom pertaining to the denial of religious exemptions." *Id.* ¶ 95. Plaintiff alleges that her psychiatrist informed her on October 6, 2021, that Family Medical Leave Act ("FMLA") leave "was necessary." *Id.* ¶ 111. She submitted her FMLA leave request on October 14, 2021, and made necessary corrections the following day. *Id.* ¶ 115; *see also id.* at 79–81 (Exhibit J). On October 18, 2021, Plaintiff received an email explaining that her FMLA leave request was being denied due to the termination of her employment. *Id.* ¶ 118; *see also id.* at 86 (Exhibit K). That same day, Plaintiff's employment was terminated. *Id.* ¶ 119. Post-termination, Plaintiff sought union support for another grievance meeting, which was denied. *Id.* ¶¶ 124–27; *see also id.* at 76–77 (Exhibit H).

Defendants assert that "[a]s a state agency, the University was required to comply with Proclamation 21-14" and that Plaintiff "provided hands-on, direct patient care and was required to work onsite at the University." Dkt. No. 74 at 2; *see also* Dkt. No. 1-2 ¶¶ 52, 55, 63–65; 76–77. Defendants acknowledged Plaintiff's sincerely held religious belief yet denied her requested accommodation on grounds that they—and the staff and patients exposed to Plaintiff—would suffer undue hardship if Plaintiff were allowed to remain in her position without getting vaccinated, given that her position involves direct patient care. Dkt. No. 1-2 at 60 (Exhibit B, religious exemption denial letter).

## II.   PROCEDURAL BACKGROUND

Plaintiff is proceeding *pro se* (without an attorney). Plaintiff represents that she received a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC") on

September 9, 2022. Dkt. No. 1-2 at 20. She initially sued in King County Superior Court, and Defendants removed the case to this Court on December 19, 2022. Dkt. No. 1. Soon after, Plaintiff filed a motion to remand (Dkt. No. 11), and Defendants filed an answer to the complaint (Dkt. No. 19) on December 30, 2022. The Parties (primarily Plaintiff) then filed a "flurry of motions" that were either denied or withdrawn prior to Court rulings, as described in the Court's previous Order. *See* Dkt. No. 66 at 3. In its Order, the Court ruled on a motion to strike affirmative defenses, a motion for service, a motion for sanctions, and a request for clarification. *Id.* at 26–27. In the same ruling, the Court set an early July 2023 deadline for Defendants to file for dismissal under Rule 12(c). *See id.* at 27 (setting a 12(c) motion filing deadline of "within forty-five (45) days" of the Order dated May 22, 2023). Several weeks before this deadline, the Court granted the Parties' stipulated motion to set a modified briefing schedule and extend the word count for the 12(c) motion. Dkt. No. 72.

Plaintiff filed a motion to amend her complaint on June 29, 2023. Dkt. No. 73. That same day, Defendants filed their 12(c) motion. Dkt. No. 74. Plaintiff's proposed amendments would, in addition to making minor edits throughout the complaint, withdraw two state law claims, add new state and federal law causes of action, and remove an Individual Defendant. *See* Dkt. No. 73-1 (proposed amended complaint); *see also* Dkt. No. 78 at 2.

On July 21, 2023, concurrent with her opposition to the 12(c) motion (Dkt. No. 80), Plaintiff filed a request for judicial notice of seven documents (Dkt. No. 81). The Clerk of Court administratively converted Plaintiff's request for judicial notice into a motion to allow Defendants an opportunity to respond. Defendants withdrew their response upon realizing it had been filed late. Dkt. No. 84 (withdrawing Dkt. No. 83). The Court addresses Plaintiff's requests for judicial notice in its analysis of the other motions but does not consider Defendants' withdrawn arguments regarding those requests.

### III.   LEGAL STANDARDS

**A.   Motion for Judicial Notice**

A trial court may judicially notice adjudicative facts generally known within its territorial jurisdiction or that are capable of accurate and ready determination "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a), (b); *accord Jespersen v. Harrah's Operating Co., Inc.,* 444 F.3d 1104, 1110 (9th Cir. 2006) (*en banc*) (quoting Fed. R. Evid. 201(b)). "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201 advisory committee's note (1972).

**B.   Motion for Judgment on the Pleadings**

Judgment on the pleadings may be moved for "[a]fter the pleadings are closed—but early enough to not delay trial." Fed. R. Civ. P. 12(c). "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) (internal citations omitted); *see also* Fed. R. Civ. P. 7(a) (delineating what filings qualify as "pleadings").

A 12(c) motion "is properly granted when, taking all the allegations in the pleading[s] as true, the moving party is entitled to judgment as a matter of law." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978–79 (9th Cir. 1999) (internal citation omitted). Analyses under Rules 12(c) and 12(b)(6) are "substantially identical" as "under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). However, the Court need not take as true factual allegations that are contradicted by "matters properly subject to judicial notice or by exhibit." *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022) (internal quotation marks omitted) (quoting *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014)).

1    "A defendant is not entitled to a judgment on the pleadings if the complaint raises issues

2  of fact, which if proved would support recovery." *Lee v. Port of Oakland*, No. C09-6033, 2010

3  WL 3746451, at *1 (N.D. Cal. Sept. 20, 2010). Similarly, judgment on the pleadings is typically

4  barred if affirmative defenses asserted by a defendant raise factual issues. *See Wash. v.

5  Franciscan Health Sys.*, No. C17-5690, 2019 WL 687830 (W.D. Wash. Feb. 19, 2019) (citing

6  *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*,

7  887 F.2d 228, 230 (9th Cir. 1989)).

8    A court must treat a motion for judgment on the pleadings as one for summary judgment

9  under Rule 56 if it considers matters outside the pleadings in its determination of the motion.

10  Fed. R. Civ. 12(d). However, the Court may consider documents that are properly judicially

11  noticed without converting the motion, *Heliotrope Gen.*, 189 F.3d at 981 n. 8, as well as

12  materials submitted alongside the complaint or upon which the complaint "necessarily relies."

13  *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (internal citations omitted)

14  (discussing what documents a court may review on a motion to dismiss).

15  **C.    Motion to Amend Pleading**

16    In the absence of a scheduling order that has set a deadline for amending the pleadings,

17  motions to amend complaints are analyzed under a liberal standard that requires courts to "freely

18  give leave when justice so requires." *See* Fed. R. Civ. P. 15; *Desertrain v. City of L.A.*, 754 F.3d

19  1147, 1154 (9th Cir. 2014) (internal citations omitted). However, leave to amend may be denied

20  based on undue delay, bad faith, prejudice to the opponent, allowance of previous amendments,

21  and the futility of the proposed amendment. *Id.* (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077

22  (9th Cir. 2004)). "Futility alone can justify the denial of a motion to amend." *Buckley*, 356 F.3d

23  at 1077.

24

1

## IV.   ANALYSIS

2

### A.   Judicial Notice

3
Plaintiff seeks judicial notice of the following documents, but her request for judicial

4
notice does not explain their relevance to her case:

5
- Exhibit A: an unpublished California state appellate court opinion;

6
- Exhibit B: exhibits attached to a request for judicial notice to the trial court in the

7
  same California case;

8
- Exhibit C: a "Strategic Alliance Agreement" between UW and a related entity, Valley

9
  Medical Center ("VMC");

10
- Exhibit D: an interim final rule published in the Federal Register by the Centers for

11
  Medicare & Medicaid Services;

12
- Exhibit E: heavily redacted portions of a purported email chain between Centers for

13
  Disease Control ("CDC") Director Rochelle Walensky and other CDC employees;

14
- Exhibit F: an opinion piece entitled "SARS-CoV-2 Vaccines and the Growing Threat

15
  of Viral Variants" published in the Journal of the American Medical Association; and

16
- Exhibit G: a purported email and response between UW medical professors.

17
Dkt. Nos. 81, 81-1.

18
A request for judicial notice is properly denied where a party does not adequately attach

19
the document it seeks to have judicially noticed, or otherwise does not enable the Court to gauge

20
its significance, as the Court is not required to do the parties' work for them. *See, e.g.*, *Banks v.*

21
*ACS Ed.*, 638 F. App'x 587, 589 n.1 (9th Cir. 2016) (denying motion for judicial notice where

22
appellant did not "identify or attach the documents or explain their relevance to his case").

23

24

In the analysis below, the Court only considers the propriety of judicially noticing Exhibits A, C, and D. The remaining exhibits are neither clearly referenced in nor relevant to Plaintiff's briefing on the 12(c) motion or motion to amend. *See* Dkt. Nos. 73, 79, 80.

a.    ***Exhibit A: California State Appellate Court Opinion***

Courts "*may* take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (emphasis added) (internal citations omitted); *see also Tolliver v. United States*, 957 F. Supp. 2d 1236, 1250 & n.10 (W.D. Wash. 2012) (taking judicial notice of an unpublished Washington state court case which addressed similar facts and aided the federal court's determination of the state law standards for determining the establishment of proximate cause); *Leishman v. Wash. Atty. Gen.'s Off.*, No. C20-861, 2023 WL 7158434, at *3 (W.D. Wash. Oct. 31, 2023) (taking judicial notice of previous state court proceedings involving some of the same parties as in the litigation at hand). In the case that Plaintiff urges the Court to review, a state appellate court partially reversed dismissal of certain claims without leave to amend where city employees challenged a COVID-19 vaccination requirement. *Firefighters4Freedom v. City of L.A.*, No. B320569, 2023 WL 4101325, at *6, *20 (Cal. Ct. App. June 21, 2023) (accepting as true even "improbable" alleged facts). Not only is the attached opinion labeled as "unpublished/noncitable" (Dkt. No. 81-1 at 2), the Court does not find it sufficiently relevant to Plaintiff's case. First, this Court evaluates Plaintiff's claims under a more stringent pleading standard than what was applied by the California Court of Appeals. As stated in the opinion that Plaintiff points to, "federal court cases . . . dismissing challenges to various vaccine and mask mandates were decided under federal pleading standards, which are 'significantly different' and more stringent than California pleading standards." *Firefighters4Freedom*, 2023 WL 4101325, at *14. Second, the instant Parties were in no way

involved in that other case. Finally, there are legal authorities on the same topic from the Ninth

Circuit that are much more relevant. *See, e.g.*, *Kheriarty v. Regents of the Univ. of Cal*., No. 22-

55001, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022) (affirming judgment on the pleadings

against University of California medical professor who claimed his employer's COVID-19

vaccination mandate violated his Fourteenth Amendment rights). Plaintiff has not established a

proper basis for the Court to take judicial notice of Exhibit A.[2]

### b.   *Exhibit C: Strategic Alliance Agreement*

The Court finds it appropriate to take judicial notice of the Strategic Alliance Agreement

(Exhibit O to the amended complaint, Dkt. No. 73-1 at 239–326; also Exhibit C to the request for

judicial notice, Dkt. No. 81-1 at 185–273). The document's accuracy cannot reasonably be

questioned, and its accuracy is not questioned by Defendants in their response to the motion to

amend. *See* Fed. R. Evid. 201(b)(c); Dkt. No. 78 at 5–6.

### c.   *Exhibit D: Centers for Medicare & Medicaid Services Interim Final Rule*

Plaintiff seeks judicial notice of portions of an interim final rule published in the Federal

Register by the Centers for Medicare & Medicaid Services ("Exhibit D"). Dkt. No. 80 at 4–5.

She highlights a single statement regarding the uncertainty of the duration of the COVID-19

vaccine's efficacy in preventing COVID-19, reducing disease severity or risk of death, as well as

uncertainty about its efficacy in preventing disease transmission. Dkt. No. 80 at 4, 5 (quoting

from Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86

FR61-55501, 2021 WL 5130520 at *61615 (Nov. 5, 2021)).

---

[2] Even if the Court were to take judicial notice of the case, the Court would find it distinguishable (and, therefore, not persuasive) for the same reasons stated in this section.

Per the United States Code, "[t]he contents of the Federal Register shall be judicially noticed." 44 U.S.C. § 1507. Moreover, this federal agency publication is a matter of public record not subject to reasonable dispute. *See Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (internal citations omitted). The Court will take judicial notice of Exhibit D. However, the Court notes that this interim rule was published in November 2021, *after* Defendants terminated Plaintiff and, therefore, is not relevant to the instant motions.

The Court therefore TAKES JUDICIAL NOTICE of Exhibits C and D and DECLINES TO JUDICIALLY NOTICE the remainder of Plaintiff's proffered documents (*i.e.*, Exhibits A, B, E, F, and G).

**B.     Judgment on the Pleadings**

For the reasons discussed below, Plaintiff's original complaint fails to allege facts that would entitle her to a legal remedy. *See Chavez*, 683 F.3d at 1108. In determining that a 12(c) dismissal is warranted, the Court has considered only those claims contained within the pleadings as they existed on the date the motion was filed. In Section IV.C, *infra*, the Court separately considers whether Plaintiff's proposed amendments would survive dismissal.

1.     **Count I: Failure-to-Accommodate Under Title VII of the Civil Rights Act of 1964**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination due to an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Discrimination claims based on an employer's failure to provide a religious accommodation are analyzed under the *McDonell Douglas* burden-shifting framework. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, an employee alleging religious discrimination must establish a *prima facie* case that: "(1) [they] had a bona fide religious belief, the practice of which conflicts with an

1    employment duty; (2) [they] informed [their] employer of the belief and conflict; and (3) the

2    employer discharged, threatened, or otherwise [the employee] to an adverse employment action

3    because of [their] inability to fulfill the job requirement." *Id.* (quoting *Peterson v. Hewlett-*

4    *Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004)).

5        If the plaintiff makes a *prima facie* case, the burden then shifts to the employer to show

6    that "it initiated good faith efforts to accommodate reasonably the employee's religious practices

7    or that it could not reasonably accommodate the employee without undue hardship." *Peterson*,

8    358 F.3d at 606 (internal citations omitted). An undue hardship can be shown "when a burden is

9    substantial in the overall context of an employer's business," and cannot be summarized as

10    showing "more than a de minimus cost." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). This is a

11    fact-specific inquiry. *Id.*

12            a.     **Prima Facie *Case***

13        Plaintiff fails to state what, if any, religious practice she follows, let alone how the

14    COVID-19 vaccine mandate conflicts with her exercise of that religion. *See* Dkt. No. 1-2.

15    However, Defendants admit in their motion that "[t]he University concluded that Plaintiff's

16    accommodation request was based on a sincerely held belief." Dkt. No. 74 at 2; *see also* Dkt.

17    No. 1-2 at 64–65 (Exhibit C to complaint, UW letter to EEOC stating "the University concluded

18    that White's request was based on a sincerely held belief or religion. . . . [and] did not (and does

19    not) dispute the sincerity of her belief or that it was religious in nature"). As Defendants have

20    raised no disputes of fact regarding whether Plaintiff has raised a *prima facie* case, the Court will

21    not analyze the elements of a *prima facie case* for religious discrimination. In any event, the

22    dispositive factor in this case is whether Defendants have shown that they could not "reasonably

23    accommodate" Plaintiff's religious convictions without "undue hardship on the conduct of the

24    employer's business." *See* 42 U.S.C. § 2000e(j).

b.    ***Undue Hardship***

The only argument raised by Defendants in their motion with regard to Plaintiff's Title VII claim is that "[t]he University . . . [had] determined that [Plaintiff's] requested accommodation—that she be allowed to continue to provide direct patient care while unvaccinated . . . created an undue hardship." Dkt. No. 74 at 2–3. Defendants assert that the "undue hardship had nothing to do with the cost of Plaintiffs request, but rather the heightened risk of infection for patients and staff which it would present." *Id.* at 3, 7-10; *see also* Dkt. No. 1-2 at 65, 67. Defendants also state that the University was obligated as a matter of state law to require the COVID-19 vaccinations and accommodating Plaintiff's request would put the University in the position of violating state law. Dkt. No. 74 at 11.

"The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Therefore, "undue hardship" is a complete defense to Title VII failure-to-accommodate claims. *See Petersen v. Snohomish Reg'l Fire & Rescue*, No. C22-1674, 2024 WL 278973, at *6 (W.D. Wash. Jan. 25, 2024) (internal citations omitted). This said, "[u]ndue hardship is an affirmative defense*." Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1224–25 (9th Cir. 2023).[3] Therefore, dismissal on this ground on a Rule 12(b)(6) motion—or a Rule 12(c) motion, in this case—is proper "'only if the defendant shows some obvious bar to securing relief on the face of the complaint' or in 'any judicially noticeable materials.'" *Bolden-Hardge*, 63 F.4th at 1225 (quoting *ASARCO, LLC*

---

[3] Plaintiff maintains that Defendants did not assert this affirmative defense. Dkt. No. 80 at 16. However, as discussed below, Plaintiff included the facts regarding Defendants' assertion of the undue hardship defense in her complaint and the exhibits to her complaint. *See* Dkt. No. 1-2 ¶¶ 109–10; *id.* at 60–68 (Exhibits B and C to complaint).

*v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)). *See also Franciscan Health Sys.*, 2019 WL 687830 at *2 ("While an affirmative defense will usually bar judgment on the pleadings if it raises issue[s] of fact, . . . courts will grant a 12(c) dismissal if the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.") (internal quotation marks and citations omitted).

To establish an undue hardship, the employer must prove "that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff*, 600 U.S. at 470 (internal citation omitted). "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id*. at 470–71 (internal quotation marks and citation omitted). The Supreme Court has held that an undue hardship is one that "would be substantial in the context of an employer's business." *Id.* at 471. In resolving whether a hardship is substantial, courts should apply this test in a "common-sense manner." *Id.*

Plaintiff alleges that she was subjected to religious discrimination because her request for a religious exemption to the COVID-19 vaccination requirement was denied based on undue hardship. Dkt. No. 1-2 ¶¶ 239, 246. Though Plaintiff claims that Defendants did not provide any reason for this hardship (*id.* ¶¶ 110, 255), she simultaneously quotes a letter UW sent to the EEOC (and includes the letter as an exhibit to her complaint) regarding her charge on January 31, 2022, which asserts that "putting patients and co-workers at heightened risk of serious harm or death from COVID-19" would cause the university to bear "more than a de minimis cost or risk of harm from COVID-19." *Id.* ¶ 249 (citing Exhibit C to complaint). The letter notes that Plaintiff's proposed accommodation had been to wear "an appropriate mask" and submit to

"some testing regime." *Id.* at 82.[4] Per this document, "a team of physicians and human resources personnel who assessed the actual work done by White" used "the best available scientific evidence" to conclude that "employees who are merely masked and periodically tested for COVID-19 place patients and co-workers at a substantially higher risk of infection with COVID-19 than those who are fully vaccinated and using appropriate infection protocols." *Id.* And, as Defendants explained in their letter denying Plaintiff's religious accommodation request (also attached to her complaint), Plaintiff's role as a sonographer required her to provide direct patient care. Dkt. No. 1-2 at 60 (Exhibit B to complaint); *see also* Dkt. No. 1-2 ¶¶ 108–09, 249. Plaintiff does not dispute any of these facts that she included either in her complaint or as exhibits to her complaint. Rather, she states in her response to the 12(c) motion that "Plaintiff can amend the facts of the complaint to show that patient safety was not a concern regarding the Ultrasound Department at Harborview Medical Center *after* Plaintiff's unconstitutional departure." Dkt. No. 80 at 16 (emphasis added). However, the relevant question is what the concerns were at the time Defendants made the decision they could not accommodate Plaintiff, not after her departure.

The record at this stage amply demonstrates the existence of an undue hardship. Defendants point to data from CDC showing that people who were fully vaccinated against COVID-19 when the Delta variant was prominent were five times less likely to become infected with the disease, and ten times less likely to die or be hospitalized due to the disease than the unvaccinated. Dkt. No. 74 at 6 (citing Heather M. Scobie, PhD et al., *Monitoring Incidence of Covid-19 Cases, Hospitalizations, and Deaths, by Vaccination Status – 13 Jurisdictions, April 4– July 17, 2021*, CDC (Sept. 17, 2021), https://perma.cc/53W6-FNX4 (showing the reduced risks

---

[4] *See also* Dkt. No. 74 at 10. Plaintiff does not appear to dispute the fact that the only accommodation besides the vaccine exemption that she requested was to wear a mask and submit to testing. *See* Dkt. No. 80.

offered by COVID-19 vaccination based on data from June 20 to July 17, 2021)). The Court finds this data to be appropriate for judicial notice as it is highly relevant (and indeed factored into a decision at the core of this case) and is from a source whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201 (allowing courts to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also United States v. Lomeli*, No. CR12-2791, 2022 WL 16752979, at *3, n.3 (S.D. Cal. Nov. 7, 2022) (explaining that the CDC website's accuracy cannot reasonably be questioned); *Denis v. Ige*, 557 F. Supp. 3d 1083, 1088, n.1 (D. Haw. Aug. 31, 2021) (acknowledging that the CDC is the "nation's healthcare protection agency") (internal citation omitted)).

The Ninth Circuit has long recognized valid safety concerns as establishing undue hardship. *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984) (per curiam) (affirming a finding of undue hardship where machinist's proposed accommodation risked liability for violating a state safety regulation or otherwise exposed other employees to a larger share of potentially hazardous work). With respect to COVID-19 in particular, guidance from the EEOC indicates that "increasing 'the risk of the spread of COVID-19 to other employees or to the public'" is a ground for finding undue hardship on employers asked to grant religious exemptions to COVID-19 vaccination mandates. *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021) (quoting *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* at L.2–L.3, U.S. Equal Emp. Opportunity Comm'n (Oct. 25, 2021), https://perma.cc/ECL5-WF2C).[5] Further, the increased risk of COVID-19

---

[5] The Supreme Court noted that "a good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by our clarifying decision today . . .   What is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an

infection vis-à-vis coworkers and patients that an unvaccinated healthcare provider poses has been found sufficient to pose an undue burden on employers at the motion to dismiss stage.[6] *See Beuca v. Wash. St. Univ.*, No. C23-69, 2023 WL 3575503, at *3 (E.D. Wash. May 19, 2023) (dismissing with prejudice medical student's Title VII claim regarding Proclamation 21-14 on undue hardship grounds on a motion to dismiss); *Smith v. NYS OMH S. Beach Psych. Ctr.*, No. C23-4401, 2024 WL 730492, at *3 (E.D.N.Y. Feb. 22, 2024) (dismissing with prejudice *pro se* Title VII complaint where, as here, a healthcare worker's requested accommodation was essentially to be exempt from vaccine requirement while continuing to work in a patient-facing position); *Mace v. Crouse Health Hosp., Inc.*, No. C22-1153, 2023 WL 5049465, at *7 (N.D.N.Y. Aug. 3, 2023) (dismissing Title VII claim at motion to dismiss stage on grounds that "requiring that an employer provide an accommodation to an employee whose work involves 'activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease' represents an undue burden" (internal citation omitted)); *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 145 & n.28 (E.D.N.Y. 2022) (holding on motion to dismiss that religious exemption from COVID-19 vaccination would impose an undue hardship by putting patients and staff at risk).

The Ninth Circuit also has found on a motion to dismiss that undue hardship is established as a matter of law where a religious accommodation would require an employer to violate state or federal law. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830–31 (9th Cir. 1999). Here, Proclamation 21-14 required all healthcare workers to be vaccinated against

---

employer's business in the common-sense manner that it would use in applying any such test." *Groff*, 600 U.S. at 471.

[6] The Supreme Court also recently upheld a regulatory scheme requiring healthcare employees to be vaccinated against COVID-19, in order to reduce the risk of its transmission to patients. *See Biden v. Mo.*, 595 U.S. 87, 93 (2022) ("ensuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession").

COVID-19 and granting Plaintiff's requested accommodation would have resulted in Defendants violating state law, causing them undue hardship. Dkt. No. 1-2 ¶¶ 1, 3, 63–72; *see Lowe v. Mills*, 68 F.4th 706, 719-722 (1st Cir. 2023) (affirming dismissal of Title VII claim on motion to dismiss where the facts establishing the undue hardship defense of violating a state law with regard to COVID-19 vaccinations were "clear on the face of the plaintiff's pleadings and there [was] no doubt that the plaintiff's claims are barred" (internal citations and quotation marks omitted)), *cert. denied*, 144 S. Ct. 345; *see also Tandian v. SUNY*, No. C22-1401, 2023 WL 8827577, at *9 (N.D.N.Y. Oct. 13, 2023) (granting motion to dismiss Title VII claim where patient wished to continue performing patient-facing duties unvaccinated and explaining that "a reasonable Title VII accommodation cannot require an employer to violate state or federal law"); *Bolonchuk v. Cherry Creek Nursing Ctr./Nexion Health*, No. C22-2590, 2023 WL 2914812, at *6 (D. Colo. Apr. 12, 2023), r*eport and recommendation adopted sub nom. Bolonchuk v. Cherry Creek Nursing Ctr.*, (D. Colo. Sept. 11, 2023) (granting motion to dismiss Title VII claim with prejudice where accommodation of healthcare worker's request for vaccine exemption would require employer to violate state mandates) (collecting cases); *Hochul*, 632 F. Supp. 3d at 145 (holding on motion to dismiss that religious exemption from COVID-19 vaccination would impose an undue hardship by causing defendant to violate state law). This ground alone warrants dismissal of this claim as a matter of law.

Plaintiff's complaint also raises the fact that VMC granted religious accommodations to employees performing similar sonographic duties. Dkt. No. 1-2 ¶¶ 264–70; *see also* Dkt. No. 80 at 18. For the reasons discussed in Section IV.B.2.b.2, *infra*, distinguishing between Harborview and VMC employees, the Court finds that this argument fails because Plaintiff does not allege that she was employed at VMC and was instead terminated from her position at Harborview.

Plaintiff has failed to state a Title VII claim. Plaintiff provided facts supporting

Defendants' reason for asserting undue hardship in her complaint and has raised no dispute of facts regarding the asserted reason. This Court "cannot conceive of an accommodation that would neither have violated [Proclamation 21-14] nor resulted in an undue burden to Defendants[,] given Plaintiff's routine contact with patients and staff." *See NYS OMH*, 2024 WL 730492 at *3 (internal quotation marks and citation omitted). The record shows that accommodating Plaintiff would cause undue hardship as a matter of law. Accordingly, dismissal of this claim is appropriate. *See Bolden-Hardge*, 63 F.4th at 1225; *Sutton*, 192 F.3d at 830–31; *Bhatia*, 734 F.2d at 1384.

2.    **Count II: 42 U.S.C. § 1983**

To state a claim for relief under 42 U.S.C. § 1983 ("Section 1983"), a litigant must show that: "(1) a person acting under color of State law; (2) subjects or causes to be subjected to deprivation; (3) a U.S. citizen or person in the jurisdiction of the United States; (4) of a right, privilege, or immunity secured by the Constitution and laws." *Chaudhry v. Aragón*, 68 F.4th 1161, 1169 (9th Cir. 2023). To survive a motion to dismiss, a Section 1983 complaint must allege all four of these elements. *See Nampa Classical Academy v. Gosling*, 714 F. Supp. 2d 1079, 1087 (D. Idaho 2010), *aff'd*, 447 Fed. App'x 776 (9th Cir. 2011), *cert. denied*, 566 U.S. 905 (2012).

a.    ***A Person Acting Under Color of State Law***

Plaintiff's Section 1983 claim is brought against the University Entities and against Individual Defendants in both their individual and official capacities. *See* Dkt. No. 1-2 at 1 (complaint caption), ¶¶ 281–323.

(1)    State Agencies in their Official Capacities

Plaintiff admits that the University Entities are state agencies. Dkt. No. 1-2 ¶ 10 (acknowledging in the complaint that these entities are Washington State corporations); *see also*

Dkt. No. 74 at 1 n.1. However, the term "person" in Section 1983 has long been held to not include a state or state agencies. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("a State is not a person within the meaning of § 1983"); *accord Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) (same). Further, "[c]ourts in this judicial district have noted that state universities—including the University [of Washington]—are an arm of the state." *Robinson v. Univ. of Wash.*, No. C15-1071, 2016 WL 4218399, at *8 (W.D. Wash. Aug. 9, 2016) (collecting cases), *aff'd*, 691 F. App'x 882 (9th Cir. 2017); *see also Marquez v. Harborview Med'l Ctr.*, No. C16-1450, 2018 WL 741321, at *9 (W.D. Wash. Feb. 7, 2018) (dismissing Section 1983 claim against Harborview on this basis) (citing, *inter alia*, *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990)). Therefore, as the University of Washington and its component entities are state agencies and not "persons" under Section 1983, they are not subject to liability under the statute.

Further, while Defendants waived their Eleventh Amendment immunity by removing this case to federal court (*see* Dkt. No. 65 at 2–3), that waiver does not subject them to liability under Section 1983. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) (concluding Eleventh Amendment immunity was waived when the case was removed to federal court, yet no Section 1983 claim could be asserted against the state). Removal is irrelevant because regardless of the forum, state agencies are not "persons" subject to suit under Section 1983. *See Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003) ("Suits against states for damages should be resolved on the ground that they do not come within § 1983, not because states are protected by the Eleventh Amendment.") (citing, *inter alia*, *Vt. Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 779 (2000) (resolving the question of whether states can be sued under a statute before addressing the applicability of Eleventh Amendment

immunity)); *accord One Fair Wage, Inc. v. Darden Restaurants, Inc.*, No. 21-16691, 2023 WL 2445690, at *2 (9th Cir. Mar. 10, 2023) (same) (internal citations omitted).

(2)    State Officials in their Official Capacities

Similarly, state officers are not liable under Section 1983 when they are sued for damages in their official capacities. *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 n. 24 (1997) (citing *Will*, 491 U.S. at 71 & n.10). "However, there is one exception to this general rule: When sued for *prospective injunctive relief*, a state official in his official capacity is considered a 'person' for § 1983 purposes." *See Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (emphasis in original) (citing *Will*, 491 U.S. at 71 & n.10). "An official-capacity suit for injunctive relief is properly brought against persons who would be responsible for implementing any injunctive relief." *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1223 (9th Cir. 2023) (internal citations and quotation marks omitted). A showing of personal participation is not required; "[r]ather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (internal citation omitted).

Plaintiff's claims against the Individual Defendants in their official capacities fail in two respects: (1) the prospective injunctive relief she seeks is limited to seeking relief for unspecified third parties not involved in this suit, and (2) she does not allege that any specific Individual Defendant has the power to grant that relief.

First, Plaintiff seeks "to enjoin Defendants from enforcing un-constitutional actions against the Plaintiff or anyone else." Dkt. No. 1-2 ¶¶ 219, 221, 223, 225, 227. Specifically, she alleges that "the new recently imposed employment requirement requiring a prospective/current employee to be in possession of this new medical document/license should be put on pause to prevent further harm to such individuals" (*id*. ¶ 236). By its own terms, the injunctive relief

Plaintiff seeks would not apply to her own situation. Plaintiff has been terminated from her sonographer position at Harborview, and her lawsuit centers on seeking damages for that termination. *See* Dkt. No. 1-2 *passim*. She does not seek reinstatement to her old position, and even if she had, that would not be enough to warrant prospective injunctive relief, for which she must "demonstrate a 'real or immediate threat' that she will be injured again in a similar way." *See Wolf v. Hewlett Packard Co.*, No. C15-1221, 2016 WL 8931307, at *9 (C.D. Cal. Apr. 18, 2016) (quoting *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007)). And Proclamation 21-14 was rescinded effective October 31, 2022. Proclamation 21-14.6.[7] Even if Plaintiff had been seeking to represent a class of UW employees (which she is not), she would not be entitled to seek this relief on behalf of other class members. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."); *cf. O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (citations omitted).[8]

Second, Plaintiff has failed to specify which, if any of the Individual Defendants have the power to "appropriately respond" to her requested injunction. *See Colwell*, 763 F.3d at 1070 (internal citation omitted). She has not named any particular Individual Defendant to whom her request is directed, nor has she shown that any of the Individual Defendants could choose to not

---

[7] available at https://governor.wa.gov/sites/default/files/proclamations/21-14.6%20-%20COVID%20Vaccination%20Requirement_Rescission_%28tmp%29.pdf..

[8] Furthermore, *pro se* litigants cannot bring class action claims. *Williams v. Lawson*, No. 21-5536, 2023 WL 3554449, at *1 (W.D. Wash. Apr. 10, 2023) (citing *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966); *cf. Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, '[he] has no authority to appear as an attorney for others than himself.'" (quoting *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987))).

1    enforce Proclamation 21-14. *Cf. Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127

2    (9th Cir. 2013) (holding that injunctive relief was properly alleged against official-capacity

3    defendants where plaintiffs had alleged that those defendants were responsible for the policy

4    they sought to change and where defendants had admitted that those individuals were the " 'the

5    most appropriate' defendant to execute court-ordered injunctive relief" and had authority "to

6    ensure execution of any order issued," respectively).

7                     (3)     State Officials in their Individual Capacities

8            When sued in their personal capacities, state officials may qualify as persons subject to

9    Section 1983 "even when the conduct in question relates to their official duties." *Arizonans*, 520

10   U.S. at 69 n.24 (citing *Hafer v. Melo*, 502 U.S. 21, 27 (1991)). Each individual defendant must

11   have personally participated in rights-violating conduct. *Kentucky v. Graham*, 473 U.S. 159, 166

12   (1985) ("On the merits, to establish personal liability in a § 1983 action, it is enough to show that

13   the official, acting under color of state law, caused the deprivation of a federal right.") (internal

14   emphasis and citation omitted); *accord Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992).

15          The Ninth Circuit recognizes two ways an individual can be held personally liable under

16   Section 1983 once a violation of rights has been established: (a) for taking actions that

17   "themselves rise to the level of a constitutional violation;" or (b) by serving as an "integral

18   participant in the unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2021) (internal

19   citation and quotation marks omitted).[9] Merely establishing actual causation not enough; "the

20   plaintiff must establish proximate or legal causation." *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355

21   (9th Cir. 1981); *see also Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) ("In a § 1983

22

23   [9] The Court does not address whether Defendants are entitled to qualified immunity, as they raise that argument only
     in their reply brief. *See United Specialty Ins. Co. v. Shot Shakers, Inc.*, No. C18-596, 2019 WL 199645, at *6 (W.D.
24   Wash. Jan. 15, 2019) ("It is not acceptable legal practice to present new evidence or new argument in a reply
     brief."), *aff'd*, 831 F. App'x 346 (9th Cir. 2020).

1   action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of

2   the claimed injury . . . . [by establishing] both causation-in-fact and proximate causation")

3   (internal quotation marks and original revisions omitted, additional revisions added) (quoting

4   *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008)).

5        Plaintiff has failed to specify how any of the Individual Defendants took actions rising to

6   the level of a constitutional violation or otherwise served as an integral participant in the

7   violation of her constitutional rights. She merely alleges that the various individuals were acting

8   within the scope of their employment and were carrying out their duties in their capacities as

9   state employees in responding (or failing to respond to) her formal requests. *See* Dkt. No. 1-2

10   *passim*.[10] Plaintiff has failed to show the required level of personal participation.

11               **b.**   ***Deprivation of a Federal Right***

12        Although Plaintiff's failure to identify an appropriate state actor would be sufficient to

13   dismiss her Section 1983 claims, given that the primary focus of Plaintiff's proposed

14   amendments is to bolster the deprivation of rights aspect of her Section 1983 claims, the Court

15   will address this issue as well. Defendants barely raise arguments regarding the sufficiency of

16   Plaintiff's allegations regarding deprivation of a federal right in their 12(c) motion (*see* Dkt.

17   Nos. 74, 82 (Defendants' motion and reply)), they do raise such arguments in the context of

18   Plaintiff's motion to amend (*see* Dkt. No. 78 (Defendants' opposition brief)). The Court will

19   therefore first consider whether Plaintiff's original complaint adequately alleges a deprivation

20   before assessing whether her proposed amendments cure any deficiencies in that regard in

21

22   [10] Further, Defendants Timothy Dellit and Mark Richards are University of Washington executives who had no personal involvement with Plaintiff's termination. Therefore, they can only be held responsible under the theory of

23   *respondeat superior* in a Section 1983 individual capacity action. For the doctrine of *respondeat superior* to apply, the supervisor must have "participated in or directed the violations, or [have known] of the violations and failed to

24   act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Such a showing cannot be established on these facts.

Section IV.C, *infra*.

To prevail in a Section 1983 action, a plaintiff must establish an underlying violation of federal law. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119 (1992). Reading her complaint generously, Plaintiff's Section 1983 claim appears to be based on violations of her Fourteenth Amendment due process, equal protection, and property rights and her rights under the First Amendment's free exercise clause. *See* Dkt. No. 1-2 ¶¶ 287–323.

(1)     <ins>Due Process</ins>

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014). "A constitutionally cognizable interest in a benefit . . . . typically requires an individual to demonstrate that an existing law, rule, or understanding makes the conferral of the benefit mandatory." *Id.* (internal citations and quotation marks omitted).

Plaintiff does not specify whether her challenge is based on substantive or procedural due process. She alleges that by failing to provide just cause for dismissal as required under her union contract, Defendants violated her due process rights. *See* Dkt. No. 1-2 ¶¶ 298–99, 303–06. Plaintiff has not provided any details of the union contract that she cites in her complaint (*see* Dkt. Nos. 1-2, 80), nor does she seek judicial notice of this document (Dkt. No. 81). The Court is thus unable to determine that Plaintiff has a constitutionally protected interest in her position or that Defendants failed to provide procedural due process.[11] Additionally, courts in this Circuit have upheld COVID-19 vaccination mandates against substantive due process challenges

---

[11] Plaintiff did, however, expand upon this claim in her amended complaint. *See infra* Section IV.C.3.a.

because there is no fundamental right to refuse vaccination. *See, e.g.*, *Curtis v. Inslee*, No. C23-5741, 2023 WL 8828753, at *5 (W.D. Wash. Dec. 21, 2023) (citing, *inter alia*, *Kheriaty*, 2022 WL 17175070 at *1). And at least one court applying rational basis review has found that vaccine mandates relate to a legitimate state interest as they have a "substantial relation to public safety, morals, or general welfare." *Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Or. 2021) (quoting *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1193 (9th Cir. 2013)). Plaintiff has failed to allege a due process claim. !

(2)   Equal Protection

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (internal quotation marks and original revision omitted) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). The first step in making out an equal protection claim is to show that "the law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 589 (9th Cir. 2008) (internal citations omitted). The standard of review a court applies when assessing a challenged classification varies; strict scrutiny only applies when a fundamental right is impaired or a suspect class is disadvantaged. *Mass. Bd. of Retirement v. Murguia*, 427 U.S. 307, 312 (1976) (per curiam). Government employment is not a fundamental right *per se*. *Id.* at 313. An equal protection claim may be sustained by someone who has been singled out as a "class of one" if that person can demonstrate that they were (1) intentionally (2) treated differently than similarly-situated persons, (3) without a rational basis. *Olech*, 528 U.S. at 564; *accord Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1021–22 (9th Cir. 2011) (internal citations omitted), *cert. denied*,

565 U.S. 881.

Plaintiff's complaint can be interpreted as alleging membership in a suspect class of state employees (as opposed to non-state employees); however, it does not identify any other employees at Harborview whose job roles require direct patient care that were denied religious exemptions to the vaccine mandate. The Court therefore applies rational basis scrutiny to assess whether she can succeed on a "class of one" equal protection claim. When an equal protection claim is premised on unique treatment of a person rather than on a classification, the Supreme Court has described it as a "class of one" claim. *Olech*, 528 U.S. at 564. To claim a violation of equal protection as a "class of one," "the plaintiff must establish that the [defendant] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that she was subjected to differential treatment because she, as a state employee, was denied a religious exemption, while three employees of VMC with her same job role were granted an exemption. Dkt. No. 1-2 ¶¶ 266–68, 308; Dkt. No. 80 at 21–22. By her own admission, and as confirmed by Defendants, VMC does not employ state employees. Dkt. No. 80 at 21 ("[t]he only difference between Harborview employees and VMC employees are Harborview's are state and VMC's are public employees"); Dkt. No. 82 at 4. Defendants represent that VMC "is a municipal corporation separate from UW Medicine and governed by a separate CEO and Board" and is a suburban hospital which does not specialize in Level 1 Trauma care, as Harborview does. Dkt. No. 82 at 4, 5. There is a rational basis for distinguishing between Harborview and VMC employees, given that they are separate employers with differing employment policies, one is a state entity while the other is a municipal entity, and the entities provide differing levels of care for different populations. *Cf. Patel v. City of S. El Monte*, 827 F. App'x 669, 672 (9th Cir. 2020) (affirming dismissal of class-of-one equal protection claim at

motion to dismiss stage where the allegedly similarly-situated entities were not comparable); *see also infra* Section IV.C.3.b. Plaintiff has failed to allege an equal protection claim.

(3)    <u>Deprivation of Property</u>

"State law, or some other independent source, establishes the parameters of an individual's substantive interest, but federal law determines whether that interest is a property right protected by the Due Process Clause of the Fourteenth Amendment." *Lawson v. Umatilla Cnty.*, 139 F.3d 690, 692 (9th Cir. 1998). The only reference to a property right that Plaintiff provides is in the context of her Section 1985 claim, in which she discusses her occupation as her "personal property." *See* Dkt. No. 1-2 ¶ 328. Plaintiff's original complaint does not attempt to define the contours of this property interest, nor does it address how that interest merits federal protection. *See id.* ¶ 326 (at most, alleging that Defendants had "the authority of depriving the Plaintiff of Plaintiff's right to earn a lively hood [*sic*] in the ordinary occupations of life that is protected by the constitution of the United States"); *see also* Dkt. No. 80 at 10 (Plaintiff's brief opposing judgment on the pleadings arguing, without adequate citations, that "Defendants['] implementation of Proclamation 21-14 deprived the Plaintiff of her constitutionally protected right to engage in the occupation of her choosing"). Plaintiff alleges that a union contract (the UW-SEIU 1199 NW Master Contract) and a UW policy on dismissal for non-union staff (Administrative Policy Statement 43.16) "both state there needs to be just cause for dismissal and a hearing prior to dismissal." *See id.* ¶ 298. However, Plaintiff has not provided—and the Court is not aware of any—authorities establishing that a union contract with a just cause provision creates a federally-protectable property interest in her employment for Section 1983 purposes. *See Umatilla Cnty.*, 139 F.3d at 692. Moreover, though Plaintiff alleges that she was denied a post-termination grievance meeting (Dkt. No. 1-2 ¶¶ 124–27), as explained in an exhibit she attaches to the complaint, Plaintiff was not eligible to seek union representation for a

1   grievance after her employment had ended (*id.* at 21 (Exhibit H)). Plaintiff has failed to allege a

2   deprivation of property rights claim.

3                              (4)      Free Exercise Clause

4          "The free exercise clause protects two types of religious freedom: the freedom to believe

5   and the freedom to act. While the freedom to believe is absolute, the freedom to act is limited."

6   *N. Valley Baptist Church v. McMahon*, 696 F. Supp. 518, (E.D. Cal. 1988), *aff'd*, 893 F.2d 1139

7   (9th Cir. 1990) (internal citation omitted). To prevail on a free exercise claim, a plaintiff must

8   show that a government action substantially burdens her religious practice. "A person asserting a

9   free exercise claim must show that the government action in question substantially burdens the

10  person's practice of her religion. *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (internal

11  citation omitted). "A substantial burden . . . place[s] more than an inconvenience on religious

12  exercise; it must have a tendency to coerce individuals into acting contrary to their religious

13  beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his

14  beliefs." *Id.* at 1031–32.

15         Plaintiff has made no allegations regarding what her religious beliefs are, let alone how

16  they were burdened by Defendants' adherence to Proclamation 21-14. She supplies no

17  information or argument regarding how "the individual defendants pressured [her] to modify her

18  behavior or to violate her beliefs." *See Dorothy Hancock v. Or. Health & Sci. Univ.*, No. C22-

19  1254, 2024 WL 493715, at *4 (D. Or. Feb. 8, 2024) (dismissing free exercise claim in a vaccine

20  mandate case). Further, "the right of free exercise does not relieve an individual of the obligation

21  to comply with a 'valid and neutral law of general applicability on the ground that the law

22  proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Williams v.*

23  *California*, 764 F.3d 1002, 1011–12 (9th Cir. 2014) (internal citation omitted); *see also Christian*

24  *Legal Soc. Chapter of the Univ. of Cal. Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 697

n.27 (2010) ("[T]he Free Exercise Clause does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct."). Plaintiff also does not allege that Proclamation 21-14 is invalid or otherwise describe how it inhibits her religious practice. *See San Diego Unified Sch. Dist.*, 19 F.4th at 180 (finding that appellants did not establish merits of their free exercise claim in failing "to raise a serious question as to whether [a] vaccination mandate is not neutral and generally applicable"). Plaintiff has failed to allege a free exercise claim.[12]

For these reasons, dismissal is warranted on all of Plaintiff's Section 1983 claims.

### 3. **Count III: Section 1985(3) Claim**

"While § 1983 provides a cause of action if *one* person deprives an individual of his constitutional rights, § 1985(3) provides a cause of action if *two or more* persons conspire to deprive an individual of his constitutional rights." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021) (emphases in original), *cert. denied*, 142 S. Ct. 337. Plaintiff has failed to demonstrate any deprivation of rights by persons acting under the color of state law, so her Section 1985(3) claim also fails. *See supra*, Part IV.B.2.b.; *see also Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations").

Furthermore, Plaintiff has provided scant allegations regarding how Defendants conspired to deprive her of any rights, as required to state a Section 1985(3) claim. "To state a claim under § 1985(3), a plaintiff must first show that the defendants conspired—that is, reached an agreement—with one another." *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017).[13] Plaintiff alleges

---

[12] Plaintiff expands upon this claim in her amended complaint. *See infra* Section IV.C.3.d.

[13] The Court need not address whether the intra-corporate conspiracy doctrine also bars Plaintiff's Section 1985 claim, given the multiple ways she has failed to allege a Section 1983 violation and her failure to allege any sort of

that "[t]he Defendants choose to hide behind the recommendations of the Office of The Governor of Washington State who has no authority to enact [Proclamation 21-14]" (Dkt. No. 1-2 ¶ 339), and that the "separation of policies between [] two hospitals under the UW Medicine umbrella is illogical and conspiratorial in nature" (*id.* ¶ 353). This is a far cry from alleging the existence of an agreement to violate rights. Plaintiff has failed to state a Section 1985(3) claim.

### 4. **Request for Empanelment of a Grand Jury**

Plaintiff asks this Court to empanel a grand jury in her civil suit. The Court lacks authority to do so. *See Maehr v. United States*, 822 F. App'x 780, 783 (10th Cir. 2020) (affirming denial of motion to empanel grand jury in a civil suit); *cf. U.S. v. Christian*, 660 F.2d 892, 893, 903 (3rd Cir. 1981) (denying writ of mandamus to convene an investigatory grand jury "without legislative direction" to investigate possible violations of federal antitrust laws in a U.S. territory). Therefore, this claim must be dismissed.

### 5. **State Law Claims**

The remainder of Plaintiff's claims (common law conspiracy, breach of contract, official misconduct, and negligent infliction of emotional distress, (Dkt. No. 1-2 ¶¶ 362–482)) are grounded in state law. The Court need only address those claims if Plaintiff is granted leave to amend her complaint and she states a federal claim that survives dismissal. *See Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) ("If the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims."). Therefore, the Court does not reach Defendants' arguments with regard to Plaintiff's state law claims at this time.

---

conspiracy. Moreover, Defendants assert that the Ninth Circuit has not addressed whether the doctrine applies to an alleged conspiracy between two subsidiaries. Dkt. No. 82 at 13.

**C.      Leave to Amend**

Plaintiff's original complaint includes claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983 and 1985 for violations of her constitutional rights, common law conspiracy, breach of contract, violation of RCW 9A.80.010 (official misconduct), and negligent infliction of emotional stress. Dkt. No. 1-2 at 24–52. She seeks to amend the complaint to add violations of Section 1983 based on the Free Exercise Clause and deprivation of property rights, violation of the FMLA, and a civil libel claim. *See* Dkt. No. 73-1 at 3. Her amendments would delete her official misconduct and negligent infliction of emotional distress claims and dismiss Individual Defendant Laura Berry. *See id.* at 3, 5. Apart from adjusting the numbers of internally-referenced paragraphs, Plaintiff's proposed amendments would not change the facts section. *See id.* ¶¶ 5–214. The amendments would, however, make adjustments to multiple of her legal claims; the Court addresses each of these in turn.

1.      **Grand Jury Demand**

Though Plaintiff attempts to bolster her demand for a grand jury, the additional statute she cites does not support her ability to seek a grand jury in a civil case. *See* Dkt. No. 73-1, ¶¶ 230–31. Rather, the statute discusses the duties of an already-impaneled grand jury and falls within Title 18 of the United States Code, which deals with "Crimes and Criminal Procedure." *See* 18 U.S.C. § 3332(a). Therefore, the proposed amendment is futile, and the claim will be dismissed with prejudice (without leave to refile).

2.      **Title VII Claim**

Plaintiff attempts to amend her Title VII claim by adding words that indicate that Defendants' mid-August email to employees regarding the COVID-19 vaccination mandate were "threatening" (Dkt. No. 73-1 ¶ 245) and adding an allegation that "Defendants continued to send frequent threatening letters to [her and her] upper management personnel continuously until

October 18, 2021" (Dkt. No. 73-1 ¶ 253). These amendments might bolster a *prima facie* case of discrimination, but they ultimately still fail to demonstrate that Plaintiff's requested accommodation to remain unvaccinated in a direct patient care role would not cause an undue hardship on Defendants' business, as addressed in Section IV.B.1.b., *supra*.

Plaintiff also seeks to add allegations regarding the creation of a suspect class of state employees with sincerely held religious beliefs. Dkt. No. 73-1 ¶¶ 267–69, 275–76. For the reasons discussed in other sections of this Order (Sections IV.B.2.a.2, IV.B.2.b.2, and IV.C.3.b), this amendment fails.

The Court finds the proposed amendments fail and further amendment would be futile. Therefore, the Title VII claim will be dismissed with prejudice.

### 3.  **Section 1983 Claims**

As an initial matter, Plaintiff's proposed amendments do nothing to address whether she has appropriately named persons liable to suit under Section 1983. *See supra*, Section IV.B.2.a. Though Plaintiff adds in multiple places that the University Entities are "state agencies, whom [*sic*] are creatures of the State of Washington" (*see, e.g.*, Dkt. No. 73-1 ¶ 289), this additional allegation has the effect of emphasizing that the University Entities are state agencies not subject to Section 1983 liability. Other additions further emphasize that Defendants are state actors acting under the color of law but do not address her pleading deficiencies as to how state agencies or their employees can be held accountable under Section 1983. *See id.* ¶¶ 384–87.

However, Plaintiff does then also attempt to bolster her allegations that she was deprived of constitutional rights through Defendants' actions.

### a.  *Due Process Amendments*

Plaintiff's original complaint already alleged that she was terminated without just cause. *See* Dkt. No. 1-2 ¶¶ 289–99, 303–06. Her proposed amendment further fleshes out the basis for

her entitlement to union protections as well as to a pre-termination hearing per UW policy prior to dismissal. *See, e.g.*, Dkt. No. 73-1 ¶¶ 303 (explaining that the termination was non-disciplinary yet did not comply with just cause), 305 (alleging she did not receive any hearing prior to dismissal).

Plaintiff references the UW-SEIU union contract in effect at the time of her termination (*see, e.g.*, Dkt. No. 73-1 ¶ 370) and includes it as an attachment to her amended complaint (Dkt. No. 73-2 at 84–238 (Exhibit N)).[14] The UW-SEIU contract outlines a pre-dismissal hearing opportunity that must be afforded to union members and explains that the employer determines the specific step at which the dismissal process begins "based on the nature and severity of the problem." Dkt. No. 73-2 at 131–32. However according to Plaintiff's own allegations, it appears that a pre-dismissal hearing took place as required. *See* Dkt. No. 73-1 ¶¶ 70–72, 95–96.

Plaintiff also references UW Administrative Policy Statement 43.16 in both her original and amended complaints (*see* Dkt. No. 1-2 ¶ 298; Dkt. No. 73-2 ¶ 364), but she has not placed the document itself before the Court, as it is not included as an exhibit to either version of her complaint nor in her request for judicial notice. The Court judicially notices this document on its own motion, as it is not subject to reasonable dispute and is readily available online on the University of Washington's website. *See* Fed. R. Evid. 201(b), (c)(1); Administrative Policy Statement 43.16, Univ. of Wash., https://perma.cc/8KLZ-3APG (last updated Jan. 19, 2006). The title of the policy statement itself conveys that it is inapplicable to Plaintiff, as it is a corrective action policy "for Permanent Classified Non-Union Staff Covered by State Department of Personnel Rules." Plaintiff is a self-avowed former member of her staff union; there is therefore

---

[14] While the incorporation-by-reference doctrine would apply here, the union contract is also an appropriate subject for judicial notice. *See Sarmiento v. Sealy*, 367 F. Supp. 3d 1131, 1142 (N.D. Cal. 2019) ("Courts regularly take judicial notice of a CBA in evaluating a motion to dismiss." (internal citation omitted)).

no basis for a pre-termination hearing apart from what is provided in Plaintiff's union contract.

For these reasons, the proposed amendments to Plaintiff's Section 1983 claim for infringement of due process are futile.

### b. *Equal Protection Amendments*

Plaintiff's amendments to her equal protection claim boil down to the expansion of her allegations that it was unfair for her to be treated differently from employees at VMC with respect to whether she could receive a religious exemption to avoid complying with Proclamation 21-14. Specifically, she alleges that a Strategic Alliance Agreement—which she seeks judicial notice of—demonstrates that VMC is a component entity of UW Medicine and that its operations are subject to the UW Medicine CEO's approval. Dkt. No. 73-1 ¶¶ 318–19. She goes on to assert that Defendants created a new suspect class by treating state employees with sincere religious beliefs differently from non-state employees with sincere religious beliefs with respect to whether they would be accommodated "for not being in possession of the medical document/license required by Defendants." Dkt. No. 73-1 ¶¶ 322–33.

The Strategic Alliance Agreement does indeed note that VMC is a component entity of UW Medicine (Dkt. No. 73-1 at 244) and that the UW CEO has some control over its operations (*id.* at 253). However, as Defendants point out (Dkt. No. 78 at 5–6), VMC is owned and operated by Public Hospital District No. 1 of King County ("the District Healthcare System" or "the District"). Dkt. No.73-2 at 244. The District is a municipal corporation separate from UW Medicine, a state agency. *Id.* at 246 (Article 2.1(a) & (b)). Under the agreement, the District Healthcare System is "operate[d]… through the District's employees."). *Id.* at 255-256 (Article 4.3(a)). "The [VMC] CEO and his or her Senior Executive Team shall have the authority and responsibility to manage the day-to-day operations of the District HealthCare System." *Id.* at 253 (Article 3.8(c)). The Strategic Alliance Agreement explicitly states that in addition to the

directives of the UW Medicine CEO, the authority and responsibility exercised by the VMC

CEO's team "shall be at all times consistent with the terms of this Agreement and the directives

of the Board [of Trustees] . . . and applicable federal and state law and regulation and industry

standards" (Dkt. No. 73-1 at 253; *id.* at 247 ("The District Healthcare System shall be

government by a Board of Trustees."). The Board of Trustees is solely responsible for the

procedures that govern VMC staff. Dkt. No. 78 at 5 (citing Dkt. No. 73-1 at 247). The Strategic

Alliance Agreement thus demonstrates that while VMC is a component of UW Medicine, it has a

distinct governance structure from Harborview and the UW Medicine CEO does not have full

authority over VMC's operations.

  More significantly for purposes of Plaintiff's complaint, there is still inadequate basis to

find that a suspect class exists due to differential treatment of state employees at one UW

Medicine entity versus non-state employees at another UW Medicine entity. Per Supreme Court

precedent, "[i]n areas of social and economic policy, a statutory classification that neither

proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld

against equal protection challenge if there is any reasonably conceivable state of facts that could

provide a rational basis for the classification." *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 314

(9th Cir. 1993) (string citation omitted). Plaintiff has not cited, and the Court is not aware of, any

authority identifying state employees as a suspect class. Indeed, since there is no argument or

showing of a fundamental right to government employment or support for finding the existence

of a suspect class, the highly deferential rational basis standard of review applies. *Cf. Canfield v.

Sullivan*, 774 F.2d 1466, 1469–70 (9th Cir. 1985) (upholding legislative decision to distinguish

between different types of government employees against equal protection challenge).

  Plaintiff's proposed amendments to her Section 1983 claim for violation of equal of the

laws are futile.

c.      ***Deprivation of Property Rights Amendments***

Plaintiff's proposed amended complaint includes a new legal claim devoted to her deprivation of property rights-based Section 1983 claim. Dkt. No. 73-1 ¶¶ 395–439. In it, she cites an Eleventh Circuit opinion to assert that "[a] State may not use newly enacted stricter standards for entry into a profession to deny those already legally practicing a profession of their right to continue practicing thereafter." *Id*. ¶ 402 (quoting *Abramson v. Gonzalez*, 949 F.2d 1567, 1580 (11th Cir. 1992)). In doing so, Plaintiff conveniently leaves out the very beginning of the quoted sentence, which bars its application to her case. *See Abramson*, 949 F.2d at 1580 ("*Aside from those reasonable regulations necessary to protect the public health and welfare*, a state may not use newly-enacted stricter standards for entry into a profession to deny those already legally practicing the profession of their right to continue practicing thereafter." (emphasis added)).

As discussed in Section IV.C.3.a, *supra*, Plaintiff has failed to allege how she was terminated without just cause under her union contract, and her amended complaint similarly fails to provide any new allegations regarding how she was deprived of just cause or of any protected property interest in her employment. *See* Dkt. No. 73-1 ¶¶ 395–439. Plaintiff's proposed amendments to her Section 1983 claim for deprivation of property rights are futile.

d.      ***Free Exercise Amendments***

Plaintiff has also fleshed out an entire new claim section devoted to her free exercise clause claim. Dkt. No. 73-1 ¶¶ 335–94. This new section largely repeats allegations from elsewhere in the complaint. The crux of Plaintiff's free exercise argument as fleshed out appears to be that Defendants failed to provide evidence that Plaintiff's requested religious exemption would pose an undue burden. *See id.* ¶¶ 344–52. To support her argument, Plaintiff cites to two documents attached to the complaint: the letter denying her religious exemption request

(Exhibit B) and UW's position statement responding to Plaintiff's Title VII religious discrimination charge before the EEOC (Exhibit C). *Id.* ¶¶ 344, 352. But neither of these documents are relevant to whether Plaintiff has stated a *prima facie* free exercise claim, which is the relevant inquiry at this stage of the proceedings. Plaintiff has not shown that compliance with Proclamation 21-14 substantially burdens her religious practice. *Jones*, 791 F.3d at 1031.

Additionally, "the Free Exercise Clause does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct." *Christian Legal Soc.*, 561 U.S. at 697. Proclamation 21-14 is a law of general applicability. *See, e.g.*, *Pilz v. Inslee*, No. C21-5735, 2022 WL 1719172, at *3, *5 (W.D. Wash. May 27, 2022) (upholding Proclamation 21-14 against state employees' facial free exercise clause challenge as a neutral law of general applicability that is rationally related to the legitimate state interest of reducing the spread of COVID-19), *aff'd*, No. 22-35508, 2023 WL 8866565 (9th Cir. 2023) (unpublished) ("The Proclamation does not facially violate the Free Exercise Clause."). Plaintiff does not claim that Proclamation 21-14 purposefully inhibits religious practices or that it is otherwise invalid.

Plaintiff's proposed amendments to her Section 1983 claim for violation of the free exercise clause fail and further amendment would be futile. Therefore, her Section 1983 claim will be dismissed with prejudice.

4.    **Section 1985 Claim**

Plaintiff's expanded proposed Section 1985 claim (Dkt. No. 73-1 ¶¶ 440–87) fails to cure either of the shortcomings of her original claim: she has shown no underlying deprivation of rights, and she has not alleged any way in which Defendants acted in concert to deprive her of those rights. Plaintiff's proposed amendments to her Section 1983 claim for deprivation of property rights fail and further amendment would be futile. Therefore, her Section 1985 claim will be dismissed with prejudice.

5.     **Family Medical Leave Act Claim**

Plaintiff attempts to add a newly alleged claim that Defendants' denial of her request for FMLA benefits interfered with her FMLA rights. "To make out a prima facie case of FMLA interference, an employee must establish that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (internal citation and quotation marks omitted). A person is eligible for FMLA protection if, among other things, they have "a serious health condition" that renders them "unable to perform the functions" of their job role. 28 U.S.C. § 2612(a)(1)(D).

Plaintiff does not specifically establish each element. In fact, the evidence she uses to support her claim—FMLA paperwork signed by a nurse practitioner (Dkt. No. 73-2 at 24–26 (Exhibit J))—shows that she likely failed to provide sufficient notice to her employer of her intent to take leave. Furthermore, her termination was required under Proclamation 21-14, so she was not entitled to FMLA leave.

Notice of the need for FMLA leave "must be given at least 30 days in advance if the need for the leave is foreseeable, or 'as soon as practicable' otherwise." *Andreatta v. Eldorado Resorts Corp.*, 214 F. Supp. 3d 943, 953 (D. Nev. 2016) (quoting 29 C.F.R. § 825.302(a)). Implementing regulations indicate that even verbal notice can meet this requirement in circumstances where the exact timeframe of the needed leave is unknown and that as a general matter, where 30-day advance notice is not possible, it should be practicable for the employee to provide notice "either the same day or the next business day." 29 C.F.R. § 825.302(b–c). Plaintiff alleges that she began taking sick leave as early as September 20, 2021, due to medical symptoms that interfered with her job performance. Dkt. No. 73-1 ¶¶ 73–87. Plaintiff's mental health counselor advised

1    her as early as September 23 that she should take FMLA leave. *Id.* ¶¶ 91–92. On October 3,

2    Plaintiff emailed her supervisor and a Human Resources representative regarding her psychiatric

3    needs after having already been "out sick so many days." *Id.* ¶ 107. Plaintiff alleges that her

4    psychiatrist determined that FMLA leave was necessary on October 6. *Id.* ¶¶ 111–12. Yet

5    Plaintiff does not appear to have made any effort to notify her employer of the need for FMLA

6    leave until October 13—just five days before her scheduled termination and one week after the

7    requested leave was to begin. *See id.* ¶ 113; Dkt. No. 73-1 at 26 (requesting FMLA leave from

8    October 6 through November 5). Plaintiff claims she waited until this date to request a full leave

9    of absence due to "anxiety and stress leading to sleep impairment, and excessive distractibility

10    which leave[s] her unable to safely perform the tasks required to do her job." Dkt. No. 73-1

11    at 25. In any event, the record here shows that Plaintiff did not request FMLA leave as soon as

12    practicable as required under the statute.

13         Defendants correctly note that Plaintiff's FMLA leave request was properly denied

14    because of their duty to comply with Proclamation 21-14. *See* Dkt. No. 74 at 23. Further, the

15    timing of events, which is not in dispute, is crucial. Based on the chronology of her complaint,

16    the symptoms (inability to sleep, irregular shortness of breath, rapid heartrate, and an inability to

17    concentrate) for which she requested FMLA leave appear to have begun shortly *after* her

18    religious exemption request was denied, and she was aware that she would be terminated if she

19    continued to resist the vaccine mandate. *Id.* ¶¶ 70–77. Plaintiff knew of the vaccine requirement

20    and the potential consequence (termination of employment) for failing to comply in the time

21    allotted, well before she requested leave. Thus, the reason for her termination had nothing to do

22    with her request for leave; the denial of her leave could not therefore have interfered with a

23    benefit she was no longer eligible for because of her otherwise proper termination. *See, e.g.*, *Reif*

24    *v. Shamrock Foods Co.*, 727 F. App'x 302, 303 (9th Cir. 2018) (upholding summary judgment

1   dismissal of FMLA interference claim because defendant "made the decision to terminate Reif

2   before Reif invoked his FMLA rights"); *Williams v. G&K Servs., Inc.*, 774 F. App'x 369, 370–71

3   (9th Cir. 2019) (upholding summary judgment dismissal of FMLA interference claim because

4   plaintiff's "performance issues[] were documented well before she requested FMLA leave . . . .

5   and there is no basis to infer that [defendant] relied on anything other than [the] performance

6   issues in terminating [plaintiff]").

7       Plaintiff's proposed FMLA claim fails to state a claim for relief, so her proposed

8   amendment adding this claim would be futile.

9       6.   **Dismissal of Federal Law Claims**

10      Plaintiff's original and amended allegations are not presented in a linear fashion, such

11  that the relevant allegations are grouped based on which legal claims they support. Because

12  Plaintiff is *pro se*, the Court has been extremely diligent in reading both the original and

13  amended complaint generously to support Plaintiff's claims. Despite this effort, the Court FINDS

14  that Plaintiff's proposed amendments to her federal law claims are uniformly futile. Therefore,

15  the Court DISMISSES her federal claims WITH PREJUDICE (without leave to amend).

16  **D.   Remand of State Law Claims**

17      This case was removed from King County Superior Court on federal question grounds,

18  and no diversity jurisdiction exists. *See* Dkt. Nos. 1 (notice of removal); 1-1 (civil cover sheet);

19  1-2 (complaint) ¶¶ 12–17 (stating that the Individual Defendants reside in Washington State). As

20  the Court is dismissing Plaintiff's federal claims with prejudice, it declines to exercise

21  supplemental jurisdiction over the state law claims. *See Herman*, 254 F.3d at 802; *see also* 28

22  U.S.C. § 1367(c) (providing that a district court may decline to exercise supplemental

23  jurisdiction after it "has dismissed all claims over which it has original jurisdiction"). The Court

24  therefore remands the remaining state law claims back to King County Superior Court. *See* 28

U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## V.    CONCLUSION

Consequently, the Court ORDERS as follows:

1. Plaintiff's Motion for Judicial Notice (Dkt. No. 81) is GRANTED IN PART and DENIED IN PART.

2. Defendants' Motion for Judgment on the Pleadings (Dkt. No. 74) is GRANTED.

3. Plaintiff's Motion for Leave to File Amended Pleading (Dkt. No. 73) is DENIED.

4. All federal law claims are DISMISSED WITH PREJUDICE.

5. The Court DECLINES to exercise supplemental jurisdiction over the remaining state law claims, and REMANDS Plaintiff's state law claims to King County Superior Court.

6. This case is CLOSED.

Dated this 22nd day of March 2024.

Tana Lin
United States District Judge